# SULLIVAN & CROMWELL LLP

TELEPHONE: 1-212-558-4000
FACSIMILE: 1-212-558-3588
WWW.SULLCROM.COM

*125 Broad Street*
*New York, New York 10004-2498*
_____

LOS ANGELES • PALO ALTO • WASHINGTON, D.C.

BRUSSELS • FRANKFURT • LONDON • PARIS

BEIJING • HONG KONG • TOKYO

MELBOURNE • SYDNEY

June 2, 2020

By CM-ECF

The Honorable Charles R. Eskridge III
United States District Court for the Southern District of Texas
Houston Division
515 Rusk Street
Houston, Texas  77002

> Re:   *In re Venator Materials PLC Securities Litigation*,
>       No. 19-CV-3464

Dear Judge Eskridge:

I write on behalf of Defendants in response to Plaintiffs' May 26, 2020 letter offering additional arguments in opposition to Defendants' motions to dismiss.  At oral argument, the Court asked Plaintiffs whether there is "clear case authority" that a general counsel who signs a registration statement as agent or attorney-in-fact for a public company thereby becomes subject to specific personal jurisdiction in the United States in an action challenging statements in the registration statement.  (Hr'g Tr. 25:7-9.)  Rather than simply answer that straightforward question—there is no such clear authority—Plaintiffs use the question as an opportunity to rehash the same points made in opposition to Defendant Russ Stolle's motion to dismiss for lack of personal jurisdiction.  They also use the Court's question as an excuse to make additional arguments in opposition to Defendants' separate motion to dismiss for failure to state a claim.  Although we do not want to try the Court's patience, Defendants feel obliged to respond to Plaintiffs' arguments, none of which have merit.

1. On Mr. Stolle's motion to dismiss for lack of personal jurisdiction, this Court asked Plaintiffs to "look for a case as to a general counsel signing [a registration statement] *as an agent or as attorney-in-fact*."  (Hr'g Tr. 26:6-8 (emphasis added).)  Plaintiffs found no such case.  They instead cite two cases in which an individual signed a registration statement in his *personal* capacity as an officer of the company.  *See Fed. Houston Fin. Agency* v. *Merrill Lynch & Co.*, 903 F. Supp. 2d 274, 278-79 (S.D.N.Y. 2012) (treasurer signed); *Escott* v. *BarChris Constr. Corp.*, 283 F. Supp. 643, 686-87 (S.D.N.Y. 1968) ("house counsel" signed).  The term "attorney-in-fact" does not appear in either case, and

The Honorable Charles R. Eskridge III                                          -2-

although the term "agent" appears once in the second case, it is wholly outside the context of signing documents.

The relevant question is not whether the signing of a registration statement exposes a person to Section 11 liability, but rather whether Mr. Stolle can be deemed a signatory to Venator's registration statements in the first instance. A signatory is "[a] person or entity that signs a document, *personally or through an agent*, and thereby becomes a party to an agreement," while an attorney-in-fact is "one who is designated to transact business for *another*; a legal *agent*." BLACK'S LAW DICTIONARY (11th ed. 2019) (emphasis added). There is no dispute that Mr. Stolle signed as attorney-in-fact on the issuer's behalf, not personally. As a result, Venator (the issuer) is the signatory, not Mr. Stolle. The Complaint acknowledges this by alleging that various individuals—but not Mr. Stolle—signed the registration statements. (FAC ¶ 308 ("The IPO Registration Statement was signed by the Defendants Turner, Ogden, Ibbotson, Huntsman, Margetts."); *id.* ¶ 311 ("The SPO Registration Statement was signed by the Defendants Turner, Ogden, Ibbotson, Huntsman, Margetts, Anderson, Ferrari and Patrick.").)

Contrary to Plaintiffs' suggestion, Mr. Stolle's role as Venator's agent in signing the registration statements does not confer specific jurisdiction over him. While an agent's actions may be imputed to the principal for jurisdictional purposes, the principal's actions cannot be attributed to the agent. *Conveyor Aggregate Prods. Corp.* v. *Benitez*, 2019 WL 1921613, at *6-7 (W.D. Tex. Mar. 4, 2019); *see also Crossroads Fin., LLC* v. *A.D.I.M. Global Co.*, 2016 WL 7220970, at *8 (Tex. App.—Dallas Dec. 13, 2016, no pet.) ("When an agent arrives in Texas to represent his principal, only the principal is doing business in Texas.") (internal quotations omitted). Moreover, "the general rule in the Fifth Circuit is that jurisdiction over an individual cannot be predicated on jurisdiction over a corporation." *Govea* v. *Gulf Coast Marine & Assocs., Inc.*, 2010 WL 4737780, at *4 (E.D. Tex. Nov. 16, 2010). Plaintiffs' contrary position could eviscerate the well-established agency-law principle that an agent acting for a disclosed principal is generally not liable for executing documents on the principal's behalf or for actions performed within the scope of the agency relationship. *See*, *e.g.*, *Castillo* v. *State Farm Lloyds*, 210 F. App'x 390, 393 (5th Cir. 2006) (attorney-in-fact "acts as an agent" and "does not bear risks") (internal quotations omitted); *Instone Travel Tech Marine & Offshore* v. *Int'l Shipping Partners, Inc.*, 334 F.3d 423, 428 (5th Cir. 2003) ("It is well established that an agent acting for a disclosed principal is not liable for claims arising out of contracts executed by the agent on behalf of its principal."); RESTATEMENT (THIRD) OF AGENCY § 6.01 & cmt. b (2006) (same).

Finally, Plaintiffs repeat their argument that Mr. Stolle responded to questions from the SEC, had responsibility for corporate communications with investors, and was involved in Venator's securities offerings generally. But none of those activities give rise to Plaintiffs' claims, which are predicated on specific statements in the IPO and SPO registration statements, none of which are attributed to Mr. Stolle. *See Walden* v. *Fiore*, 571 U.S. 277, 284 (2014) ("[T]he defendant's suit-related conduct must create a substantial connection with the forum.").

The Honorable Charles R. Eskridge III                                                    -3-

　　　　2.  Plaintiffs' contention that Defendants improperly cited "materials outside of the complaint" at oral argument is unfounded.  (Pls.' Letter at 2.)  With two exceptions discussed below, Defendants cited only documents on which the Complaint expressly relied as support for Plaintiffs' claims—Huntsman's February 16, 2016 Form 10-K for 2015 (FAC ¶ 66), Venator's IPO Registration Statement (DX1 & DX23 (*e.g.*, FAC ¶¶ 103, 306)), Venator IPO Prospectus (DX12 (*e.g.*, FAC ¶¶ 306, 325)), Venator's August 28, 2017 Form 10-Q for Q2 2017 (DX2 (*e.g.*, FAC ¶¶ 226-227)), Venator's October 27, 2017 Earnings Call for Q3 2017 (DX4[1] (*e.g.*, FAC ¶¶ 231, 252)), Venator's SPO Registration Statement (DX6 (*e.g.*, FAC ¶ 310)), Venator's February 23, 2018 Earnings Call for Q4 2017 (DX8 (*e.g.*, FAC ¶¶ 238-239)), Venator's July 31, 2018 Earnings Call for Q2 2018 (DX10 (*e.g.*, FAC ¶ 167)), and Venator's September 12, 2018 Business Update Call (DX11 (*e.g.*, FAC ¶ 173)).  On a motion to dismiss federal-securities claims, courts regularly "consider documents integral to and explicitly relied on in the complaint . . . as well as the full text of documents that are partially quoted or referred to in the complaint." *Izadjoo* v. *Helix Energy Sols. Grp., Inc.*, 237 F. Supp. 3d 492, 506 (S.D. Tex. 2017) (internal quotations omitted); *see also Dorsey* v. *Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) ("A court is permitted . . .  to rely on 'documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.'") (quoting *Tellabs, Inc.* v. *Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)); *Lovelace* v. *Software Spectrum Inc.*, 78 F.3d 1015, 1018 (5th Cir. 1996) ("[A] district court deciding a motion to dismiss a securities fraud action may take judicial notice of the contents of documents filed with the Securities Exchange Commission.").

　　　　The only two exceptions are Huntsman's February 15, 2017 Earnings Call for Q4 2016 (DX17) and Huntsman's July 27, 2017 Form 10-Q for Q2 2017 (DX24).  Once again, however, courts regularly "take judicial notice of the contents of public disclosure documents that the law requires be filed with government agencies, such as the SEC, and that are actually filed with the agency" as well as a company's earnings calls with investors, which "may be considered to determine what statements they contain, not as proof of their truth or falsity." *Izadjoo*, 237 F. Supp. 3d at 503 n.3 & 506.  There is no "reasonable dispute" about the nature of these documents or the statements they contain.  *See In re Key Energy Servs., Inc. Sec. Litig.*, 166 F. Supp. 3d 822, 829 (S.D. Tex. 2016) (quoting Fed. R. Evid. 201(d)).

　　　　Plaintiffs' reliance on the Ninth Circuit's decision in *Khoja* v. *Orexigen Therapeutics, Inc.*, 899 F.3d 988 (9th Cir. 2018), misses the mark.  The court there agreed that "in assessing securities fraud claims, courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and

---

[1] The slides Defendants used at oral argument on May 14, 2020 mistakenly cited DX21 (Venator's Q3 2017 Earnings Call Presentation) on slide 17.  The correct citation for the transcript of Venator's October 27, 2017 Earnings Call for Q3 2017 is DX4.

The Honorable Charles R. Eskridge III                                                   -4-

matters of which a court may take judicial notice." *Id.* at 989 (quoting *Tellabs*, 551 U.S. at 322). The court thus took no issue with the well-established principle that a district court can consider the defendants' statements in SEC filings or on earnings calls. *See id.* at 998 (judicial notice), 1002-03 (incorporation-by-reference); *see also id.* at 1003-07. Rather, the Ninth Circuit faulted the district court for its application of that well-settled principle to specific documents cited by defendants in their motion to dismiss. *See id.* at 998-1008. Here, Defendants rely on documents that Venator and Huntsman filed with the SEC and the transcripts of the earnings calls of Venator and Huntsman to show what investors were told about the Pori facility. Plaintiffs do not dispute that those documents contain the statements on which Defendants rely.[2]

3. Plaintiffs' concerted effort to prevent the Court from considering statements by Venator and Huntsman (both Defendants here) in their Form 10-Qs for the second quarter of 2017, filed with the SEC immediately before and after Venator's August 2017 IPO, is unavailing. (Pls.' Letter at 3.) As the Supreme Court has made clear, whether a statement is "misleading always depends on context." *Omnicare, Inc.* v. *Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 190 (2015). Thus, when determining whether a plaintiff has adequately alleged a materially false or misleading statement in an offering document, courts are free to consider "information already in the public domain and facts known or reasonably available to the shareholders." *Garber* v. *Legg Mason, Inc.*, 347 F. App'x 665, 668 (2d Cir. 2009) (internal quotations omitted) (affirming dismissal of Section 11 and 12 claims where information was "already in the public domain and was reasonably available to . . . shareholders" and therefore "omission of the information from the registration statement at issue here was not material"). Here, the disclosures in Venator's IPO offering documents (both the registration statement and the prospectus) that Venator anticipated that a portion of Pori's white-end production would become operational in the second quarter of 2017 were fully consistent with the statements by both Huntsman and Venator in their second quarter of 2017 Form 10-Qs filed immediately before and after the IPO confirming that only a portion of white-end production became operational during that quarter.

Plaintiffs' attempt to manufacture some inconsistency in Venator's December 2017 SPO offering documents filed over three months later is unavailing. While the SPO offering documents did not repeat verbatim the prior disclosures in Venator's IPO offering

---

[2] Plaintiffs' assertion that "analysts repeatedly asked questions making clear they did not know the truth" is unsupported by any well-pled factual allegation in the Complaint. (Pls.' Letter at 3 (citing FAC ¶¶ 109-129, 155, 162-163, 165-186).) The paragraphs of the Complaint cited by Plaintiffs contain no well-pled facts suggesting that any analyst ever was confused. Rather, those paragraphs simply allege that Mr. Turner and Mr. Ogden subsequently repeated the same 20% capacity figure disclosed in the IPO offering documents, while never once suggesting that any additional capacity had been restored after the second quarter of 2017.

The Honorable Charles R. Eskridge III                                                    -5-

documents and its second quarter of 2017 Form 10-Q that only a portion of white-end production became operational in the second quarter, the SPO offering documents nowhere suggest that any new capacity had been restored since that quarter.  The SPO offering materials also specifically referred investors to documents Venator previously had "filed electronically with the SEC" for "more information."  (DX25 (Excerpts of SPO Prospectus) at 204 (attached hereto).)  That includes Venator's Form 10-Q for the second quarter of 2017.

Lastly, Plaintiffs' reliance on *Fresno County Employees' Retirement Association* v. *Comscore, Inc.*, 268 F. Supp. 3d 526, 562-63 (S.D.N.Y. 2017), is misplaced.  The court there declined to consider reports by the *Wall Street Journal* and other media outlets that purportedly disclosed corrective information.  Here, by contrast, Defendants refer the Court to statements by Venator and Huntsman in their Form 10-Qs filed with the SEC that provide further context for the disclosures in Venator's IPO and SPO offering documents.

We hope that the Court finds this exchange of letters informative.

Respectfully submitted,

/s/ *Richard C. Pepperman II*
Richard C. Pepperman II

cc:    All counsel of record (via ECF)