United States District Court
Southern District of Texas
**ENTERED**
March 31, 2021
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CAMBRIA COUNTY EMPLOYEES' RETIREMENT SYSTEM, *et al*, Plaintiffs, vs. VENATOR MATERIALS PLC, *et al*, Defendants. | § § § § § § § § § § § § § § § | CIVIL ACTION NO. 4:19-cv-03464 JUDGE CHARLES ESKRIDGE |

MEMORANDUM AND OPINION
GRANTING IN PART AND DENYING IN PART
MOTION TO DISMISS AS TO PERSONAL JURISDICTION

Plaintiffs Cambria County Employees' Retirement System, City of Miami General Employees' & Sanitation Employees' Retirement Trust, the Fresno County Employees' Retirement Association, and the City of Pontiac General Employees' Retirement System, individually and on behalf of similarly situated persons and entities, bring action for violations of the Securities Act of 1933, the Securities Exchange Act of 1934, and related regulations against Defendants Venator Materials PLC, Simon Turner, Kurt D. Ogden, Stephen Ibbotson, Mahomed Maiter, Russ R. Stolle, Peter R. Huntsman, Douglas D. Anderson, Kathy D. Patrick, the Huntsman Corporation, Huntsman (Holdings) Netherlands BV, Huntsman International LLC, Citigroup Global Markets Inc, Merrill Lynch, Pierce, Fenner & Smith Inc, Goldman Sachs & Co LLC, and JP Morgan Securities.

Maiter and Stolle jointly move to dismiss the claims against them for lack of personal jurisdiction pursuant to Rule 12(b)(2)

of the Federal Rules of Civil Procedure. Dkt 57. The motion is denied as to Stolle and granted as to Maiter.

1. Background

Venator manufactures and markets chemical products. A substantial majority of its revenue comes from selling titanium dioxide, "a white inert pigment that provides whiteness, opacity and brightness to a range of everyday products." Dkt 41 at ¶ 56. Venator primarily focuses on producing "specialty" $TiO_2$, which "is used in end products such as fibers, catalysts, food, pharmaceuticals and cosmetics." Id at ¶¶ 57–58.

Venator was initially organized as the Pigments & Additives Division within Huntsman Corporation. Huntsman announced in January 2017 that it planned to spin Venator off as a separate, publicly traded corporation and to distribute the shares amongst its shareholders. Id at ¶¶ 71–73. Thirteen days later, Venator's second largest $TiO_2$ production facility (located in Pori, Finland) sustained fire damage. Id at ¶ 74. The entire facility other than one auxiliary building was damaged, with all four $TiO_2$ production lines destroyed. Two weeks after the fire, the Radiation and Nuclear Safety Authority determined that the area was heavily irradiated and largely unsafe. It would be over a month before the site was safe enough to enter and assess the damage. Id at ¶¶ 59–60, 74, 81–82.

Huntsman announced a change of plans in April 2017, stating that it would sell its interest in Venator through an initial public offering instead of spinning it off to existing shareholders. Id at ¶ 88. That IPO closed in August 2017, with the sale of 26,105,000 shares at an offering price of $20.00 per share, totaling approximately $522 million. Huntsman then completed a secondary offering in December 2017 with the sale of 21,764,000 additional shares at an offering price of $22.50 per share, totaling approximately $490 million. Id at ¶¶ 24, 44, 116–121.

One year later, on September 12, 2018, Venator announced that the Pori plant would be shut down and reconstruction would cease, at which point the stock price fell 4.76%. Id at ¶¶ 173–78. The price then fell more than 19% on October 29th and 30th of 2018, after Venator issued another corrective disclosure acknowledging that it had "incurred an additional $415 million in

2

restructuring expenses, and would incur additional charges of $220 million through the end of 2024." Id at ¶¶ 182–84. All told, Venator's stock price declined 68% from the IPO price and 71% from the SPO price, falling to $6.47 per share. Id at ¶¶ 13, 186.

Plaintiffs assert in their consolidated amended class action complaint that a number of Defendants made misrepresentations before and after the IPO and SPO regarding the production capacity at the Pori facility, the construction progress and costs, the impact on $TiO_2$ prices, and expenditures of insurance proceeds. Id at ¶¶ 109–64, 207–78. They also claim that the Defendants who made such misrepresentations did so to solicit investments in Venator's IPO and SPO. Id at ¶¶ 101–09, 117–21, 313–43. Plaintiffs further allege that shares in Venator lost substantial value when the alleged misrepresentations came to light. Id at ¶¶ 165–86. They bring five claims against various combinations of Defendants for violations of 15 USC §§ 78j(b) and 78t(a) and 17 CFR § 240.10b-5 under the Securities Exchange Act of 1934, and for violations of 15 USC §§ 77k, 77l(a)(2), and 77o under the Securities Act of 1933. Id at ¶¶ 287–303, 352–81.

Defendants Russ Stolle and Mahomed Maiter move to dismiss, asserting that this Court lacks personal jurisdiction over them. Dkt 57.

Stolle resided in Texas while serving as Senior Vice President and Deputy General Counsel at Huntsman Corporation before Venator's IPO. He's now residing in the United Kingdom on assignment as the Senior Vice President, General Counsel, and Chief Compliance Officer at Venator. Dkt 41 at ¶ 29. Plaintiffs claim that he "participated in the process that allowed the IPO and SPO to be completed successfully." Id at ¶ 380.

Maiter began his career with Huntsman Corporation in August 2004, becoming Vice President, Revenue/Global Sales and Marketing in 2008. He's resided in the United Kingdom since at least that time. After the IPO, he served as the Senior Vice President of Venator's White Pigments Division Business Operations and is now its Executive Vice President, Business Operations. Dkt 41 at ¶ 27. Plaintiffs claim that he "provided input into Venator's presentations for investors, potential

3

investors and lenders." Ibid. And they further claim that he attended meetings where the Pori rebuild was discussed and knew that Venator was transporting intermediate $TiO_2$ from other facilities to be finished at the Pori plant, which obfuscated its capacity and production. Id at ¶¶ 11, 137, 193.

2. Legal standard

Rule 4(k)(1)(C) of the Federal Rules of Civil Procedure provides, "Serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant . . . when authorized by a federal statute." And Section 27 of the 1934 Securities Exchange Act, codified at 15 USC § 78aa(a), provides in relevant part that federal district courts "shall have exclusive jurisdiction" over Exchange Act violations "or the rules and regulations thereunder." As such, this grants authority to serve defendants nationwide once an action alleging Exchange Act violations is brought in a federal district court. *Busch v Buchman, Buchman & O'Brien, Law Firm*, 11 F3d 1255, 1257 (5th Cir 1994). Section 78aa also governs actions under the Securities Act when, as here, a plaintiff brings Securities Act and Exchange Act claims in a single action. *GRM v Equine Investment & Management Group*, 596 F Supp 307, 311 (SD Tex 1984), citing *Hilgeman v National Insurance Co of America*, 547 F2d 298, 301 n 7 (5th Cir 1977) (collecting cases).

The grant by Congress of this power under § 78aa "is limited only by the constraints of constitutional due process" under the Fifth Amendment to the United States Constitution. *Busch*, 11 F3d at 1257. When a federal court attempts to "exercise personal jurisdiction over a defendant in a suit based upon a federal statute providing for nationwide service of process, the relevant inquiry is whether the defendant has had minimum contacts *with the United States*." Id at 1258 (collecting cases) (emphasis added). This means that the relevant forum is the United States as a whole—not any particular state.

"Even though a defendant's contacts with the entire United States in such cases are determinative of the 'minimum contacts' inquiry, because the language of the Fifth Amendment's due process clause is identical to that of the Fourteenth Amendment's due process clause, the same general principles guide the

4

minimum contacts analysis." *Securities and Exchange Commission v Straub*, 921 F Supp 2d 244, 253 (SDNY 2013). And abundant authority—under the Fourteenth Amendment, but applicable here—permits personal jurisdiction over a nonresident defendant who has *minimum contacts* with the forum, subject to the limit of not offending "traditional notions of fair play and substantial justice." *Johnston v Multidata System International Corp*, 523 F3d 602, 609 (5th Cir 2008) (citation omitted); see also *Busch*, 11 F3d at 1258. Such contacts may establish either *general* or *specific* jurisdiction, also referred to respectively as *all-purpose* and *case-specific* jurisdiction. See *Ford Motor Co v Montana Eighth Judicial District Court*, --- S Ct ---, 2021 WL 1132515, *4 (2021), citing *Goodyear Dunlop Tires Operations SA v Brown*, 564 US 915, 919 (2011). And to be clear, in the context of an action under the Securities and Exchange Acts, the relevant forum as to both general and specific jurisdiction is the United States as a whole. *Busch*, 11 F3d at 1257–58; *Hilgeman*, 547 F2d at 301 n 7.

A federal court has *general jurisdiction* over a nonresident defendant "to hear any and all claims" if that defendant's contacts with the forum are so "'continuous and systematic'" as to render it "essentially at home" in the forum. *Daimler AG v Bauman*, 571 US 117, 127 (2014), quoting *Goodyear*, 564 US at 919. Demonstrating that general personal jurisdiction exists is difficult and requires "extensive contacts between a defendant and a forum." *Johnston*, 523 F3d at 609, quoting *Submersible Systems Inc v Perforadora Central SA*, 249 F3d 413, 419 (5th Cir 2001). "General jurisdiction can be assessed by evaluating contacts of defendants with the forum over a reasonable number of years, up to the date the suit was filed." *Johnston*, 523 F3d at 610, citing *Access Telecommunications, Inc v MCI Telecommunications Corp*, 197 F3d 694, 717 (5th Cir 1999). Such contacts "must be reviewed in toto, and not in isolation from one another." *Johnston*, 523 F3d at 610, citing *Holt Oil & Gas Corp v Harvey*, 801 F2d 773, 779 (5th Cir 1986).

A federal court has *specific jurisdiction* over a nonresident defendant to adjudicate "issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Goodyear*, 564 US at 919, quoting Arthur T. von Mehren and Donald T. Trautman, *Jurisdiction to Adjudicate: A Suggested Analysis*, 79 Harv

L Rev 1121, 1136 (1966). It exists "when a nonresident defendant 'has purposefully directed its activities at the forum state and the litigation results from alleged injuries that arise out of or relate to those activities.'" *Walk Haydel & Associates, Inc v Coastal Power Production Co*, 517 F3d 235, 243 (5th Cir 2008), quoting *Panda Brandywine Corp v Potomac Electric Power Co*, 253 F3d 865, 868 (5th Cir 2001). The defendant's contacts with the forum "must be more than 'random, fortuitous, or attenuated, or of the unilateral activity of another party or third person.'" *ITL International, Inc v Constenla, SA*, 669 F3d 493, 498 (5th Cir 2012), quoting *Burger King Corp v Rudzewicz*, 471 US 462, 475 (1985). But even "isolated or sporadic contacts" can support specific jurisdiction "so long as the plaintiff's claim relates to or arises out of those contacts." *ITL International*, 669 F3d at 498–99. "These rules derive from and reflect two sets of values—treating defendants fairly and protecting 'interstate federalism.'" *Ford*, --- S Ct ---, 2021 WL 1132515 at *5, quoting *World-Wide Volkswagen Corp v Woodson*, 444 US 286, 293 (1980).

Personal jurisdiction is "determined at the outset of litigation" and isn't "affected by subsequent events." *Smilde v Snow*, 73 F Appx 24, 26 (5th Cir 2003, *per curiam*) (citations omitted). Proof of personal jurisdiction by a preponderance of the evidence isn't required. *Johnston*, 523 F3d at 609 (citation omitted). The plaintiff meets its burden by presenting a *prima facie* case that personal jurisdiction is proper. *Quick Techs Inc v Sage Group PLC*, 313 F3d 338, 343 (5th Cir 2002), citing *Wilson v Belin*, 20 F3d 644, 648 (5th Cir 1994). Once the plaintiff establishes minimum contacts between the defendant and the forum, the burden of proof then shifts to the defendant to show that the assertion of jurisdiction is "unfair and unreasonable." *Sangha v Navig8 ShipManagement Private Ltd*, 882 F3d 96, 102 (5th Cir 2018), citing *Wien Air Alaska Inc v Brandt*, 195 F3d 208, 215 (5th Cir 1999). The Fifth Circuit has established five factors that a reviewing court should use to determine whether jurisdiction is fair and reasonable, being:

- *First,* the burden on the nonresident defendant of having to defend itself in the forum;

- - o *Second,* the interests of the forum in the case;
    o *Third,* the interest of the plaintiff in obtaining convenient and effective relief;
    o *Fourth,* the interest of the interstate judicial system in the most efficient resolution of controversies; and
    o *Fifth,* the shared interests of the states in furthering fundamental social policies.

*Sangha*, 882 F3d at 102, citing *Burger King*, 471 US at 477. While the last two factors don't logically appear to pertain to an action where the relevant forum is the United States rather than any one particular state, the doctrine of *forum non conveniens* may further inform the analysis but isn't at issue here. See *American Dredging Co v Miller*, 510 US 443, 447–49 & n 2 (1994) (citations omitted) (stating factors); *Vasquez v Bridgestone/Firestone, Inc*, 325 F3d 665, 671–72 (5th Cir 2003) (citations omitted) (applying same).

The reviewing court must accept as true uncontroverted allegations in the plaintiff's complaint. *Johnston*, 523 F3d at 609 (citations omitted). But the district court isn't required "to credit conclusory allegations, even if uncontroverted." *Panda*, 253 F3d at 869. The court may also receive "'any combination of the recognized methods of discovery,' including affidavits, interrogatories, and depositions to assist in the jurisdictional analysis." *Little v SKF Serige AB,* 2014 WL 710941, *2 (SD Tex), quoting *Walk Haydel & Associates*, 517 F3d at 241. Conflicts between any facts contained in the affidavits or other evidence submitted by the parties must be resolved in favor of the plaintiff. *Johnston*, 523 F3d at 609 (citations omitted).

3. Analysis

Stolle and Maiter argue that general jurisdiction doesn't exist over either of them because they aren't domiciled in the United States or otherwise essentially at home here. Dkt 57 at 6–7. And they argue against specific jurisdiction because neither made any of the alleged misrepresentations at issue. Id at 6–9.

a. Jurisdiction over Stolle

The exercise of general personal jurisdiction over Stolle is proper. He's long been both a Texan and, more important here, an American. His arguments as to specific jurisdiction needn't be

addressed, even though it's also clear that he was residing or otherwise present in Texas during many of the underlying events pertinent to this lawsuit. See Dkt 57 at 6–8.

Stolle argues that Plaintiffs don't allege that he's domiciled in the United States or otherwise show that his contacts with the United States "are so continuous and systematic" as to render him "'essentially at home' in this country." Dkt 57 at 6, quoting *Bauman*, 571 US at 128. That argument is based on the fact that Stolle currently lives in the United Kingdom. But his residence prior to that was indisputably in Texas. His counsel acknowledged at hearing that Stolle lived in Texas and was employed by Huntsman Corporation at the time of the Venator IPO—and indeed, may have even signed (in his capacity as general counsel) the SEC documents at issue in Texas. Dkt 79 at 11, 17. Still, counsel maintained that Stolle "has been domiciled" in the United Kingdom since August 2017, assertedly with no plans to return to the United States. Id at 11–12.

"For individuals, 'citizenship has the same meaning as domicile, and 'the place of residence is prima facie the domicile.'" *MidCap Media Finance, LLC v Pathway Data, Inc*, 929 F3d 310, 313 (5th Cir 2019), quoting *Stine v Moore*, 213 F2d 446, 448 (5th Cir 1954). The Fifth Circuit holds that a change in domicile typically requires only the concurrence of physical presence at the new location and an intention to remain there indefinitely. *Coury v Prot*, 85 F3d 244, 250 (5th Cir 1996).

But analyzing a challenge to personal jurisdiction isn't quite so simple. A respected treatise on federal jurisdiction observes that "even with a showing that a person is maintaining a new residence and will do so for an indefinite period," a change of domicile may be insufficient if it is for "a limited purpose"—such as "to pursue employment." Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3613 (West 3d ed October 2020 update). Another provides, "An intention to make a place one's home for a limited time may not effect a change of domicile when there is a present intention to return to the previous home." Restatement (Second) Conflict of Laws § 21 comment b (ALI 1971); see also Peter Hay, et al, *Conflict of Laws* § 4.20 (West 6th ed 2018) (abandonment of former home as important

element in proof of intention to make another place home for fixed period). Fifth Circuit precedent reflects these principles. For example, it found in *Hendry v Masonite Corp* that a defendant's domicile remained in Mississippi despite a promotion causing him to move to and work in Chicago. 455 F2d 955, 956 (5th Cir 1972); see also *Mas v Perry*, 489 F2d 1396, 1400 (5th Cir 1974); *Wade v Wood*, 2006 WL 3499504, *2–4 (SD Tex).

Plaintiffs persuasively counter that Stolle "lived in Texas for nearly all of his adult life until undertaking a temporary international assignment to the United Kingdom." Dkt 65 at 19 (internal quotations omitted). They point to his employment agreement, which provides for a three-year term in the United Kingdom before returning to the United States. Dkt 65-7 at 3. It also states, "While on assignment, your Home Country/Location will be The Woodlands, Texas, USA." Ibid. Plaintiffs also provide evidence that Stolle owns and pays taxes on at least three properties in Texas (including a home in The Woodlands), voted in Texas in the 2016 election, is licensed to practice law in Texas (and not the United Kingdom), has a Texas driver's license, and has frequently returned to Texas during his three-year assignment. See Dkt 65 at 10–11 (referring to documentary evidence). He also holds position as an officer or director of five corporations based in the United States.

That is well-nigh dispositive. But the assessment of general personal jurisdiction is also informed by review of Stolle's contacts with the United States for some reasonable number of years running up to the date that suit was filed. The Fifth Circuit in *Access Telecommunications v MCI Telecommunications Corp* examined a defendant's contacts with a forum over a six-year period before the action was filed. 197 F3d at 717. Here, Stolle apparently lived continuously in Texas for at least thirty years prior to taking on the assignment in the United Kingdom, only moving there during the same month Venator launched its IPO. Dkt 79 at 17, 19, 21; Dkt 65 at 10–11. And there's no indication that Stolle ever lived anywhere outside of the United States before his assignment to the United Kingdom.

That's more than enough. And these same facts— particularly the properties still maintained in Texas and the

9

continuing trips here—establish the exercise of personal jurisdiction over Stolle doesn't offend traditional notions of fair play and substantial justice. See *Johnston*, 523 F3d at 609; *Busch*, 11 F3d at 1258. Beyond this, Stolle hasn't put at issue factors as to whether the exercise of jurisdiction over him would be *fair and reasonable*. See *Sangha*, 882 F3d at 102 (citation omitted).

An intermediate Texas Court of Appeals has concluded to the contrary in a related action, finding that Texas state courts couldn't exercise general personal jurisdiction over Stolle. *Venator Materials PLC v Macomb County Employees' Retirement System*, 2020 WL 289296, *13 (Tex App—Dallas, no pet) (mem op). That court limited its jurisdictional analysis to Stolle's contacts with Texas from August 2017 through March 2019, based on precedent from the Texas Supreme Court. This Court must instead look to the wealth of United States Supreme Court and Fifth Circuit precedent outlined above that counsels a different approach and outcome.

Nothing persuasively indicates that Stolle has abandoned his home in Texas in favor of a permanent (or even indefinite) move to the United Kingdom. The depth and breadth of his contacts with Texas (and thus, the United States) leading up to the filing of this action reinforce this conclusion. He is subject to general personal jurisdiction in the United States. See *Busch*, 11 F3d at 1258 (collecting cases); *KBR Inc v Chevedden*, 776 F Supp 2d 415, 422–23 (SD Tex 2011) (citations omitted).

The motion to dismiss as to personal jurisdiction over Stolle will be denied.

### b. Jurisdiction over Maiter

The situation as to Maiter is different. He's resided in the United Kingdom continuously for more than ten years now, without appearing to have ever lived in the United States. And his connection to the at-issue claims is tenuous.

*As to general jurisdiction.* Defense counsel established at hearing that Maiter's domicile is in the United Kingdom and that he has "lived and worked there for years before the IPO." Dkt 79 at 11. Indeed, after attending college in Ireland, his work history from 1985 forward appears to have been solely in the United Kingdom and South Africa. Dkt 65-31 at 2–3 (LinkedIn page). As such,

Maiter clearly isn't subject to general personal jurisdiction in the United States under the traditional approach examining the individual defendant's own, personal connections to the asserted forum. See *Bauman*, 571 US at 127 (quotation omitted); *Johnston*, 523 F3d at 609–10 (quotations and citations omitted). Counsel for Plaintiffs conceded as much at hearing. Dkt 79 at 22–23.

Plaintiffs instead essentially argue that Maiter is subject to general jurisdiction based simply upon his extensive contacts with the United States as a high-ranking executive for Huntsman Corporation and later for Venator. Dkt 65 at 19–20. The Supreme Court doesn't "foreclose the possibility that in an exceptional case, a corporation's operations in a forum other than its formal place of incorporation or principal place of business may be so substantial and of such a nature as to render the corporation at home in that State." *Bauman*, 571 US at 139 & n 19, citing *Perkins v Benguet Consolidated Mining Co*, 342 US 437 (1952). Indeed, that was the situation in the cited reference of *Perkins*. A plaintiff there brought action in an Ohio state court against a defendant incorporated in the Philippine Islands, raising claims that neither arose in Ohio nor related to corporate activities there. 342 US at 438–39. But the Court permitted the exercise of general jurisdiction, noting that its president had moved to Ohio where he kept an office, maintained company files, and oversaw its activities. Id at 447–48.

But even with that type of *exceptional case* in mind, it applies only with respect to corporations, which of their nature exist in a more diffuse sense through their officers, directors, and employees. No persuasive reason suggests why it should apply to an individual—whose physical contacts with a forum can be objectively discerned and tallied. Indeed, the Fifth Circuit holds to the contrary that "jurisdiction over the employees of a corporation may not be predicated on jurisdiction over the corporation itself, but must be based on their individual contacts with the forum." *Lee v Allen*, 32 F3d 566, 1994 WL 442487, *3 (5th Cir 1994) (unpublished) (citations omitted); see also *Alexander v Greenwood Hall, Inc*, 2019 WL 2913953, *9 (SD Tex) (being officer of company conducting business in Texas insufficient to establish that officer "at home" in Texas).

11

Plaintiffs thus haven't met their burden by presenting a *prima facie* case that general personal jurisdiction is proper. *Quick Techs*, 313 F3d at 343 (citation omitted).

*As to specific jurisdiction.* Plaintiffs argue that Maiter is subject to specific jurisdiction, relying largely upon his role as Venator's executive vice president for business operations. Dkt 65 at 20–23. In that capacity, they say, he provided input as to investor presentations and other IPO-related communications, and so he "knew" that these presentations would be provided to investors in the United States. Id at 21.

But there are no allegations that Maiter prepared the presentations, and it's unclear what input Maiter even provided. And none are the SEC filings at issue. Dkt 69 at 6; Dkt 65-29 at 21–24. He notes that Plaintiffs haven't even alleged that he signed any of the pertinent SEC filings or that he "'played any role in making, proposing, editing or approving' any of Venator's challenged statements." Dkt 57 at 7, quoting *In re Braskem SA Securities Litigation*, 246 F Supp 3d 731, 770 (SDNY 2017). Maiter is correct that generic and conclusory allegations of his control over Venator "are insufficient as a matter of law to plead specific jurisdiction." Id at 8; see *In re Braskem*, 246 F Supp 3d at 770.

At best, Plaintiffs elsewhere allege that Maiter attended meetings where the rebuild at the Pori facility was discussed and knew that Venator was transporting intermediate $TiO_2$ from other facilities to be finished there after the fire. Dkt 41 at ¶¶ 11, 137, 193. But as Maiter argues, the claims against him don't arise out of "his attendance at the alleged meetings or his knowledge about the flow of intermediate $TiO_2$ between Venator manufacturing facilities." Dkt 57 at 9, citing *Walden v Fiore*, 571 US 277, 284 (2014). And regardless, the Supreme Court has recently reiterated that the exercise of specific jurisdiction requires plaintiff's claims to "arise out of or relate to the defendant's contacts with the forum." *Ford*, --- S Ct ---, 2021 WL 1132515 at *4 (quotation omitted). With that in mind, it's not even clear where these alleged meetings took place or by what means Maiter attended them. Such distinctions can matter a great deal when assessing specific personal jurisdiction. Plaintiffs thus haven't met their burden by presenting a *prima facie* case that

specific personal jurisdiction is proper. *Quick Techs*, 313 F3d at 343 (citation omitted).

The parties dispute the extent to which *McNamara v Bre-X Minerals Ltd*, 46 F Supp 2d 628, 638 (ED Tex 1999), accurately reflects Fifth Circuit law on personal jurisdiction over control persons. That needn't be resolved. Even if applicable, as articulated, *Bre-X Minerals* requires a showing that the individual had both the power to control operations and "to control the transactions in question." Ibid. There is certainly no *prima facie* showing here as to the latter. And it is of note that the individual defendants in *Bre-X Minerals* had minimum contacts with the United States independent of control, as well as having signed, drafted, and/or reviewed the allegedly false statements targeting the United States. Id at 638–41.

The motion to dismiss as to personal jurisdiction over Maiter will be granted.

### 4. Conclusion

The motion to dismiss for lack of jurisdiction is DENIED with respect to Defendant Russ R. Stolle and GRANTED with respect to Defendant Mahomed Maiter. Dkt 57.

The request in the alternative by Plaintiffs for discovery is DENIED. Dkt 65 at 23. They neither specify the discovery they need nor why they need it. The request is deficient. See *Kelly v Syria Shell Petroleum Development BV*, 213 F3d 841, 856 (5th Cir 2000) (citations omitted).

The claims against Maiter are DISMISSED WITHOUT PREJUDICE.

SO ORDERED.

Signed on March 31, 2021, at Houston, Texas.

Hon. Charles Eskridge
United States District Judge