**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

|  |  |
|---|---|
| IN RE: VENATOR MATERIALS PLC SECURITIES LITIGATION | Civil Action No. 4:19-cv-03464<br>Judge Charles J. Eskridge III |

**UNDERWRITER DEFENDANTS' ANSWER AND DEFENSES TO AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

In responding to the allegations in the Amended Consolidated Class Action Complaint ("Amended Complaint"), Defendants Citigroup Global Markets Inc., Goldman Sachs & Co. LLC, Merrill Lynch, Pierce, Fenner & Smith Incorporated, and J.P. Morgan Securities LLC (the "Underwriter Defendants") (i) incorporate into each response a denial of any allegations in the Amended Complaint to the extent such allegations assert or suggest that Underwriter Defendants made any untrue statement of material fact or omitted to state a material fact necessary to make the statements made not misleading, and (ii) to the extent that any response is required, deny any allegations or averments in the introductory paragraphs, headings, and subheadings of the Amended Complaint. In its Opinion and Order Granting Motion to Dismiss in Part dated July 7, 2021 (Dkt. 89), the Court dismissed all claims in the Amended Complaint with respect to statements regarding (i) the market demand for titanium dioxide ("TiO2") and (ii) Venator's insurance coverage. As a result, large portions of the Amended Complaint are now legally inoperative and do not require a response.

The Underwriter Defendants, by and through their undersigned attorneys Paul, Weiss, Rifkind, Wharton & Garrison LLP and Tillotson Law, respond to the specific allegations in the Amended Complaint as follows.

1.     The Underwriter Defendants deny the allegations in paragraph 1, except admit that there was a fire at Venator's facility in Pori, Finland, in January 2017.

2.     The Underwriter Defendants deny the allegations in paragraph 2, except admit that prior to its IPO in August 2017, Venator existed as the pigments and additives division of Huntsman Corporation ("Huntsman") and produced titanium dioxide, or TiO2, as one of its products, and that TiO2 is a white pigment that is used in numerous products, including paint and sunscreen.

3. The Underwriter Defendants deny the allegations in paragraph 3, except lack knowledge or information sufficient to form a belief as to the truth of the allegations about what was clear to Huntsman's senior executives and Huntsman's motives, and admit that Huntsman (Holdings) Netherlands B.V. ("Huntsman Holdings") obtained a waiver from the lock-up agreements with the underwriters of the IPO, including the Underwriter Defendants, in connection with the secondary public offering ("SPO") of Venator stock.

4. The Underwriter Defendants deny the allegations in paragraph 4, except admit that certain of the quoted language appears in the transcript of Huntsman's February 15, 2017 earnings call, and respectfully refer the Court to the transcript for a complete and accurate statement of its contents.

5. The Underwriter Defendants deny the allegations in paragraph 5, except lack knowledge or information sufficient to form a belief as to the truth of the allegations about what representations were "uniformly praised" by "analysts," admit that the quoted language in the fifth sentence of paragraph 5 appears in Venator's IPO Prospectus, dated August 2, 2017 ("IPO Prospectus"), and respectfully refer the Court to the IPO Prospectus, unidentified sources, and analyst reports referenced in paragraph 5 for a complete and accurate statement of their contents.

6. The Underwriter Defendants deny the allegations in paragraph 6, except lack knowledge or information sufficient to form a belief as to the truth of the allegations as to how much Huntsman collectively raised from the IPO, SPO, and a debt restructuring, how Huntsman used the proceeds of those transactions, and how Peter Huntsman's compensation was determined, and admit only as follows: Huntsman International LLC ("Huntsman International") and Huntsman Holdings sold more than 22,700,000 ordinary shares in connection with the IPO on August 3, 2017, and that such stock was offered to investors at $20.00 per share, and respectfully

2

refer the Court to the IPO offering documents for a description of the IPO; Huntsman Holdings sold more than 21,764,800 ordinary shares in connection with the SPO on December 4, 2017, and that such stock was offered to investors at $22.50 per share, and respectfully refer the Court to the SPO offering documents for a description of the SPO.

7.    The Underwriter Defendants deny the allegations in paragraph 7, except lack knowledge or information sufficient to form a belief as to the truth of the allegations about statements allegedly made by former Venator employees, and respectfully refer the Court to the Finnish Safety Authority report referenced therein for a complete and accurate statement of its contents.

8.    The Underwriter Defendants deny the allegations in paragraph 8, except lack knowledge or information sufficient to form a belief as to the truth of the allegations regarding what "industry participants" allegedly "understood."

9.    The Underwriter Defendants deny the allegations in paragraph 9, except lack knowledge or information sufficient to form a belief as to the truth of the allegations about statements allegedly made by "numerous Venator employees" and "former employees."

10.    The Underwriter Defendants deny the allegations in paragraph 10, except lack knowledge or information sufficient to form a belief as to the truth of the allegations about Venator's investigation, what "Venator insiders" allegedly "knew," and statements allegedly made by former Venator employees.

11.    The Underwriter Defendants deny the allegations in paragraph 11, except admit that Venator disclosed that certain individuals from Venator attended meetings from time to time regarding Pori, and respectfully refer the Court to the transcript of Mahomed Maiter's FTC testimony referenced therein for a complete and accurate statement of its contents.

3

12.     The Underwriter Defendants deny the allegations in paragraph 12, except respectfully refer the Court to the disclosures cited in paragraph 12 for a complete and accurate statement of their contents, and state further that allegations in the final sentence of paragraph 12 concern the market demand for TiO2, and all claims premised on such allegations were dismissed by the Court on July 7, 2021 [Dkt. 89]; therefore the Underwriter Defendants need not respond to those allegations.   To the extent a response is required, the Underwriter Defendants deny the allegations regarding the market demand for TiO2.

13.     The Underwriter Defendants deny the allegations in paragraph 13, except admit that on December 4, 2017, the date of the SPO, Venator's stock price at closing was $22.23, and on November 1, 2018, Venator's stock price at closing was $6.97.

14.     The Underwriter Defendants deny the allegations in the first sentence of paragraph 14, and otherwise lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 14, except admit that Peter Huntsman became CEO of Huntsman in 2000.

15.     The Underwriter Defendants deny the allegations in paragraph 15, except admit that Plaintiffs filed a Consolidated Class Action Complaint in this action on January 17, 2020, and filed an Amended Consolidated Class Action Complaint in this action on August 16, 2021.

16.     Paragraph 16 states a legal conclusion to which the Underwriter Defendants need not respond; to the extent a response is required, the Underwriter Defendants deny the allegations, except admit that they purport to describe Plaintiffs' claims.

17.     Paragraph 17 states a legal conclusion to which the Underwriter Defendants need not respond; to the extent that a response is required, the Underwriter Defendants admit that paragraph 17 purports to describe the basis for the Court's subject-matter jurisdiction.

18.     Paragraph 18 states a legal conclusion to which the Underwriter Defendants need not respond; to the extent a response is required, the Underwriter Defendants deny the allegations, except admit paragraph 18 purports to describe the basis for venue in this action and that Venator, Huntsman, and Huntsman International have offices in the Southern District of Texas.

19.     Paragraph 19 states a legal conclusion to which the Underwriter Defendants need not respond; to the extent a response is required, the Underwriter Defendants deny the allegations.

20.     The Underwriter Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in the first two sentences of paragraph 20, and otherwise deny the allegations in paragraph 20, except admit that Plaintiff City of Miami General Employees' & Sanitation Employees' Retirement Trust ("Miami") filed a certification (Dkt. 4-2) stating that Miami purchased 25,050 shares of Venator common stock on August 3, 2017, and purchased shares of Venator common stock on November 30, 2017.

21.     The Underwriter Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in the first two sentences of paragraph 21, and otherwise deny the allegations in paragraph 21, except admit that Plaintiff Fresno County Employees' Retirement Association ("FCERA") filed a certification (Dkt. 4-2) stating that FCERA purchased 26,270 shares of Venator common stock between October 2017 and November 2017 and purchased shares of Venator common stock on November 30, 2017.

22.     The Underwriter Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in the first two sentences of paragraph 22, and otherwise deny the allegations in paragraph 22, except admit that Plaintiff City of Pontiac General Employees' Retirement System ("Pontiac") filed a certification (Dkt. 4-2) stating that Pontiac

purchased 14,970 shares of Venator common stock during November 2017 and purchased shares of Venator common stock on November 30, 2017.

23.     The Underwriter Defendants admit that the Amended Complaint refers to Miami, FCERA, and Pontiac collectively as "Lead Plaintiff."

24.     The Underwriter Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 24, except admit that Venator is a manufacturer and marketer of chemical products; at the time of its IPO and SPO, Venator's TiO2 segment had eight manufacturing facilities in different countries; prior to the IPO, Venator was organized as the pigments & additives division within Huntsman; and Venator is incorporated under the laws of England and Wales as a public limited company.

25.     The Underwriter Defendants deny the allegations in paragraph 25, except admit that Simon Turner is the Chief Executive Officer and a Director at Venator, and that Turner worked at Huntsman from 1999 until 2017 and served as an executive in Huntsman's pigments and additives division from 2008 to August 2017.

26.     The Underwriter Defendants deny the allegations in paragraph 26, except admit that Kurt Ogden is an Executive Vice President and the Chief Financial Officer of Venator, that he previously worked at Huntsman, and that he served as Vice President of Investor Relations and Finance at Huntsman from February 2009 to August 2017.

27.     The Underwriter Defendants deny the allegations in paragraph 27, except admit that Mahomed Maiter was the Senior Vice President of Venator's White Pigments Division Business Operations at Venator during both the IPO and SPO, is now Executive Vice President, Business Operations at Venator, and previously served as Vice President, Revenue/Global Sales and Marketing at Huntsman from January 2007 until August 2017, and respectfully refer the Court

6

to the transcript of Maiter's deposition referenced therein for a complete and accurate statement of its contents.

28.     The Underwriter Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 28, except admit that Stephen Ibbotson served as Vice President and Corporate Controller for Venator at the time of the IPO and SPO, and his signature appears on the amendments to the IPO Form S-1 and the SPO Form S-1.

29.     The Underwriter Defendants admit the allegations in paragraph 29.

30.     The Underwriter Defendants admit that the Amended Complaint refers to Turner, Ogden, Maiter, Ibbotson, and Stolle collectively as the "Executive Defendants," and together with Venator, as the "Venator Defendants."

31.     The Underwriter Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 31, except admit that Peter R. Huntsman was Chairman of Venator's Board of Directors at the time of the IPO and SPO, Peter Huntsman has served as the CEO of Huntsman since 2000, and his signature appears on the IPO Form S-1 and SPO Form S-1.

32.     The Underwriter Defendants admit the allegations in paragraph 32, except lack knowledge or information sufficient to form a belief as to whether Douglas Anderson signed the Form S-1 for the SPO, but admit that his signature appears on the document.

33.     The Underwriter Defendants admit the allegations in paragraph 33, except lack knowledge or information sufficient to form a belief as to whether Kathy Patrick signed the Form S-1 for the SPO, but admit that her signature appears on the document.

34.     The Underwriter Defendants admit the allegations in paragraph 34, except lack knowledge or information sufficient to form a belief as to whether Sir Robert J. Margetts signed

7

the IPO Form S-1 and SPO Form S-1, but admit that his signature appears on amendments to the IPO Form S-1 and the SPO Form S-1.

35.     The Underwriter Defendants admit the allegations in paragraph 35, except lack knowledge or information sufficient to form a belief as to whether Daniele Ferrari signed the Form S-1 for the SPO, but admit that his signature appears on the document.

36.     The Underwriter Defendants admit that the Amended Complaint refers to Peter Huntsman, Anderson, Patrick, Margetts, and Ferrari collectively as the "Director Defendants" and refers to the Executive Defendants and the Director Defendants collectively as the "Individual Defendants."

37.     The Underwriter Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 37, except admit that Huntsman is a multinational manufacturer and marketer of chemical products for consumers and industrial customers.

38.     The Underwriter Defendants deny the allegations in paragraph 38, except admit that Huntsman Holdings and Huntsman International sold Venator common stock offered in the IPO and SPO; that, prior to the IPO, Venator was a division of Huntsman; that Plaintiffs allege Huntsman controlled and maintains control of Venator; and that Huntsman International and Huntsman Holdings were subsidiaries of Huntsman at the time of the IPO and SPO.

39.     The Underwriter Defendants deny the allegations in paragraph 39, except admit that the quoted language in the second and third sentences of the paragraph appears in the amendment to Form S-1, filed July 24, 2017, and the remaining quoted language appears in Venator's Form 10-K filed February 23, 2018, respectfully refer the Court to the Form S-1 and Form 10-K for a complete and accurate statement of their contents, and admit that Peter Huntsman

and Sir Robert J. Margetts served on the boards of Huntsman and Venator at the time of the IPO and SPO.

40.     The Underwriter Defendants deny the allegations in paragraph 40, except admit that Huntsman Holdings is an indirect subsidiary of Huntsman, and Huntsman Holdings sold Venator shares in connection with the IPO and the SPO.

41.     The Underwriter Defendants admit the allegations in paragraph 41.

42.     The Underwriter Defendants deny the allegations in paragraph 42, except admit that the quoted language appears in the amendment to Form S-1, filed July 24, 2017, and respectfully refer the Court to the amendment to Form S-1 for a complete and accurate statement of its contents.

43.     The Underwriter Defendants admit that the Amended Complaint refers to Huntsman, together with Huntsman Holdings and Huntsman International, collectively as the "Selling Shareholder Defendants."

44.     The Underwriter Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 44, except admit that: prior to the IPO, Huntsman International and Huntsman Holdings owned all of Venator's ordinary shares; Huntsman Holdings and Huntsman International sold 22,700,000 shares of Venator that were offered at $20 per share through the IPO; Huntsman Holdings sold 21,764,800 shares of Venator that were offered at $22.50 per share through the SPO; and underwriters on the IPO and SPO exercised certain options to purchase Venator shares.

45.     The Underwriter Defendants admit the allegations in paragraph 45, except Plaintiffs' allegations that Citigroup Global Markets Inc. served as both a lead underwriter and representative, and respectfully refer the Court to any agreements among the underwriters and the

underwriting agreements in connection with the IPO and SPO for a complete and accurate description of the relationship among the underwriters as concerns the IPO and SPO.

46. The Underwriter Defendants admit the allegations in paragraph 46, except Plaintiffs' allegations that Merrill Lynch, Pierce, Fenner & Smith Incorporated served as both a lead underwriter and representative, and respectfully refer the Court to any agreements among the underwriters and the underwriting agreements in connection with the IPO and SPO for a complete and accurate description of the relationship among the underwriters as concerns the IPO and SPO.

47. The Underwriter Defendants admit the allegations in paragraph 47, except Plaintiffs' allegations that Goldman Sachs & Co. LLC ("Goldman") served as both a lead underwriter and representative, and respectfully refer the Court to any agreements among the underwriters and the underwriting agreements in connection with the IPO and SPO for a complete and accurate description of the relationship among the underwriters as concerns the IPO and SPO.

48. The Underwriter Defendants admit the allegations in paragraph 48, except Plaintiffs' allegations that J.P. Morgan Securities LLC served as both a lead underwriter and representative, and respectfully refer the Court to any agreements among the underwriters and the underwriting agreements in connection with the IPO and SPO for a complete and accurate description of the relationship among the underwriters as concerns the IPO and SPO.

49. The Underwriter Defendants deny the allegations in paragraph 49, except admit that the Amended Complaint refers to the Defendants referenced in paragraphs 45-48 collectively as the "Underwriter Defendants," that they served as underwriters of the IPO and SPO, that they have underwritten public offerings of securities, and that the underwriting syndicate of the IPO and SPO, which was not limited to the Underwriter Defendants, received an underwriting discount on Venator shares in connection with the IPO and SPO.

50.     The Underwriter Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 50.

51.     The Underwriter Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 51.

52.     The Underwriter Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 52.

53.     The Underwriter Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 53.

54.     The Underwriter Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 54.

55.     The Underwriter Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 55.

56.     The Underwriter Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations, except admit Venator is a manufacturer and marketer of chemical products, including TiO2—a white inert pigment that provides whiteness, opacity, and brightness to a range of everyday products, including coatings, plastics, printing inks, fibers, food and personal care products, and that TiO2 is produced in different grades, including functional and specialty grades.

57.     The Underwriter Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 57, except admit that, at the time of the IPO and SPO, Venator's specialty products generally sold at a premium into specialized applications such as fibers, catalysts, food, pharmaceuticals, and cosmetics, and that the specialty TiO2 segment includes products that have more stable margins.

11

58.     The Underwriter Defendants deny the allegations in paragraph 58, except respectfully refer the Court to the SEC filings referenced in the first sentence of paragraph 58 for the complete and accurate statement of their contents; admit that certain of the quoted language in the second sentence appears in the IPO Prospectus, and respectfully refer the Court to the IPO Prospectus for a complete and accurate statement of its contents; admit that, at the time of the IPO and SPO, Venator disclosed that it believed that its specialty business was three times larger than that of its next closest competitor; and admit that the quoted language in the final sentence appears in the transcript of Huntsman's May 16, 2017 investor conference, and respectfully refer the Court to the transcript of the conference for a complete and accurate statement of its contents.

59.     The Underwriter Defendants deny the allegations in paragraph 59, except admit that Venator produced specialty TiO2, that at the time of the IPO, Venator disclosed that Pori had a nameplate capacity of 130,000 metric tons per year and accounted for approximately 17% of Venator's total nameplate capacity and 2% of global TiO2 demand, and that nameplate capacity represents a facility's maximum production capabilities, and respectfully refer the Court to Venator's public SEC filings disclosing quarterly financial results for Venator's disclosures concerning EBITDA.

60.     The Underwriter Defendants deny the allegations in paragraph 60, except lack knowledge or information sufficient to form a belief as to the truth of the allegations regarding statements allegedly made by "multiple former employees of Venator," admit that certain of the quoted language appears in the transcript of Huntsman's March 2, 2016 investor day presentation and respectfully refer the Court to that transcript for a complete and accurate statement of its contents.

61. The Underwriter Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 61, except admit that, at the time of the IPO and SPO, the sulfate process and chloride process were the two manufacturing processes for the production of TiO2, and that the majority of Venator's TiO2 manufacturing facilities used the sulfate process.

62. The Underwriter Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 62, and respectfully refer the Court to the testimony referenced therein for a complete and accurate statement of its contents.

63. The Underwriter Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 63, and respectfully refer the Court to Kronos's Forms 10-K referenced therein for a complete and accurate statement of their contents.

64. The Underwriter Defendants deny the allegations in paragraph 64, except lack knowledge or information sufficient to form a belief as to what "Venator, Huntsman, other industry participants, analysts, and investors understand."

65. The Underwriter Defendants deny the allegations in paragraph 65, except admit that prior to the IPO, Venator was the pigments and additives division of Huntsman; that in February 2015, Huntsman announced a plan to close the black end manufacturing operations and ancillary activities at its Calais, France facility; and that in March 2017, Huntsman announced a plan to close the white end finishing and packaging operation of its TiO2 manufacturing facility at its Calais, France facility; and respectfully refer the Court to Huntsman's public filings with the SEC for a complete and accurate statement of their contents.

66. The Underwriter Defendants deny the allegations in paragraph 66, except lack knowledge or information sufficient to form a belief as to the truth of the allegations regarding

13

what Huntsman executives made clear, and respectfully refer the Court to the public filings, including Huntsman's annual report and Form 10-K, referenced therein for a complete and accurate statement of their contents.

67.     The Underwriter Defendants deny the allegations in paragraph 67, except admit that Venator's IPO Prospectus contains a table listing eight TiO2 manufacturing facilities and the production capacities for each, and states in a footnote that the table "[e]xcludes a sulfate plant in Umbogintwini, South Africa, which closed in the fourth quarter of 2016, and our TiO2 finishing plant in Calais, France," and respectfully refer the Court to the IPO Prospectus for a complete and accurate statement of its contents.

68.     The Underwriter Defendants deny the allegations in paragraph 68, except admit that the quoted language appears in the IPO Prospectus, the SPO Prospectus dated November 27, 2017 ("SPO Prospectus"), and Venator's other SEC filings referenced therein, and respectfully refer the Court to those filings for a complete and accurate statement of their contents.

69.     The Underwriter Defendants lack knowledge or information sufficient to form a belief as to the truth of allegations in paragraph 69, except respectfully refer the Court to Tronox's Forms 10-K referenced therein for a complete and accurate statement of their contents.

70.     The Underwriter Defendants deny the allegations in paragraph 70, except respectfully refer the Court to Huntsman's and Venator's SEC filings and the filings from other TiO2 manufacturers referenced therein for a complete and accurate statement of their contents.

71.     The Underwriter Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 71, except admit that the quoted language appears in Huntsman's October 28, 2016 press release, and respectfully refer the Court to that press release for a complete and accurate statement of its contents.

14

72. The Underwriter Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 72, except admit that certain of the quoted language in the first sentence appears in Huntsman's October 28, 2016 earnings call transcript and the quoted language in the second sentence appears in the transcript of the November 30, 2016 Bank of America Merrill Lynch America Leveraged Finance Conference, and respectfully refer the Court to those transcripts for a complete and accurate statement of their contents.

73. The Underwriter Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 73, except admit that the quoted language appears in the transcript of the November 30, 2016 Bank of America Merrill Lynch America Leveraged Finance Conference, and that Huntsman's January 17, 2017 press release stated that the spin-off business would be called "Venator Materials Corporation," and respectfully refer the Court to that transcript and press release for a complete and accurate statement of their contents.

74. The Underwriter Defendants deny the allegations in paragraph 74, except admit that on January 31, 2017, Huntsman disclosed in a press release that a fire at the Pori facility had started on January 30, 2017, and that certain of the quoted language appears in the press release, and respectfully refer the Court to the press release for a complete and accurate statement of its contents.

75. The Underwriter Defendants deny the allegations in paragraph 75, except lack knowledge or information sufficient to form a belief as to the truth of the allegations regarding "analysts," and respectfully refer the Court to the analyst reports referenced therein for a complete and accurate statement of their contents.

76. The Underwriter Defendants deny the allegations in paragraph 76, except lack knowledge or information sufficient to form a belief as to whether Huntsman could "re-enter the

15

facility," and respectfully refer the Court to the press release referenced therein for a complete and accurate statement of its contents.

77.     The Underwriter Defendants deny the allegations in paragraph 77, except respectfully refer the Court to the fire inspection report prepared by the Finnish Safety Authority referenced therein for a complete and accurate statement of its contents.

78.     The Underwriter Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 78.

79.     The Underwriter Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 79, except respectfully refer the Court to the unidentified source quoted therein for a complete and accurate statement of its contents.

80.     The Underwriter Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 80, and respectfully refer the Court to the unidentified source quoted therein for a complete and accurate statement of its contents.

81.     The Underwriter Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 81.

82.     The Underwriter Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 82, and respectfully refer the Court to the fire inspection report prepared by the Finnish Safety Authority referenced therein for a complete and accurate statement of its contents.

83.     The Underwriter Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 83, and respectfully refer the Court to the fire inspection report prepared by the Finnish Safety Authority referenced therein for a complete and accurate statement of its contents.

84. The Underwriter Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 84.

85. The Underwriter Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 85, except admit that prior to its IPO, Venator was the pigments and additives division of Huntsman.

86. The Underwriter Defendants deny the allegations in paragraph 86, except lack knowledge and information sufficient to form a belief as to the truth of the allegations regarding the supposed motives and interests of Huntsman or the Huntsman family, or the Huntsman family's ownership of Huntsman shares at the time.

87. The Underwriter Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 87, except admit that on May 21, 2017, *The Wall Street Journal* reported that Clariant and Huntsman were having merger discussions, and respectfully refer the Court to Jon Huntsman's statements at the March 28, 2017 investor conference, the May 21, 2017 *Wall Street Journal* article, and the transcript of the May 22, 2017 joint call referenced in paragraph 87 for a complete and accurate statement of their contents.

88. The Underwriter Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 88, except admit that on April 26, 2017, Huntsman announced that it intended to pursue an IPO of Venator, and respectfully refer the Court to Huntsman's April 26, 2017 disclosure referenced in paragraph 88 for a complete and accurate statement of its contents.

89. The Underwriter Defendants deny the allegations in paragraph 89, except lack knowledge or information sufficient to form a belief as to the truth of the allegations regarding when "anyone at Huntsman could even enter the facility," and respectfully refer the Court to the

17

alleged statements by "Huntsman executives" referenced therein for a complete and accurate statement of their contents.

90. The Underwriter Defendants deny the allegations in paragraph 90, except admit that certain of the quoted language appears in the transcript of Huntsman's February 15, 2017 earnings call, and respectfully refer the Court to the transcript of Huntsman's February 15, 2017 earnings call for a complete and accurate statement of its contents.

91. The Underwriter Defendants deny the allegations in paragraph 91, except admit that certain of the quoted language appears in the transcript of Huntsman's February 15, 2017 earnings call, and respectfully refer the Court to the transcript of Huntsman's February 15, 2017 earnings call for a complete and accurate statement of its contents.

92. The Underwriter Defendants deny the allegations in paragraph 92, except admit that on March 27, 2017, Huntsman disclosed that the Pori facility would restart in phases: "~20% capacity within 2Q17; ~40% capacity within 2Q18; ~100% capacity around year end 2018," and respectfully refer the Court to Huntsman's March 27, 2017 disclosure referenced in paragraph 92 for a complete and accurate statement of its contents.

93. The Underwriter Defendants deny the allegations in paragraph 93, except admit that the quoted language in the second sentence appears in the transcript of the May 22, 2017 call announcing the Huntsman-Clariant merger, and that the quoted language in the last sentence appears in a June 26, 2017 Venator press release, and respectfully refer the Court to the transcript and press release for a complete and accurate statement of their contents.

94. The Underwriter Defendants deny the allegations in paragraph 94, except lack knowledge or information sufficient to form a belief as to the truth of the allegations regarding

Huntsman's investigation, and respectfully refer the Court to the Finnish Safety Authority report referenced therein for a complete and accurate statement of its contents.

95. The Underwriter Defendants deny the allegations in paragraph 95, except lack knowledge or information sufficient to form a belief as to the truth of the allegations regarding Huntsman's investigation, and admit that Venator filed a Form S-1 with the SEC on May 5, 2017, and that Venator filed amendments to the S-1 on June 13, 2017, June 30, 2017, and July 14, 2017, which each stated Venator expected the Pori facility to restart in phases with approximately 20% capacity in the second quarter of 2017 and full capacity around the end of 2018, and respectfully refer the Court to those filings for a complete and accurate statement of their contents.

96. The Underwriter Defendants deny the allegations in paragraph 96, except admit that the quoted language appears in a June 1, 2017 letter from the SEC to Venator, and respectfully refer the Court to the letter for a complete and accurate statement of its contents.

97. The Underwriter Defendants deny the allegations in paragraph 97.

98. Paragraph 98 contains allegations regarding Venator's insurance coverage, and all claims premised on such allegations were dismissed by the Court on July 7, 2021 [Dkt. 89]; therefore the Underwriter Defendants need not respond to those allegations. To the extent a response is required, the Underwriter Defendants deny the allegations, except admit that Venator disclosed in its IPO Prospectus and in other SEC filings that the Pori facility was insured for property damage as well as business interruption losses subject to retained deductibles of $15 million and 60 days, respectively, with a limit of $500 million, and that the quoted language in the fifth sentence appears in the transcript of Huntsman's April 26, 2017 earnings call, and respectfully refer the Court to the filings and transcript of the April 26, 2017 earnings call referenced in paragraph 98 for a complete and accurate statement of their contents.

99. The Underwriter Defendants deny the allegations in paragraph 99, except lack knowledge or information sufficient to form a belief as to the truth of the allegations about what "gave analysts confidence," and respectfully refer the Court to the analyst report referenced therein for a complete and accurate statement of its contents.

100. The Underwriter Defendants deny the allegations in paragraph 100, except lack knowledge or information sufficient to form a belief as to the truth of the allegations regarding the "timeline for separating the pigments business before the fire" and Huntsman's investigation, and admit that Venator, Huntsman International, and Huntsman Holdings entered into an underwriting agreement dated August 2, 2017, with underwriters, including Underwriter Defendants, that the phrase "lock-up agreement" can refer to a contractual provision barring insiders of a company from selling their shares for a specified period of time, that Huntsman International, Huntsman Holdings, and certain individuals entered into lock-up agreements with the underwriters named in the underwriting agreement that required prior written consent from three of the Underwriter Defendants prior to taking certain actions with respect to Venator shares, state that the quoted language appears in the IPO Prospectus, and respectfully refer the Court to the underwriting agreement, lock-up agreements, and IPO Prospectus for a complete and accurate statement of their contents.

101. The Underwriter Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 101.

102. The Underwriter Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 102, except admit that the quoted language appears in certain Venator filings including Venator's May 5, 2017 Form S-1, and respectfully refer the Court to those filings for a complete and accurate statement of their contents.

20

103.   The Underwriter Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 103, except admit that the quoted language appears in certain Venator filings including Venator's May 5, 2017 Form S-1, and respectfully refer the Court to those filings for a complete and accurate statement of their contents.

104.   The Underwriter Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 104, except admit that the quoted language appears in certain Venator filings including Venator's May 5, 2017 Form S-1, and respectfully refer the Court to those filings for a complete and accurate statement of their contents.

105.   The Underwriter Defendants deny the allegations in paragraph 105, except lack knowledge or information sufficient to form a belief as to the truth of the allegations as to whether "Pori was critical to all three aspects of the Venator investment proposition" and "[a]t the time, Pori was the second largest facility at Venator," and admit that in its IPO Prospectus, Venator disclosed that the Pori facility had a nameplate capacity of 130,000 metric tons, that it had realized approximately $300 per metric ton improvement in pricing over the course of 2016, and that third party TZ Mineral International Pty Ltd. estimated the "market price of global high quality $TiO2$ will grow by more than $600 per metric ton . . . from December 31, 2016" (not December 31, 2018) "through the end of 2017," and that otherwise the quoted language appears in the IPO Prospectus, and respectfully refer the Court to the IPO Prospectus for a complete and accurate statement of its contents.

106.   The Underwriter Defendants deny the allegations in paragraph 106, except admit that Venator did not disclose Pori's specific contribution to its earnings in its filings in connection with the IPO, and that the quoted language appears in the IPO Prospectus, and respectfully refer the Court to the IPO Prospectus for a complete and accurate statement of its contents.

21

107. The Underwriter Defendants deny the allegations in paragraph 107, except admit that the quoted language appears in the IPO Prospectus and Venator's May 5, 2017 Form S-1, and respectfully refer the Court to the IPO Prospectus and Form S-1 for a complete and accurate statement of their contents. With respect to footnote 5, the allegations in that footnote concern the market demand for TiO2, and all claims premised on such allegations were dismissed by the Court on July 7, 2021 [Dkt. 89]; therefore the Underwriter Defendants need not respond to those allegations. To the extent a response is required, the Underwriter Defendants deny all the allegations in the footnote, except admit that the quoted language appears in the IPO Prospectus and respectfully refer the Court to the IPO Prospectus for a complete and accurate statement of its contents.

108. Paragraph 108 contains allegations regarding Venator's insurance coverage and the market demand for TiO2, and all claims premised on such allegations were dismissed by the Court on July 7, 2021 [Dkt. 89]; therefore the Underwriter Defendants need not respond to those allegations. To the extent a response is required, the Underwriter Defendants deny those allegations. The Underwriter Defendants further deny the remaining allegations in paragraph 108, except state that they lack knowledge or information sufficient to form a belief as to the truth of allegations concerning when Venator "completed its investigation of the fire" and how long it would take for Venator to "complet[e] the demolition work needed to start the rebuild," admit that the quoted language in paragraph 108 appears in the IPO Prospectus, and respectfully refer the Court to the IPO Prospectus and the decision of the U.S. District Court for the District of Columbia referenced in paragraph 108 for a complete and accurate statement of their contents.

109. Paragraph 109 contains allegations regarding Venator's market demand for TiO2, and all claims premised on such allegations were dismissed by the Court on July 7, 2021 [Dkt. 89];

22

therefore the Underwriter Defendants need not respond to those allegations.  To the extent a response is required, the Underwriter Defendants deny those allegations.  The Underwriter Defendants deny the remaining allegations in paragraph 109, except state that they lack knowledge or information sufficient to form a belief as to the truth of the allegations regarding the visit to the Pori facility and as to whether reported results beat analyst estimates "across the board," admit that Venator's IPO closed on August 8, 2017, that Venator conducted a secondary offering of stock on December 4, 2017, and that the quoted language appears in the transcript of Venator's October 27, 2017 earnings call, and respectfully refer the Court to the transcript for a complete and accurate statement of its contents.

110.    Paragraph 110 contains allegations regarding Venator's market demand for TiO2, and all claims premised on such allegations were dismissed by the Court on July 7, 2021 [Dkt. 89]; therefore the Underwriter Defendants need not respond to those allegations.  To the extent a response is required, the Underwriter Defendants deny those allegations, except admit that the quoted language appears in the transcript of Venator's October 27, 2017 earnings call, and respectfully refer the Court to the transcript for a complete and accurate statement of its contents.

111.    Paragraph 111 contains allegations regarding the market demand for TiO2, and all claims premised on such allegations were dismissed by the Court on July 7, 2021 [Dkt. 89]; therefore the Underwriter Defendants need not respond to those allegations.  To the extent a response is required, the Underwriter Defendants deny the allegations in paragraph 111, except admit that the quoted language appears in the transcript of Venator's October 27, 2017 earnings call, and respectfully refer the Court to the earnings call transcript for a complete and accurate statement of its contents.

112. Paragraph 112 contains allegations regarding Venator's insurance coverage and the market demand for TiO2, and all claims premised on such allegations were dismissed by the Court on July 7, 2021 [Dkt. 89]; therefore the Underwriter Defendants need not respond to those allegations. To the extent a response is required, the Underwriter Defendants deny the allegations in paragraph 112, except admit that certain of the quoted language appears in the transcript of Venator's October 27, 2017 earnings call, and respectfully refer the Court to the transcript for a complete and accurate statement of its contents.

113. Paragraph 113 contains allegations regarding Venator's insurance coverage, and all claims premised on such allegations were dismissed by the Court on July 7, 2021 [Dkt. 89]; therefore the Underwriter Defendants need not respond to those allegations. To the extent a response is required, the Underwriter Defendants deny the allegations in paragraph 113, except admit that the quoted language appears in the transcript of Venator's October 27, 2017 earnings call, and respectfully refer the Court to the transcript for a complete and accurate statement of its contents.

114. The Underwriter Defendants deny the allegations in paragraph 114, except lack knowledge or information sufficient to form a belief as to the truth of the allegations about what representations were "credited" by "analysts," and respectfully refer the Court to the analyst reports referenced therein for a complete and accurate statement of their contents.

115. Paragraph 115 contains allegations regarding Venator's insurance coverage, and all claims premised on such allegations were dismissed by the Court on July 7, 2021 [Dkt. 89]; therefore the Underwriter Defendants need not respond to those allegations. To the extent a response is required, the Underwriter Defendants deny the allegations in paragraph 115, except lack knowledge or information sufficient to form a belief as to the truth of the allegations about

24

what "analysts" allegedly "accepted," admit that Venator's stock price closed at $24.81 on October 27, 2017, and respectfully refer the Court to the analyst reports referenced therein for a complete and accurate statement of their contents.

116. The Underwriter Defendants deny the allegations in paragraph 116, except lack knowledge or information sufficient to form a belief as to the supposed motives of Huntsman, and admit that Venator, Huntsman Holdings, and certain individuals obtained a waiver from their lock-up agreements and that Venator filed a Form S-1 with the SEC for the SPO on November 27, 2017.

117. The Underwriter Defendants deny the allegations in paragraph 117, except respectfully refer the Court to the SPO materials referenced therein for a complete and accurate statement of their contents.

118. The Underwriter Defendants deny the allegations in paragraph 118, except admit that the quoted language appears in the SPO Prospectus, and respectfully refer the Court to the SPO Prospectus for a complete and accurate statement of its contents.

119. The Underwriter Defendants deny the allegations in paragraph 119, except admit that the IPO Prospectus and SPO Prospectus stated that the production capacity for Venator's facilities in Pori, Finland; Uerdingen, Germany; Duisburg, Germany; and Scarlino, Italy was 130,000, 107,000, 100,000, and 80,000 metric tons, respectively, that the quoted language appears in the SPO Prospectus, and respectfully refer the Court to the SPO Prospectus for a complete and accurate statement of its contents.

120. The Underwriter Defendants deny the allegations in paragraph 120, except admit that the quoted language appears in Venator's November 27, 2017 Form S-1, and respectfully refer the Court to the Form S-1 for a complete and accurate statement of its contents.

121. Paragraph 121 contains allegations regarding Venator's insurance coverage and market demand for TiO2, and all claims premised on such allegations were dismissed by the Court on July 7, 2021 [Dkt. 89]; therefore the Underwriter Defendants need not respond to those allegations. To the extent a response is required, the Underwriter Defendants deny the allegations in paragraph 121, except admit that the quoted language appears in the SPO Prospectus, and respectfully refer the Court to the SPO Prospectus for a complete and accurate statement of its contents.

122. The Underwriter Defendants deny the allegations in paragraph 122, except admit that the first quote appears in Venator's Form 10-K for 2017 and in other Venator SEC filings and the second quote appears in the transcript of Venator's May 1, 2018 earnings call, and respectfully refer the Court to those SEC filings and that transcript for a complete and accurate statement of their contents.

123. The Underwriter Defendants deny the allegations in paragraph 123, except admit that certain of the quoted language appears in the transcript of Venator's February 23, 2018 earnings call, and respectfully refer the Court to the transcript for a complete and accurate statement of its contents.

124. The Underwriter Defendants deny the allegations in paragraph 124, except admit that certain of the quoted language in the first sentence appears in the transcript of Venator's February 23, 2018 earnings call, and that the quoted language in the second sentence appears in Venator's February 23, 2018 Form 10-K, and respectfully refer the Court to the transcript and Form 10-K for a complete and accurate statement of their contents.

125. The Underwriter Defendants deny the allegations in paragraph 125, except lack knowledge or information sufficient to form a belief as to the truth of the allegations about what

26

analysts "accepted," and respectfully refer the Court to the analyst reports referenced therein for a complete and accurate statement of their contents.

126. Paragraph 126 contains allegations regarding Venator's insurance coverage, and all claims premised on such allegations were dismissed by the Court on July 7, 2021 [Dkt. 89]; therefore the Underwriter Defendants need not respond to those allegations. To the extent a response is required, the Underwriter Defendants deny the allegations in paragraph 126, except admit that certain of the quoted language appears in the transcript of Venator's February 23, 2018 earnings call, and respectfully refer the Court to the transcript for a complete and accurate statement of its contents.

127. Paragraph 127 contains allegations regarding Venator's insurance coverage, and all claims premised on such allegations were dismissed by the Court on July 7, 2021 [Dkt. 89]; therefore the Underwriter Defendants need not respond to those allegations. To the extent a response is required, the Underwriter Defendants deny the allegations in paragraph 127, except lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 127 about what "analysts" "accepted" and "did not suspect," and respectfully refer the Court to the analyst reports referenced therein for a complete and accurate statement of their contents.

128. Paragraph 128 contains allegations regarding the market demand for TiO2, and all claims premised on such allegations were dismissed by the Court on July 7, 2021 [Dkt. 89]; therefore the Underwriter Defendants need not respond to those allegations. To the extent a response is required, the Underwriter Defendants deny the allegations in paragraph 128, except admit that the quoted language appears in the transcript of Venator's February 23, 2018 earnings

27

call, and respectfully refer the Court to the transcript for a complete and accurate statement of its contents.

129. Paragraph 129 contains allegations regarding the market demand for TiO2, and all claims premised on such allegations were dismissed by the Court on July 7, 2021 [Dkt. 89]; therefore the Underwriter Defendants need not respond to those allegations. To the extent a response is required, the Underwriter Defendants deny the allegations in paragraph 129, except lack knowledge or information sufficient to form a belief as to the truth of the allegations about what analysts "credited," and respectfully refer the Court to the analyst reports referenced therein for a complete and accurate statement of their contents.

130. The Underwriter Defendants deny the allegations in paragraph 130.

131. The Underwriter Defendants deny the allegations in paragraph 131, except lack knowledge or information sufficient to form a belief as to the truth of the allegations about statements allegedly made by former Venator employees.

132. The Underwriter Defendants deny the allegations in paragraph 132, except lack knowledge or information sufficient to form a belief as to the truth of the allegations about statements allegedly made by a former Venator employee.

133. The Underwriter Defendants deny the allegations in paragraph 133, except lack knowledge or information sufficient to form a belief as to the truth of the allegations about statements allegedly made by a former Venator employee.

134. The Underwriter Defendants deny the allegations in paragraph 134, except lack knowledge or information sufficient to form a belief as to the truth of the allegations about statements allegedly made by former Venator employees, and respectfully refer to the website referenced in footnote seven for a complete and accurate statement of its contents. The

Underwriter Defendants also deny that the photos incorporated into paragraph 134 provide a complete and accurate depiction of the Pori facility at the referenced times.

135. The Underwriter Defendants deny the allegations in paragraph 135, except deny knowledge or information sufficient to form a belief as to the truth of the allegations regarding what the Huntsman and Venator executives allegedly knew.

136. The Underwriter Defendants deny the allegations in paragraph 136, except lack knowledge or information sufficient to form a belief as to the truth of the allegations about statements allegedly made by former Venator employees.

137. The Underwriter Defendants deny the allegations in paragraph 137, except lack knowledge or information sufficient to form a belief as to the truth of the allegations about statements allegedly made by a former Venator employee.

138. The Underwriter Defendants deny the allegations in paragraph 138, except respectfully refer the Court to the transcript of Mahomed Maiter's deposition and testimony referenced therein for a complete and accurate statement of their contents.

139. The Underwriter Defendants deny the allegations in paragraph 139, except lack knowledge or information sufficient to form a belief as to the truth of the allegations about statements allegedly made by a former Venator employee.

140. The Underwriter Defendants deny the allegations in paragraph 140, except lack knowledge or information sufficient to form a belief as to the truth of the allegations about statements allegedly made by a former Venator employee.

141. Paragraph 141 contains allegations regarding Venator's insurance coverage, and all claims premised on such allegations were dismissed by the Court on July 7, 2021 [Dkt. 89]; therefore the Underwriter Defendants need not respond to those allegations. To the extent a

29

response is required, the Underwriter Defendants deny the allegations in paragraph 141, except lack knowledge or information sufficient to form a belief as to the truth of the allegations about statements allegedly made by a former Venator employee.

142. The Underwriter Defendants deny the allegations in paragraph 142, except lack knowledge or information sufficient to form a belief as to the truth of the allegations about statements allegedly made by a former Venator employee.

143. The Underwriter Defendants deny the allegations in paragraph 143, except lack knowledge or information sufficient to form a belief as to the truth of the allegations about statements allegedly made by a former Venator employee.

144. The Underwriter Defendants deny the allegations in paragraph 144, except lack knowledge or information sufficient to form a belief as to the truth of the allegations about statements allegedly made by a former Venator employee.

145. The Underwriter Defendants deny the allegations in paragraph 145, except lack knowledge or information sufficient to form a belief as to the truth of the allegations about Venator senior management and statements allegedly made by a former Venator employee.

146. The Underwriter Defendants deny the allegations in paragraph 146, except lack knowledge or information sufficient to form a belief as to the allegations about statements allegedly made by a former Venator employee and regarding the "collapse of the tunnel being built near Rastatt, Germany."

147. Paragraph 147 contains allegations regarding the market demand for TiO2, and all claims premised on such allegations were dismissed by the Court on July 7, 2021 [Dkt. 89]; therefore the Underwriter Defendants need not respond to those allegations. To the extent a response is required, the Underwriter Defendants deny the allegations in paragraph 147.

148. Paragraph 148 contains allegations regarding the market demand for TiO2, and all claims premised on such allegations were dismissed by the Court on July 7, 2021 [Dkt. 89]; therefore the Underwriter Defendants need not respond to those allegations. To the extent a response is required, the Underwriter Defendants deny the allegations in paragraph 148, except respectfully refer the Court to the opinion of the United States District Court for the District of Columbia referenced therein for a complete and accurate statement of its contents.

149. Paragraph 149 contains allegations regarding the market demand for TiO2, and all claims premised on such allegations were dismissed by the Court on July 7, 2021 [Dkt. 89]; therefore the Underwriter Defendants need not respond to those allegations. To the extent a response is required, the Underwriter Defendants deny the allegations, except respectfully refer the Court to the opinion of the United States District Court for the District of Columbia and to the expert testimony referenced therein for a complete and accurate statement of their contents.

150. Paragraph 150 contains allegations regarding the market demand for TiO2, and all claims premised on such allegations were dismissed by the Court on July 7, 2021 [Dkt. 89]; therefore the Underwriter Defendants need not respond to those allegations. To the extent a response is required, the Underwriter Defendants deny the allegations in paragraph 150, except lack knowledge or information sufficient to form a belief as to the allegations regarding what Venator's senior executives "closely tracked" or "knew without doubt."

151. Paragraph 151 contains allegations regarding Venator's insurance coverage, and all claims premised on such allegations were dismissed by the Court on July 7, 2021 [Dkt. 89]; therefore the Underwriter Defendants need not respond to those allegations. To the extent a response is required, the Underwriter Defendants deny the allegations, except admit that certain of

31

the quoted language appears in the transcript of Venator's February 23, 2018 earnings call, and respectfully refer the Court to the transcript for a complete and accurate statement of its contents.

152. Paragraph 152 contains allegations regarding Venator's insurance coverage, and all claims premised on such allegations were dismissed by the Court on July 7, 2021 [Dkt. 89]; therefore the Underwriter Defendants need not respond to those allegations. To the extent a response is required, the Underwriter Defendants deny the allegations in paragraph 152, except admit that certain of the quoted language appears in the transcript of Venator's February 23, 2018 earnings call, and respectfully refer the Court to the transcript for a complete and accurate statement of its contents.

153. The Underwriter Defendants deny the allegations in paragraph 153, except admit that certain of the quoted language appears in the transcript of Venator's February 23, 2018 earnings call, and respectfully refer the Court to the transcript for a complete and accurate statement of its contents.

154. Paragraph 154 contains allegations regarding the market demand for TiO2, and all claims premised on such allegations were dismissed by the Court on July 7, 2021 [Dkt. 89]; therefore the Underwriter Defendants need not respond to those allegations. To the extent a response is required, the Underwriter Defendants deny the allegations in paragraph 154, except admit that certain of the quoted language appears in the transcript of Venator's February 23, 2018 earnings call, and respectfully refer the Court to the transcript for a complete and accurate statement of its contents.

155. The Underwriter Defendants deny the allegations in paragraph 155, except lack knowledge or information sufficient to form a belief as to truth of allegations regarding what "analysts" were "[s]eeking," admit that certain of the quoted language appears in the transcript of

32

Venator's February 23, 2018 earnings call, and respectfully refer the Court to the transcript for a complete and accurate statement of its contents.

156. Paragraph 156 contains allegations regarding the market demand for TiO2, and all claims premised on such allegations were dismissed by the Court on July 7, 2021 [Dkt. 89]; therefore the Underwriter Defendants need not respond to those allegations. To the extent a response is required, the Underwriter Defendants deny the allegations in paragraph 156, except admit that the quoted language appears in Venator's February 23, 2018 press release, and respectfully refer the Court to the press release for a complete and accurate statement of its contents.

157. Paragraph 157 contains allegations regarding the market demand for TiO2, and all claims premised on such allegations were dismissed by the Court on July 7, 2021 [Dkt. 89]; therefore the Underwriter Defendants need not respond to those allegations. To the extent a response is required, the Underwriter Defendants deny the allegations in paragraph 157, except admit that the quoted language appears in Venator's February 23, 2018 Form 10-K, and respectfully refer the Court to the Form 10-K for a complete and accurate statement of its contents.

158. Paragraph 158 contains allegations regarding the market demand for TiO2, and all claims premised on such allegations were dismissed by the Court on July 7, 2021 [Dkt. 89]; therefore the Underwriter Defendants need not respond to those allegations. To the extent a response is required, the Underwriter Defendants deny the allegations in paragraph 158, except lack knowledge or information sufficient to form a belief as to the truth of the allegations about what representations were "credited" by "analysts," and respectfully refer the Court to the analyst report referenced therein for a complete and accurate statement of its contents.

159.    Paragraph 159 contains allegations regarding Venator's insurance coverage, and all claims premised on such allegations were dismissed by the Court on July 7, 2021 [Dkt. 89]; therefore the Underwriter Defendants need not respond to those allegations.   To the extent a response is required, the Underwriter Defendants deny those allegations.   As to the remaining allegations in paragraph 159, the Underwriter Defendants deny the allegations, except lack knowledge or information sufficient to form a belief as to the truth of the allegations about what representations were "credited" by "analysts," and respectfully refer the Court to the analyst report referenced therein for a complete and accurate statement of its contents.

160.    Paragraph 160 contains allegations regarding Venator's insurance coverage and the market demand for TiO2, and all claims premised on such allegations were dismissed by the Court on July 7, 2021 [Dkt. 89]; therefore the Underwriter Defendants need not respond to those allegations.   To the extent a response is required, the Underwriter Defendants deny the allegations in paragraph 160, and respectfully refer the Court to the analyst reports referenced therein for a complete and accurate statement of their contents.

161.    The Underwriter Defendants deny the allegations in paragraph 161, except admit that on May 1, 2018, Venator released its financial results for the first quarter of 2018, and that the quoted language appears in the transcript of Venator's May 1, 2018 earnings call, and respectfully refer the Court to the transcript for a complete and accurate statement of its contents.

162.    The Underwriter Defendants deny the allegations in paragraph 162, except deny knowledge or information sufficient to form a belief as to the truth of allegations concerning whether "analysts" were "skeptical," admit that certain of the quoted language appears in the transcript of Venator's May 1, 2018 earnings call, and respectfully refer the Court to the transcript for a complete and accurate statement of its contents.

163.    Paragraph 163 contains allegations regarding Venator's insurance coverage, and all claims premised on such allegations were dismissed by the Court on July 7, 2021 [Dkt. 89]; therefore the Underwriter Defendants need not respond to those allegations.   To the extent a response is required, the Underwriter Defendants deny the allegations in paragraph 163, except admit that certain of the quoted language appears in the transcript of Venator's May 1, 2018 earnings call, and respectfully refer the Court to the transcript for a complete and accurate statement of its contents.

164.    The Underwriter Defendants deny the allegations in paragraph 164, except lack knowledge or information sufficient to form a belief as to the truth of the allegations about what representations "reassured" "analysts," and respectfully refer the Court to the analyst reports referenced therein for a complete and accurate statement of their contents.

165.    Paragraph 165 contains allegations regarding Venator's insurance coverage, and all claims premised on such allegations were dismissed by the Court on July 7, 2021 [Dkt. 89]; therefore the Underwriter Defendants need not respond to those allegations.   To the extent a response is required, the Underwriter Defendants deny those allegations.   As to the remaining allegations in paragraph 165, the Underwriter Defendants deny the allegations, except respectfully refer the Court to Venator's July 31, 2018 Form 10-Q for a complete and accurate statement of its contents.

166.    Paragraph 166 contains allegations regarding Venator's insurance coverage, and all claims premised on such allegations were dismissed by the Court on July 7, 2021 [Dkt. 89]; therefore the Underwriter Defendants need not respond to those allegations.   To the extent a response is required, the Underwriter Defendants deny the allegations, except admit that the quoted language in the first sentence appears in Venator's July 31, 2018 press release, and respectfully

35

refer the Court to the press release for a complete and accurate statement of its contents. As to the remaining allegations in paragraph 166, the Underwriter Defendants deny the allegations, except admit that the quoted language in the second sentence appears in Venator's July 31, 2018 press release, and respectfully refer the Court to the press release for a complete and accurate statement of its contents.

167.　Paragraph 167 contains allegations regarding Venator's insurance coverage, and all claims premised on such allegations were dismissed by the Court on July 7, 2021 [Dkt. 89]; therefore the Underwriter Defendants need not respond to those allegations. To the extent a response is required, the Underwriter Defendants deny the allegations, except admit that the quoted language in the second sentence appears in Venator's July 31, 2018 Form 10-Q, and respectfully refer the Court to the Form 10-Q for a complete and accurate statement of its contents. As to the remaining allegations in paragraph 167, the Underwriter Defendants deny the allegations, except admit that Venator filed its quarterly report with the SEC for the second quarter of 2018 on July 31, 2018, and that the quoted language in the final sentence of paragraph 167 appears in Venator's July 31, 2018 Form 10-Q, and respectfully refer the Court to the Form 10-Q for a complete and accurate statement of its contents.

168.　The Underwriter Defendants deny the allegations in paragraph 168, except admit that the closing price for Venator stock on July 30, 2018, was $15.35, and the closing price for Venator stock on July 31, 2018, was $14.62.

169.　Paragraph 169 contains allegations regarding the market demand for TiO2, and all claims premised on such allegations were dismissed by the Court on July 7, 2021 [Dkt. 89]; therefore the Underwriter Defendants need not respond to those allegations. To the extent a response is required, the Underwriter Defendants deny the allegations in paragraph 169, except

admit that the quoted language appears in Venator's July 31, 2018 press release, and respectfully refer the Court to the press release for a complete and accurate statement of its contents.

170.    Paragraph 170 contains allegations regarding Venator's insurance coverage, and all claims premised on such allegations were dismissed by the Court on July 7, 2021 [Dkt. 89]; therefore the Underwriter Defendants need not respond to those allegations.   To the extent a response is required, the Underwriter Defendants deny the allegations in paragraph 170, except admit that the quoted language appears in the transcript of Venator's July 31, 2018 earnings call, and respectfully refer the Court to the transcript for a complete and accurate statement of its contents.

171.    The Underwriter Defendants deny the allegations in paragraph 171, except admit that certain of the quoted language appears in the transcript of Venator's July 31, 2018 earnings call, and respectfully refer the Court to the transcript for a complete and accurate statement of its contents.

172.    The Underwriter Defendants deny the allegations in paragraph 172, except lack knowledge or information sufficient to form a belief as to the truth of the allegations regarding what "analysts and market commentators connected," and respectfully refer the Court to the analyst reports referenced therein for a complete and accurate statement of their contents.

173.    Paragraph 173 contains allegations regarding Venator's insurance coverage, and all claims premised on such allegations were dismissed by the Court on July 7, 2021 [Dkt. 89]; therefore the Underwriter Defendants need not respond to those allegations.   To the extent a response is required, the Underwriter Defendants deny the allegations in paragraph 173, except admit that Venator announced on September 12, 2018, that it would forego the reconstruction efforts of its Pori facility, and that the quoted language appears in the transcript of Venator's

37

September 12, 2018 call, and respectfully refer the Court to the transcript for a complete and accurate statement of its contents.

174. Paragraph 174 contains allegations regarding Venator's insurance coverage, and all claims premised on such allegations were dismissed by the Court on July 7, 2021 [Dkt. 89]; therefore the Underwriter Defendants need not respond to those allegations. To the extent a response is required, the Underwriter Defendants deny the allegations in paragraph 174, except admit that the quoted language in the first two sentences appears in the transcript of Venator's September 12, 2018 call, and respectfully refer the Court to the transcript for a complete and accurate statement of its contents.

175. The Underwriter Defendants deny the allegations in paragraph 175, except admit that the quoted language appears in the transcript of Venator's September 12, 2018 call, and respectfully refer the Court to the transcript for a complete and accurate statement of its contents.

176. The Underwriter Defendants deny the allegations in paragraph 176, except lack knowledge or information sufficient to form a belief as to the truth of the allegations regarding what "analysts" understood, admit that the quoted language appears in the transcript of Venator's September 12, 2018 call, and respectfully refer the Court to the transcript for a complete and accurate statement of its contents.

177. Paragraph 177 contains allegations regarding Venator's insurance coverage, and all claims premised on such allegations were dismissed by the Court on July 7, 2021 [Dkt. 89]; therefore the Underwriter Defendants need not respond to those allegations. To the extent a response is required, the Underwriter Defendants deny the allegations in paragraph 177, except admit that on September 12, 2018, the United States District Court for the District of Columbia issued a memorandum opinion granting the FTC's motion for a preliminary injunction in *Fed.*

38

*Trade Comm'n* v. *Tronox Ltd.,* Case No. 1:18-cv-01622 (TNM) (D.D.C.), and that the quoted language appears in that opinion, and respectfully refer the Court to the opinion for a complete and accurate statement of its contents.

178. The Underwriter Defendants deny the allegations in paragraph 178, except admit that the closing price for Venator stock on September 11, 2018, was $11.35, and that the closing price for Venator stock on September 12, 2018, was $10.81.

179. The Underwriter Defendants deny the allegations in paragraph 179, except lack knowledge or information sufficient to form a belief as to the truth of the allegations about what "analysts discussed," and respectfully refer the Court to the analyst reports referenced therein for a complete and accurate statement of their contents.

180. The Underwriter Defendants deny the allegations in paragraph 180, except respectfully refer the Court to the transcript of Venator's September 12, 2018 call and Venator's SEC filings referenced therein for a complete and accurate statement of their contents.

181. The Underwriter Defendants deny the allegations in paragraph 181, except lack knowledge or information sufficient to form a belief as to the truth of the allegations about what "analysts" or "investors" "did not appreciate or understand," and respectfully refer the Court to the transcript of Venator's September 12, 2018 call and analyst reports referred to therein for a complete and accurate statement of their contents.

182. Paragraph 182 contains allegations regarding Venator's insurance coverage, and all claims premised on such allegations were dismissed by the Court on July 7, 2021 [Dkt. 89]; therefore the Underwriter Defendants need not respond to those allegations. To the extent a response is required, the Underwriter Defendants deny the allegations. As to the remaining allegations in paragraph 182, the Underwriter Defendants deny the allegations, except admit that

in Venator's October 30, 2018 Form 10-Q for the third quarter of 2018, Venator disclosed a charge of $415 million in restructuring expenses, and that certain of the quoted language appears in Venator's October 30, 2018 Form 10-Q, and respectfully refer the Court to the Form 10-Q for a complete and accurate statement of its contents.

183. Paragraph 183 contains allegations regarding the market demand for TiO2, and all claims premised on such allegations were dismissed by the Court on July 7, 2021 [Dkt. 89]; therefore the Underwriter Defendants need not respond to those allegations. To the extent a response is required, the Underwriter Defendants deny the allegations. As to the remaining allegations in paragraph 183, the Underwriter Defendants deny the allegations, except admit that the quoted language appears in the transcript of Venator's October 30, 2018 earnings call, and respectfully refer the Court to the transcript for a complete and accurate statement of its contents.

184. The Underwriter Defendants deny the allegations in paragraph 184, except lack knowledge or information sufficient to form a belief as to the truth of the allegations about whether trading volume was "unusually high" on October 30, 2018, and admit that the closing price for Venator stock on October 29, 2018, was $8.00 and the closing price for Venator stock on October 30, 2018, was $6.47.

185. The Underwriter Defendants deny the allegations in paragraph 185, except lack knowledge or information sufficient to form a belief as to the truth of the allegations about what "analysts" "understood," and respectfully refer the Court to the analyst reports referenced therein for a complete and accurate statement of their contents.

186. The Underwriter Defendants deny the allegations in paragraph 186, except admit that the closing price of Venator's stock on October 30, 2018, was 68% lower than the $20.00

price at which shares were offered in the IPO, and 71% lower than the $22.50 price at which shares were offered in the SPO.

187.    The Underwriter Defendants deny the allegations in paragraph 187, except respectfully refer the Court to Venator's presentation at the November 27, 2018 Citi Basic Materials Conference for a complete and accurate statement of its contents.

188.    The Underwriter Defendants deny the allegations in paragraph 188, except lack knowledge or information sufficient to form a belief as to the truth of the allegations as to what "analysts" had "previously requested," and admit that in a December 3, 2018 report, J.P. Morgan analysts downgraded Venator from Overweight to Neutral, and that the quoted language in the first two sentences appears in the transcript of Venator's February 23, 2018 earnings call, and respectfully refer the Court to the analyst report and transcript for a complete and accurate statement of their contents.

189.    Paragraph 189 contains allegations regarding the market demand for TiO2, and all claims premised on such allegations were dismissed by the Court on July 7, 2021 [Dkt. 89]; therefore the Underwriter Defendants need not respond to those allegations. To the extent a response is required, the Underwriter Defendants deny the allegations in paragraph 189, except respectfully refer the Court to the docket in *Fed. Trade Comm'n* v. *Tronox Ltd.,* Case No. 1:18-cv-01622 (TNM) (D.D.C.), for a complete and accurate statement of the District Court's rulings in that case.

190.    The Underwriter Defendants deny the allegations in paragraph 190, except respectfully refer the Court to the declaration of Mahomed Maiter referenced and quoted therein for a complete and accurate statement of its contents.

191.    To the extent that the allegations of paragraph 191 consist of legal conclusions, the Underwriter Defendants need not respond. To the extent a response is required, the Underwriter Defendants deny the allegations, except admit that on February 8, 2019, Macomb County Employees' Retirement System filed suit in the District Court for Dallas County, Texas, against defendants, including Venator, Simon Turner, Kurt Ogden, Stephen Ibbotson, Russ Stolle, Huntsman, Huntsman Holdings, Huntsman International, and the Underwriter Defendants, for alleged violations of Sections 11, 12(a)(2), and 15 of the Securities Act, respectfully refer the Court to the docket in *Macomb County Employees' Retirement System* v. *Venator Materials PLC*, No. DC-19-02030 (134th District Court, Dallas County, Texas, Feb. 8, 2019) ("Texas Action") for a complete description of the Texas Action, and state further that the Underwriter Defendants were dismissed from the Texas Action after the Texas Court of Appeals concluded that the District Court lacked personal jurisdiction over the Underwriter Defendants and reversed the District Court's decision denying the Underwriter Defendants' special appearance.

192.    Paragraph 192 states legal conclusions to which the Underwriter Defendants need not respond; to the extent a response is required, the Underwriter Defendants deny the allegations, except lack knowledge or information sufficient to form a belief of the allegations concerning what the "Venator Defendants" and "senior executives at Venator" knew.

193.    The Underwriter Defendants deny the allegations in paragraph 193, except lack knowledge or information sufficient to form a belief as to the truth of the allegations concerning the "regular internal meetings" and statements allegedly made by a former Venator employee, and respectfully refer the Court to the transcript of Mohamed Maiter's testimony referenced therein for a complete and accurate statement of its contents.

42

194.     Paragraph 194 contains allegations regarding Venator's insurance coverage and the market demand for TiO2, and all claims premised on such allegations were dismissed by the Court on July 7, 2021 [Dkt. 89]; therefore the Underwriter Defendants need not respond to those allegations.  To the extent a response is required, the Underwriter Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations, except admit that there were meetings between Venator and insurance carriers from time to time related to the Pori facility. As to the remaining allegations in paragraph 194, the Underwriter Defendants deny the allegations to the extent "Defendants" refers to the Underwriter Defendants, and otherwise lack knowledge or information sufficient to form a belief as to the truth of the allegations.

195.     The Underwriter Defendants deny the allegations in paragraph 195, except admit that certain of the quoted language appears in the transcript of the October 27, 2017 earnings call, and respectfully refer the Court to the transcript of the earnings calls referenced therein for a complete and accurate statement of their contents.

196.     The Underwriter Defendants deny the allegations in paragraph 196, except respectfully refer the Court to the transcripts for Venator's conference calls referenced therein for a complete and accurate statement of their contents.

197.     Paragraph 197 contains allegations regarding Venator's insurance coverage, and all claims premised on such allegations were dismissed by the Court on July 7, 2021 [Dkt. 89]; therefore the Underwriter Defendants need not respond to those allegations.  To the extent a response is required, the Underwriter Defendants state that the allegations regarding what Defendants were "required" to disclose state a legal conclusion to which no response is required, and otherwise deny the allegations, except respectfully refer the Court to the quarterly filings referenced in paragraph 197 for a complete and accurate statement of their contents.

43

198. The first and last sentence of paragraph 198 state legal conclusions to which no response is required. To the extent a response is required, the Underwriter Defendants deny the allegations. As to the remaining allegations, the Underwriter Defendants deny the allegations, except admit that Venator disclosed that the Pori facility was one of eight Venator facilities that produced TiO2 at the time of the IPO and SPO and accounted for approximately 17% of Venator's total nameplate TiO2 capacity, and respectfully refer the Court to the alleged statements by Simon Turner quoted therein for a complete and accurate statement of its contents.

199. The first and last sentence of paragraph 199 state legal conclusions to which no response is required; to the extent a response is required, the Underwriter Defendants deny the allegations. As to the remaining allegations in paragraph 199, the Underwriter Defendants deny the allegations.

200. The Underwriter Defendants deny the allegations in paragraph 200, except admit that Venator disclosed that the Pori facility's nameplate capacity accounted for approximately 17% of Venator's total nameplate capacity, and lack knowledge or information sufficient to form a belief as to the truth of the allegations regarding statements allegedly made by former employees of Venator.

201. The Underwriter Defendants deny the allegations in paragraph 201, except lack knowledge or information sufficient to form a belief as to the truth of the allegations regarding statements allegedly made by former employees of Venator and what "Venator's senior leadership" approved and Venator's "senior managers closely tracked."

202. The first sentence of paragraph 202 states a legal conclusion to which no response is required; to the extent a response is required, the Underwriter Defendants deny the allegations. As to the remaining allegations in paragraph 202, the Underwriter Defendants lack knowledge or

44

information sufficient to form a belief as to the truth of the allegations, except admit that, prior to 2017, Huntsman had disclosed that it would spin off its pigments and additives business to existing Huntsman shareholders.

203. The last sentence of paragraph 203 states a legal conclusion to which no response is required; to the extent a response is required, the Underwriter Defendants deny the allegations. As to the remaining allegations in paragraph 203, the Underwriter Defendants deny the allegations, except lack knowledge or information sufficient to form a belief as to the truth of the allegations about the supposed motives and knowledge of the Huntsman and Venator executives, Huntsman's proceeds from the debt distribution, and Huntsman's use of the proceeds from the IPO and SPO, and admit that the IPO and SPO raised approximately $475 million and $471 million in net proceeds respectively.

204. The Underwriter Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 204, except respectfully refer the Court to Huntsman's filings with the SEC for a complete and accurate description of Peter Huntsman's ownership of Huntsman shares.

205. The Underwriter Defendants deny that any "true damage to the pigments business as a result of the Pori fire" was not disclosed, and otherwise lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 205.

206. The Underwriter Defendants deny that the "truth about Pori" was "conceal[ed]," and otherwise lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 206, except admit that Peter Huntsman became CEO of Huntsman in 2000.

207.    Paragraph 207 contains allegations regarding Venator's insurance coverage and the market demand for TiO2, and all claims premised on such allegations were dismissed by the Court on July 7, 2021 [Dkt. 89]; therefore the Underwriter Defendants need not respond to those allegations.  To the extent a response is required, the Underwriter Defendants deny the allegations. Further, paragraph 207 states legal conclusions to which the Underwriter Defendants need not respond; to the extent a response is required, the Underwriter Defendants deny the allegations.

208.    The Underwriter Defendants deny the allegations in paragraph 208.

209.    The Underwriter Defendants deny the allegations in paragraph 209, except admit that the quoted language appears in the IPO Prospectus, and respectfully refer the Court to the IPO Prospectus for a complete and accurate statement of its contents.

210.    The Underwriter Defendants deny the allegations in paragraph 210, except lack knowledge or information sufficient to form a belief as to the truth of allegations as to whether "Venator executives" "appeared" at the UBS Global Chemicals & Paper and Packaging Conference on September 6, 2017, and admit that the quoted language appears in Venator's presentation for that conference, which was posted to Venator's website, and respectfully refer the Court to the presentation for a complete and accurate statement of its contents.

211.    The Underwriter Defendants deny the allegations in paragraph 211, except admit that the quoted language appears in Venator's presentation for the September 13, 2017 KeyBanc Basic Materials & Packaging Conference, which was posted to Venator's website, and respectfully refer the Court to the presentation for a complete and accurate statement of its contents.

212.    The Underwriter Defendants deny the allegations in paragraph 212, except lack knowledge or information sufficient to form a belief as to the truth of allegations as to whether disclosed earnings "significantly beat market consensus estimates," and admit that Venator

46

announced its financial results for the third quarter of 2017 on October 27, 2017, that Venator issued a press release the same day, and that the quoted language appears in the press release, and respectfully refer the Court to the press release for a complete and accurate statement of its contents.

213.    The Underwriter Defendants deny the allegations in paragraph 213, except admit that Venator held an earnings call on October 27, 2017, and that the quoted language appears in the transcript of Venator's October 27, 2017 earnings call, and respectfully refer the Court to the transcript for a complete and accurate statement of its contents.

214.    The Underwriter Defendants deny the allegations in paragraph 214, except admit that on November 3, 2017, Venator issued its Form 10-Q for the third quarter of 2017, that the quoted language appears in the November 3, 2017 Form 10-Q, and that the signatures of Simon Turner and Kurt Ogden appear on the Form 10-Q certifying to its accuracy and completeness, and respectfully refer the Court to the Form 10-Q for a complete and accurate statement of its contents.

215.    The Underwriter Defendants deny the allegations in paragraph 215, except admit that on February 23, 2018, Venator filed its Form 10-K for the year ended December 31, 2017, that the quoted language appears in the February 23, 2018 Form 10-K, and that the signatures of Simon Turner and Kurt Ogden appear on the Form 10-K certifying to its accuracy and completeness, and respectfully refer the Court to the Form 10-K for a complete and accurate statement of its contents.

216.    The Underwriter Defendants deny the allegations in paragraph 216, except admit that on May 1, 2018, Venator announced its financial results for the first quarter of 2018 and issued a press release, that the press release was filed with the SEC on Form 8-K, and that the quoted

47

language appears in the May 1, 2018 press release, and respectfully refer the Court to the press release for a complete and accurate statement of its contents.

217. The Underwriter Defendants deny the allegations in paragraph 217, except admit that on May 1, 2018, Venator issued its Form 10-Q for the first quarter of 2018, that the quoted language appears in the May 1, 2018 Form 10-Q, and that the signatures of Simon Turner and Kurt Ogden appear on the Form 10-Q certifying to its accuracy and completeness, and respectfully refer the Court to the Form 10-Q for a complete and accurate statement of its contents.

218. The Underwriter Defendants deny the allegations in paragraph 218, except admit that on May 1, 2018, Venator released a presentation for the first quarter of 2018, and that the quoted language appears in the presentation, and respectfully refer the Court to the presentation for a complete and accurate statement of its contents.

219. The Underwriter Defendants deny the allegations in paragraph 219, except admit that on May 1, 2018, Venator held its earnings call for the first quarter of 2018, and respectfully refer the Court to the transcript of Venator's May 1, 2018 earnings call for a complete and accurate statement of its contents.

220. The Underwriter Defendants deny the allegations in paragraph 220, except lack knowledge or information sufficient to form a belief as to the truth of the allegations about "analysts'" alleged "confusion," and respectfully refer the Court to the analyst reports referenced therein for a complete and accurate statement of their contents.

221. Paragraph 221 states legal conclusions to which the Underwriter Defendants need not respond; to the extent a response is required, the Underwriter Defendants deny the allegations, except lack knowledge or information sufficient to form a belief as to the truth of allegations regarding statements allegedly made by a former employee of Venator.

222. Paragraph 222 states legal conclusions to which the Underwriter Defendants need not respond; to the extent a response is required, the Underwriter Defendants deny the allegations.

223. Paragraph 223 states legal conclusions to which the Underwriter Defendants need not respond; to the extent a response is required, the Underwriter Defendants deny the allegations.

224. The Underwriter Defendants deny the allegations in paragraph 224.

225. The Underwriter Defendants deny the allegations in paragraph 225, except admit that the quoted language appears in Venator's IPO Prospectus, and respectfully refer the Court to the IPO Prospectus for a complete and accurate statement of its contents.

226. The Underwriter Defendants deny the allegations in paragraph 226, except admit that on August 28, 2017, Venator issued its Form 10-Q for the second quarter of 2017, that the quoted language appears in the August 28, 2017 Form 10-Q, and that the signatures of Simon Turner and Kurt Ogden appear on the Form 10-Q certifying to its accuracy and completeness, and respectfully refer the Court to the Form 10-Q for a complete and accurate statement of its contents.

227. The Underwriter Defendants deny the allegations in paragraph 227, except admit that the quoted language appears in the August 28, 2017 Form 10-Q, and respectfully refer the Court to the Form 10-Q for a complete and accurate statement of its contents.

228. The Underwriter Defendants deny the allegations in paragraph 228, except admit that the quoted language appears in Venator's presentation for the September 6, 2017 UBS Global Chemicals & Paper and Packaging Conference, which was posted to Venator's website, and respectfully refer the Court to the presentation for a complete and accurate statement of its contents.

229. The Underwriter Defendants deny the allegations in paragraph 229, except admit that the quoted language appears in Venator's presentation for the September 13, 2017 KeyBanc

49

Basic Materials & Packaging Conference, which was posted to Venator's website, and respectfully refer the Court to the presentation for a complete and accurate statement of its contents.

230. The Underwriter Defendants deny the allegations in paragraph 230, except admit that the quoted language appears in Venator's October 27, 2017 Form 8-K, and respectfully refer the Court to the Form 8-K for a complete and accurate statement of its contents.

231. The Underwriter Defendants deny the allegations in paragraph 231, except admit that Venator held its earnings call for the third quarter of 2017 on October 27, 2017, and that the quoted language appears in the transcript of Venator's October 27, 2017 earnings call, and respectfully refer the Court to the transcript for a complete and accurate statement of its contents.

232. The Underwriter Defendants deny the allegations in paragraph 232, except admit that the quoted language appears in Venator's November 3, 2017 Form 10-Q, and respectfully refer the Court to the Form 10-Q for a complete and accurate statement of its contents.

233. The Underwriter Defendants deny the allegations in paragraph 233, except admit that on February 23, 2018, Venator announced its financial results for the fourth quarter and full year of 2017, and respectfully refer the Court to Venator's February 23, 2018 announcement referenced therein for a complete and accurate statement of its contents.

234. The Underwriter Defendants deny the allegations in paragraph 234, except admit that Venator filed its February 23, 2018 press release with the SEC on Form 8-K, and that the quoted language appears in the February 23, 2018 press release, and respectfully refer the Court to the press release for a complete and accurate statement of its contents.

235. The Underwriter Defendants deny the allegations in paragraph 235, except admit that the quoted language appears in Venator's February 23, 2018 press release, and respectfully refer the Court to the press release for a complete and accurate statement of its contents.

236. The Underwriter Defendants deny the allegations in paragraph 236, except admit that Venator filed its Form 10-K for the year ended December 31, 2017, on February 23, 2018, and that the quoted language appears in Venator's February 23, 2018 Form 10-K, and respectfully refer the Court to the Form 10-K for a complete and accurate statement of its contents.

237. The Underwriter Defendants deny the allegations in paragraph 237, except admit that on February 23, 2018, Venator released a presentation concerning the third quarter of 2017, and that the quoted language appears in the presentation, and respectfully refer the Court to the presentation for a complete and accurate statement of its contents.

238. The Underwriter Defendants deny the allegations in paragraph 238, except admit that the quoted language appears in the transcript for Venator's February 23, 2018 earnings call, and respectfully refer the Court to the transcript for a complete and accurate statement of its contents.

239. The Underwriter Defendants deny the allegations in paragraph 239, except admit that certain of the quoted language appears in the transcript for Venator's February 23, 2018 earnings call, and respectfully refer the Court to the transcript for a complete and accurate statement of its contents.

240. The Underwriter Defendants deny the allegations in paragraph 240, except admit that on May 1, 2018, Venator announced its financial results for the first quarter of 2018 and issued a press release, that the press release was filed with the SEC on Form 8-K, and that the quoted language appears in the May 1, 2018 press release, and respectfully refer the Court to the press release for a complete and accurate statement of its contents.

241. The Underwriter Defendants deny the allegations in paragraph 241, except admit that the quoted language appears in Venator's May 1, 2018 press release, and respectfully refer the Court to the press release for a complete and accurate statement of its contents.

242. The Underwriter Defendants deny the allegations in paragraph 242, except admit that on May 1, 2018, Venator filed its Form 10-Q for the first quarter of 2018, and that the quoted language appears in Venator's May 1, 2018 Form 10-Q, and respectfully refer the Court to the Form 10-Q for a complete and accurate statement of its contents.

243. The Underwriter Defendants deny the allegations in paragraph 243, except lack knowledge or information sufficient to form a belief as to the truth of the allegations about what representations were "credited" by "analysts," and respectfully refer the Court to the analyst reports referenced therein for a complete and accurate statement of their contents.

244. Paragraph 244 states legal conclusions to which the Underwriter Defendants need not respond; to the extent a response is required, the Underwriter Defendants deny the allegations.

245. Paragraph 245 states legal conclusions to which the Underwriter Defendants need not respond; to the extent a response is required, the Underwriter Defendants deny the allegations, except lack knowledge or information sufficient to form a belief as to the truth of the allegations regarding statements allegedly made by a former employee of Venator, and respectfully refer the Court to the transcript of Venator's February 23, 2018 earnings call and Venator's February 23, 2018 press release referenced in paragraph 245 for a complete and accurate statement of their contents.

246. Paragraph 246 states legal conclusions to which the Underwriter Defendants need not respond; to the extent a response is required, the Underwriter Defendants deny the allegations, except lack knowledge or information sufficient to form a belief as to the truth of the allegations

regarding statements allegedly made by former employees of Venator, admit that the quoted language appears in the transcript of Venator's May 1, 2018 earnings call, and respectfully refer the Court to the transcript for a complete and accurate statement of its contents.

247. Paragraph 247 contains allegations regarding the market demand for TiO2, and all claims premised on such allegations were dismissed by the Court on July 7, 2021 [Dkt. 89]; therefore the Underwriter Defendants need not respond to those allegations. To the extent a response is required, the Underwriter Defendants deny the allegations in paragraph 247.

248. Paragraph 248 contains allegations regarding the market demand for TiO2, and all claims premised on such allegations were dismissed by the Court on July 7, 2021 [Dkt. 89]; therefore the Underwriter Defendants need not respond to those allegations. To the extent a response is required, the Underwriter Defendants deny the allegations, except admit that the quoted language appears in Venator's IPO Prospectus, and respectfully refer the Court to the IPO Prospectus for a complete and accurate statement of its contents.

249. Paragraph 249 contains allegations regarding the market demand for TiO2, and all claims premised on such allegations were dismissed by the Court on July 7, 2021 [Dkt. 89]; therefore the Underwriter Defendants need not respond to those allegations. To the extent a response is required, the Underwriter Defendants deny the allegations in paragraph 249, except admit that the signatures of Simon Turner and Kurt Ogden appear on Venator's August 28, 2017 Form 10-Q certifying to its accuracy and completeness, and that the quoted language appears in the August 28, 2017 Form 10-Q, and respectfully refer the Court to the Form 10-Q for a complete and accurate statement of its contents.

250. Paragraph 250 contains allegations regarding the market demand for TiO2, and all claims premised on such allegations were dismissed by the Court on July 7, 2021 [Dkt. 89];

therefore the Underwriter Defendants need not respond to those allegations. To the extent a response is required, the Underwriter Defendants deny the allegations in paragraph 250, except admit that Venator issued a press release on August 28, 2017, and that the quoted language appears in Venator's August 28, 2017 press release, and respectfully refer the Court to the press release for a complete and accurate statement of its contents.

251. Paragraph 251 contains allegations regarding the market demand for TiO2, and all claims premised on such allegations were dismissed by the Court on July 7, 2021 [Dkt. 89]; therefore the Underwriter Defendants need not respond to those allegations. To the extent a response is required, the Underwriter Defendants deny the allegations in paragraph 251, except admit that on October 27, 2017, Venator announced its financial results for the third quarter of 2017 and issued a press release, that the press release was filed with the SEC on Form 8-K, and that the quoted language appears in the October 27, 2017 press release, and respectfully refer the Court to the press release for a complete and accurate statement of its contents.

252. Paragraph 252 contains allegations regarding the market demand for TiO2, and all claims premised on such allegations were dismissed by the Court on July 7, 2021 [Dkt. 89]; therefore the Underwriter Defendants need not respond to those allegations. To the extent a response is required, the Underwriter Defendants deny the allegations in paragraph 252, except admit that Venator held its earnings call for the third quarter of 2017 on October 27, 2017, and that the quoted language appears in the transcript of Venator's October 27, 2017 earnings call, and respectfully refer the Court to the transcript for a complete and accurate statement of its contents.

253. Paragraph 253 contains allegations regarding the market demand for TiO2, and all claims premised on such allegations were dismissed by the Court on July 7, 2021 [Dkt. 89]; therefore the Underwriter Defendants need not respond to those allegations. To the extent a

response is required, the Underwriter Defendants deny the allegations in paragraph 253, except admit that certain of the quoted language appears in Venator's February 23, 2018 Form 10-K, and respectfully refer the Court to the Form 10-K for a complete and accurate statement of its contents.

254. Paragraph 254 contains allegations regarding the market demand for TiO2, and all claims premised on such allegations were dismissed by the Court on July 7, 2021 [Dkt. 89]; therefore the Underwriter Defendants need not respond to those allegations. To the extent a response is required, the Underwriter Defendants deny the allegations in paragraph 254, except admit that Venator's earnings call for the fourth quarter of 2017 was held February 23, 2018, and that certain of the quoted language appears in the transcript of the February 23, 2018 earnings call, and respectfully refer the Court to the transcript for a complete and accurate statement of its contents.

255. Paragraph 255 contains allegations regarding the market demand for TiO2, and all claims premised on such allegations were dismissed by the Court on July 7, 2021 [Dkt. 89]; therefore the Underwriter Defendants need not respond to those allegations. To the extent a response is required, the Underwriter Defendants deny the allegations in paragraph 255, except admit that Venator filed its Form 10-Q for the first quarter of 2018 on May 1, 2018, and that the quoted language appears in the May 1, 2018 Form 10-Q, and respectfully refer the Court to the Form 10-Q for a complete and accurate statement of its contents.

256. Paragraph 256 contains allegations regarding the market demand for TiO2, and all claims premised on such allegations were dismissed by the Court on July 7, 2021 [Dkt. 89]; therefore the Underwriter Defendants need not respond to those allegations. To the extent a response is required, the Underwriter Defendants deny the allegations in paragraph 256, except admit that Venator held an earnings call on May 1, 2018, and that the quoted language appears in

the transcript of Venator's May 1, 2018 earnings call, and respectfully refer the Court to the transcript for a complete and accurate statement of its contents.

257. Paragraph 257 contains allegations regarding the market demand for TiO2, and all claims premised on such allegations were dismissed by the Court on July 7, 2021 [Dkt. 89]; therefore the Underwriter Defendants need not respond to those allegations. To the extent a response is required, the Underwriter Defendants deny the allegations in paragraph 257, except lack knowledge or information sufficient to form a belief as to the truth of the allegations about what representations were "credited" by "analysts," and respectfully refer the Court to the analyst reports referenced therein for a complete and accurate statement of their contents.

258. Paragraph 258 contains allegations regarding the market demand for TiO2, and all claims premised on such allegations were dismissed by the Court on July 7, 2021 [Dkt. 89]; furthermore, paragraph 258 states legal conclusions to which the Underwriter Defendants need not respond. To the extent a response is required, the Underwriter Defendants deny the allegations in paragraph 258, except respectfully refer the Court to the opinion of the United States District Court for the District of Columbia referenced therein for a complete and accurate statement of its contents.

259. Paragraph 259 contains allegations regarding Venator's insurance coverage, and all claims premised on such allegations were dismissed by the Court on July 7, 2021 [Dkt. 89]; therefore the Underwriter Defendants need not respond to those allegations. To the extent a response is required, the Underwriter Defendants deny the allegations in paragraph 259.

260. Paragraph 260 contains allegations regarding Venator's insurance coverage, and all claims premised on such allegations were dismissed by the Court on July 7, 2021 [Dkt. 89]; therefore the Underwriter Defendants need not respond to those allegations. To the extent a

56

response is required, the Underwriter Defendants deny the allegations in paragraph 260, except admit that Venator issued its Form 10-Q for the second quarter of 2017 on August 28, 2017, that the signatures of Simon Turner and Kurt Ogden appear on Venator's August 28, 2017 Form 10-Q certifying to its accuracy and completeness, and that the quoted language appears in Venator's August 28, 2017 Form 10-Q, and respectfully refer the Court to the Form 10-Q for a complete and accurate statement of its contents.

261. Paragraph 261 contains allegations regarding Venator's insurance coverage, and all claims premised on such allegations were dismissed by the Court on July 7, 2021 [Dkt. 89]; therefore the Underwriter Defendants need not respond to those allegations. To the extent a response is required, the Underwriter Defendants deny the allegations in paragraph 261, except admit that on October 27, 2017, Venator announced its financial results for the third quarter of 2017 and issued a press release, that the press release was filed with the SEC on Form 8-K, and that the quoted language appears in the October 27, 2017 press release, and respectfully refer the Court to the press release for a complete and accurate statement of its contents.

262. Paragraph 262 contains allegations regarding Venator's insurance coverage, and all claims premised on such allegations were dismissed by the Court on July 7, 2021 [Dkt. 89]; therefore the Underwriter Defendants need not respond to those allegations. To the extent a response is required, the Underwriter Defendants deny the allegations, except admit that on October 27, 2017, Venator released a presentation concerning the third quarter of 2017, and that the quoted language appears in the presentation, and respectfully refer the Court to the presentation for a complete and accurate statement of its contents.

263. Paragraph 263 contains allegations regarding Venator's insurance coverage, and all claims premised on such allegations were dismissed by the Court on July 7, 2021 [Dkt. 89];

therefore the Underwriter Defendants need not respond to those allegations.   To the extent a response is required, the Underwriter Defendants deny the allegations, except admit that Venator held its earnings call for the third quarter of 2017 on October 27, 2017, and that certain of the quoted language appears in the transcript of the October 27, 2017 earnings call, and respectfully refer the Court to the transcript for a complete and accurate statement of its contents.

264.   Paragraph 264 contains allegations regarding Venator's insurance coverage, and all claims premised on such allegations were dismissed by the Court on July 7, 2021 [Dkt. 89]; therefore the Underwriter Defendants need not respond to those allegations.   To the extent a response is required, the Underwriter Defendants deny the allegations in paragraph 264, except admit that certain of the quoted language appears in the transcript of the October 27, 2017 earnings call, and respectfully refer the Court to the transcript for a complete and accurate statement of its contents.

265.   Paragraph 265 contains allegations regarding Venator's insurance coverage, and all claims premised on such allegations were dismissed by the Court on July 7, 2021 [Dkt. 89]; therefore the Underwriter Defendants need not respond to those allegations.   To the extent a response is required, the Underwriter Defendants deny the allegations in paragraph 265, except admit that the quoted language appears in Venator's November 3, 2017 Form 10-Q, and respectfully refer the Court to the Form 10-Q for a complete and accurate statement of its contents.

266.   Paragraph 266 contains allegations regarding Venator's insurance coverage, and all claims premised on such allegations were dismissed by the Court on July 7, 2021 [Dkt. 89]; therefore the Underwriter Defendants need not respond to those allegations.   To the extent a response is required, the Underwriter Defendants deny the allegations in paragraph 266, except admit that on February 23, 2018, Venator disclosed its fourth quarter and year-end results for 2017,

58

and that the quoted language appears in Venator's February 23, 2018 press release, and respectfully refer to the press release for a complete and accurate statement of its contents.

267. Paragraph 267 contains allegations regarding Venator's insurance coverage, and all claims premised on such allegations were dismissed by the Court on July 7, 2021 [Dkt. 89]; therefore the Underwriter Defendants need not respond to those allegations. To the extent a response is required, the Underwriter Defendants deny the allegations in paragraph 267, except admit that the quoted language appears in Venator's February 23, 2018 Form 10-K, and respectfully refer the Court to the Form 10-K for a complete and accurate statement of its contents.

268. Paragraph 268 contains allegations regarding Venator's insurance coverage, and all claims premised on such allegations were dismissed by the Court on July 7, 2021 [Dkt. 89]; therefore the Underwriter Defendants need not respond to those allegations. To the extent a response is required, the Underwriter Defendants deny the allegations in paragraph 268, except admit that the quoted language appears in Venator's February 23, 2018 Form 10-K, and respectfully refer the Court to the Form 10-K for a complete and accurate statement of its contents.

269. Paragraph 269 contains allegations regarding Venator's insurance coverage, and all claims premised on such allegations were dismissed by the Court on July 7, 2021 [Dkt. 89]; therefore the Underwriter Defendants need not respond to those allegations. To the extent a response is required, the Underwriter Defendants deny the allegations in paragraph 269, except admit that certain of the quoted language appears in the transcript of Venator's February 23, 2018 earnings call, and respectfully refer the Court to the transcript for a complete and accurate statement of its contents.

270. Paragraph 270 contains allegations regarding Venator's insurance coverage, and all claims premised on such allegations were dismissed by the Court on July 7, 2021 [Dkt. 89];

59

therefore the Underwriter Defendants need not respond to those allegations. To the extent a response is required, the Underwriter Defendants deny the allegations in paragraph 270, except lack knowledge or information sufficient to form a belief as to the truth of the allegations as to whether "analysts" were "puzzled" and "sought clarity," and admit that certain of the quoted language appears in the transcript of Venator's February 23, 2018 earnings call, and respectfully refer the Court to the transcript for a complete and accurate statement of its contents.

271. Paragraph 271 contains allegations regarding Venator's insurance coverage, and all claims premised on such allegations were dismissed by the Court on July 7, 2021 [Dkt. 89]; therefore the Underwriter Defendants need not respond to those allegations. To the extent a response is required, the Underwriter Defendants deny the allegations in paragraph 271, except admit that certain of the quoted language appears in the transcript of Venator's February 23, 2018 earnings call, and respectfully refer the Court to the transcript for a complete and accurate statement of its contents.

272. Paragraph 272 contains allegations regarding Venator's insurance coverage, and all claims premised on such allegations were dismissed by the Court on July 7, 2021 [Dkt. 89]; therefore the Underwriter Defendants need not respond to those allegations. To the extent a response is required, the Underwriter Defendants deny the allegations in paragraph 272, except admit that the quoted language appears in Venator's May 1, 2018 press release, and respectfully refer the Court to the press release for a complete and accurate statement of its contents.

273. Paragraph 273 contains allegations regarding Venator's insurance coverage, and all claims premised on such allegations were dismissed by the Court on July 7, 2021 [Dkt. 89]; therefore the Underwriter Defendants need not respond to those allegations. To the extent a response is required, the Underwriter Defendants deny the allegations in paragraph 273, except

admit that the quoted language appears in Venator's May 1, 2018 Form 10-Q, and respectfully refer the Court to the Form 10-Q for a complete and accurate statement of its contents.

274. Paragraph 274 contains allegations regarding Venator's insurance coverage, and all claims premised on such allegations were dismissed by the Court on July 7, 2021 [Dkt. 89]; therefore the Underwriter Defendants need not respond to those allegations. To the extent a response is required, the Underwriter Defendants deny the allegations in paragraph 274, except admit that the quoted language appears in Venator's May 1, 2018 Form 10-Q, and respectfully refer the Court to the Form 10-Q for a complete and accurate statement of its contents.

275. Paragraph 275 contains allegations regarding Venator's insurance coverage, and all claims premised on such allegations were dismissed by the Court on July 7, 2021 [Dkt. 89]; therefore the Underwriter Defendants need not respond to those allegations. To the extent a response is required, the Underwriter Defendants deny the allegations in paragraph 275, except admit that Venator held its earnings call for the first quarter of 2018 on May 1, 2018, and that the quoted language appears in the transcript of Venator's May 1, 2018 earnings call, and respectfully refer the Court to the transcript for a complete and accurate statement of its contents.

276. Paragraph 276 contains allegations regarding Venator's insurance coverage, and all claims premised on such allegations were dismissed by the Court on July 7, 2021 [Dkt. 89]; therefore the Underwriter Defendants need not respond to those allegations. To the extent a response is required, the Underwriter Defendants deny the allegations in paragraph 276, except lack knowledge or information sufficient to form a belief as to the truth of the allegations as to whether "[a]nalysts continued to be puzzled," admit that the quoted language appears in the transcript of Venator's May 1, 2018 earnings call, and respectfully refer the Court to the transcript for a complete and accurate statement of its contents.

277.    Paragraph 277 contains allegations regarding Venator's insurance coverage, and all claims premised on such allegations were dismissed by the Court on July 7, 2021 [Dkt. 89]; therefore the Underwriter Defendants need not respond to those allegations.   To the extent a response is required, the Underwriter Defendants deny the allegations in paragraph 277, except admit that the quoted language appears in the transcript of Venator's May 1, 2018 earnings call, and respectfully refer the Court to the transcript for a complete and accurate statement of its contents.

278.    Paragraph 278 contains allegations regarding Venator's insurance coverage, and all claims premised on such allegations were dismissed by the Court on July 7, 2021 [Dkt. 89]; furthermore, paragraph 278 states legal conclusions to which the Underwriter Defendants need not respond.  To the extent a response is required, the Underwriter Defendants deny the allegations, except respectfully refer the Court to the October 30, 2018 and November 27, 2018 Venator disclosures and the opinion of the United States District Court for the District of Columbia referenced therein for a complete and accurate statement of their contents.

279.    Paragraph 279 states legal conclusions to which the Underwriter Defendants need not respond; to the extent a response is required, the Underwriter Defendants deny the allegations.

280.    Paragraph 280 states legal conclusions to which the Underwriter Defendants need not respond; to the extent a response is required, the Underwriter Defendants deny the allegations in paragraph 280, except lack knowledge or information sufficient to form a belief as to the truth of the allegations concerning the S&P 500 price changes referred to therein, and admit that the closing price for Venator's common stock was $20.89, $13.53, $10.31, and $6.47 on August 2, 2017, July 31, 2018, September 12, 2018, and October 30, 2018, respectively.

281.    Paragraph 281 states legal conclusions to which the Underwriter Defendants need not respond; to the extent a response is required, the Underwriter Defendants deny the allegations.

282.    Paragraph 282 states legal conclusions to which the Underwriter Defendants need not respond; to the extent a response is required, the Underwriter Defendants deny the allegations, except admit that Venator stock trades on the New York Stock Exchange ("NYSE") and Venator files periodic public reports with the SEC and NYSE.

283.    Paragraph 283 states legal conclusions to which the Underwriter Defendants need not respond; to the extent a response is required, the Underwriter Defendants deny the allegations.

284.    Paragraph 284 states legal conclusions to which the Underwriter Defendants need not respond; to the extent a response is required, the Underwriter Defendants deny the allegations, except respectfully refer the Court to the Supreme Court's decision in *Affiliated Ute Citizens* v. *United States*, 406 U.S. 128 (1972), for a complete and accurate statement of its contents.

285.    Paragraph 285 states legal conclusions to which the Underwriter Defendants need not respond; to the extent a response is required, the Underwriter Defendants deny the allegations, except respectfully refer the Court to the statutory provisions referenced therein for a complete and accurate statement of their contents.

286.    Paragraph 286 states legal conclusions to which the Underwriter Defendants need not respond; to the extent a response is required, the Underwriter Defendants deny the allegations, except respectfully refer the Court to the statutory provisions referenced therein for a complete and accurate statement of their contents.

287.    The Underwriter Defendants repeat, incorporate, and restate their answers to each of the preceding paragraphs as if fully set forth herein.

288. The allegations contained in paragraph 288 are not directed at the Underwriter Defendants, and therefore the Underwriter Defendants are not required to answer such allegations; to the extent a response is required, the Underwriter Defendants deny the allegations.

289. The allegations contained in paragraph 289 are not directed at the Underwriter Defendants, and therefore the Underwriter Defendants are not required to answer such allegations; to the extent a response is required, the Underwriter Defendants deny the allegations.

290. The allegations contained in paragraph 290 are not directed at the Underwriter Defendants, and therefore the Underwriter Defendants are not required to answer such allegations; to the extent a response is required, the Underwriter Defendants deny the allegations.

291. The allegations contained in paragraph 291 are not directed at the Underwriter Defendants, and therefore the Underwriter Defendants are not required to answer such allegations; to the extent a response is required, the Underwriter Defendants deny the allegations.

292. The allegations contained in paragraph 292 are not directed at the Underwriter Defendants, and therefore the Underwriter Defendants are not required to answer such allegations; to the extent a response is required, the Underwriter Defendants deny the allegations.

293. The allegations contained in paragraph 293 are not directed at the Underwriter Defendants, and therefore the Underwriter Defendants are not required to answer such allegations; to the extent a response is required, the Underwriter Defendants deny the allegations.

294. The allegations contained in paragraph 294 are not directed at the Underwriter Defendants, and therefore the Underwriter Defendants are not required to answer such allegations; to the extent a response is required, the Underwriter Defendants deny the allegations.

295. The allegations contained in paragraph 295 are not directed at the Underwriter Defendants, and therefore the Underwriter Defendants are not required to answer such allegations; to the extent a response is required, the Underwriter Defendants deny the allegations.

296. The allegations contained in paragraph 296 are not directed at the Underwriter Defendants, and therefore the Underwriter Defendants are not required to answer such allegations; to the extent a response is required, the Underwriter Defendants deny the allegations.

297. The allegations contained in paragraph 297 are not directed at the Underwriter Defendants, and therefore the Underwriter Defendants are not required to answer such allegations; to the extent a response is required, the Underwriter Defendants deny the allegations.

298. The Underwriter Defendants, repeat, incorporate, and restate their answers to each of the preceding paragraphs as if fully set forth herein.

299. The allegations contained in paragraph 299 are not directed at the Underwriter Defendants, and therefore the Underwriter Defendants are not required to answer such allegations; to the extent a response is required, the Underwriter Defendants deny the allegations.

300. The allegations contained in paragraph 300 are not directed at the Underwriter Defendants, and therefore the Underwriter Defendants are not required to answer such allegations; to the extent a response is required, the Underwriter Defendants deny the allegations, except admit that Margetts and Peter Huntsman have been directors for Huntsman and Venator.

301. The allegations contained in paragraph 301 are not directed at the Underwriter Defendants, and therefore the Underwriter Defendants are not required to answer such allegations; to the extent a response is required, the Underwriter Defendants deny the allegations.

302. The allegations contained in paragraph 302 are not directed at the Underwriter Defendants, and therefore the Underwriter Defendants are not required to answer such allegations; to the extent a response is required, the Underwriter Defendants deny the allegations.

303. The allegations contained in paragraph 303 are not directed at the Underwriter Defendants, and therefore the Underwriter Defendants are not required to answer such allegations; to the extent a response is required, the Underwriter Defendants deny the allegations.

304. Paragraph 304 states legal conclusions to which the Underwriter Defendants need not respond; to the extent a response is required, the Underwriter Defendants deny the allegations, except admit that paragraph 304 purports to describe Plaintiffs' claims under the Securities Act.

305. Paragraph 305 states legal conclusions to which the Underwriter Defendants need not respond; to the extent a response is required, the Underwriter Defendants deny the allegations, except admit that paragraph 305 purports to describe Plaintiffs' claims under the Securities Act.

306. Paragraph 306 states legal conclusions to which the Underwriter Defendants need not respond; to the extent a response is required, the Underwriter Defendants deny the allegations.

307. The Underwriter Defendants deny the allegations of Paragraph 307, except admit that Venator filed a Form S-1 IPO Registration statement with the SEC on May 5, 2017; the IPO Registration Statement was declared effected by the SEC on August 2, 2017; the IPO of Venator shares occurred on August 3, 2017; and Venator filed the IPO Prospectus with the SEC on August 4, 2017.

308. The Underwriter Defendants admit to the allegations in paragraph 308, except lack knowledge or information sufficient to form a belief as to whether Simon Turner, Kurt Ogden, Stephen Ibbotson, Peter Huntsman, and Sir Robert Margetts signed the IPO registration statements, but admit that their signatures appear on the May 5, 2017 Form S-1 or amendments thereto.

66

309. The Underwriter Defendants deny the allegations in paragraph 309, except admit that in connection with Venator's IPO, Huntsman International and Huntsman Holdings sold 22,700,000 ordinary Venator shares at the offering price of $20.00 per share, less a discount, and that the underwriters on the IPO exercised their option to purchase up to an additional 3,405,000 ordinary shares of Venator stock from Huntsman Holdings at the offering price of $20.00 per share, less a discount.

310. The Underwriter Defendants deny the allegations in paragraph 310, except admit that Goldman served as one of the underwriters for the Venator SPO, that Plaintiff Miami purchased 25,050 shares of Venator stock at $22.50 per share from Goldman on November 30, 2017, and respectfully refer the Court to any agreements among the underwriters and the underwriting agreements in connection with the IPO and SPO for a complete and accurate description of the relationship among the underwriters as concerns the IPO and SPO.

311. The Underwriter Defendants deny the allegations of paragraph 311, except admit that Venator filed a Form S-1 SPO Registration statement with the SEC on November 27, 2017; the SPO Registration Statement was declared effected by the SEC on November 29, 2017; Venator filed the SPO Prospectus with the SEC on December 1, 2017; and the SPO of Venator shares occurred on December 4, 2017.

312. The Underwriter Defendants admit to the allegations in paragraph 312, except lack knowledge or information sufficient to form a belief as to whether Simon Turner, Kurt Ogden, Stephen Ibbotson, Peter Huntsman, and Sir Robert Margetts signed the SPO registration statements, but admit that their signatures appear on the November 27, 2017 Form S-1 or amendments thereto.

313. The Underwriter Defendants deny the allegations in paragraph 313, except admit that in connection with Venator's SPO, Huntsman Holdings sold 21,764,800 ordinary Venator shares at the offering price of $22.50 per share, less a discount, and that the underwriters on the SPO partially exercised their option to purchase up to an additional 3,264,720 ordinary shares of Venator stock from Huntsman Holdings by purchasing 1,948,955 shares of Venator stock at the offering price of $22.50 per share, less a discount.

314. The Underwriter Defendants deny the allegations in paragraph 314, except admit that Goldman served as one of the underwriters for the Venator SPO, that Plaintiff Pontiac purchased 3,135 shares of Venator stock at $22.50 per share from Goldman on November 30, 2017, and respectfully refer the Court to any agreements among the underwriters and the underwriting agreements in connection with the IPO and SPO for a complete and accurate description of the relationship among the underwriters as concerns the IPO and SPO.

315. The Underwriter Defendants deny the allegations in paragraph 315, except admit that Goldman served as one of the underwriters for the Venator SPO, that Plaintiff Fresno purchased 6,080 shares of Venator stock at $22.50 per share from Goldman on November 30, 2017, and respectfully refer the Court to any agreements among the underwriters and the underwriting agreements in connection with the IPO and SPO for a complete and accurate description of the relationship among the underwriters as concerns the IPO and SPO.

316. The first sentence of paragraph 316 states legal conclusions to which the Underwriter Defendants need not respond; to the extent a response is required, the Underwriter Defendants deny the allegations. As to the remaining allegations in paragraph 316, the Underwriter Defendants deny the allegations, except admit that the quoted language appears in the

68

IPO Prospectus, and respectfully refer the Court to the IPO Prospectus for a complete and accurate statement of its contents.

317. The Underwriter Defendants deny the allegations in paragraph 317, except admit that the quoted language appears in the IPO Prospectus, and respectfully refer the Court to the IPO Prospectus for a complete and accurate statement of its contents.

318. The Underwriter Defendants deny the allegations in paragraph 318, except admit that the table and footnotes incorporated into the paragraph appear in the IPO Prospectus, and respectfully refer the Court to the IPO Prospectus for a complete and accurate statement of its contents.

319. The Underwriter Defendants deny the allegations in paragraph 319, except admit that the quoted language appears in the IPO Prospectus, and respectfully refer the Court to the IPO Prospectus for a complete and accurate statement of its contents.

320. Paragraph 320 states legal conclusions to which the Underwriter Defendants need not respond; to the extent a response is required, the Underwriter Defendants deny the allegations, except lack knowledge or information about what was allegedly "recounted" by former Venator employees.

321. Paragraph 321 states legal conclusions to which the Underwriter Defendants need not respond; to the extent a response is required, the Underwriter Defendants deny the allegations, except admit that Venator's IPO Prospectus was filed with the SEC on August 4, 2017.

322. Paragraph 322 states legal conclusions to which the Underwriter Defendants need not respond; to the extent a response is required, the Underwriter Defendants deny the allegations.

323. Paragraph 323 states legal conclusions to which the Underwriter Defendants need not respond; to the extent a response is required, the Underwriter Defendants deny the allegations.

69

324. The Underwriter Defendants deny the allegations of paragraph 324, except admit that the quoted language appears in the IPO Prospectus, and respectfully refer the Court to the IPO Prospectus for a complete and accurate statement of its contents.

325. Paragraph 325 states legal conclusions to which the Underwriter Defendants need not respond; to the extent a response is required, the Underwriter Defendants deny the allegations.

326. Paragraph 326 contains allegations regarding the market demand for TiO2, and all claims premised on such allegations were dismissed by the Court on July 7, 2021 [Dkt. 89]; therefore the Underwriter Defendants need not respond to those allegations. To the extent a response is required, the Underwriter Defendants deny the allegations in paragraph 326, except admit that the quoted language appears in the IPO Prospectus, and respectfully refer the Court to the IPO Prospectus for a complete and accurate statement of its contents.

327. Paragraph 327 contains allegations regarding the market demand for TiO2, and all claims premised on such allegations were dismissed by the Court on July 7, 2021 [Dkt. 89]; furthermore, paragraph 327 states legal conclusions to which the Underwriter Defendants need not respond. To the extent a response is required, the Underwriter Defendants deny the allegations in paragraph 327, except respectfully refer the Court to the decision of the United States District Court for the District of Columbia referenced therein for a complete and accurate statement of its contents.

328. Paragraph 328 contains allegations regarding Venator's insurance coverage, and all claims premised on such allegations were dismissed by the Court on July 7, 2021 [Dkt. 89]; therefore the Underwriter Defendants need not respond to those allegations. To the extent a response is required, the Underwriter Defendants deny the allegations in paragraph 328, except

admit that the quoted language appears in the IPO Prospectus, and respectfully refer the Court to the IPO Prospectus for a complete and accurate statement of its contents.

329. Paragraph 329 contains allegations regarding Venator's insurance coverage, and all claims premised on such allegations were dismissed by the Court on July 7, 2021 [Dkt. 89]; therefore the Underwriter Defendants need not respond to those allegations. To the extent a response is required, the Underwriter Defendants deny the allegations in paragraph 329, except admit that the quoted language appears in the IPO Prospectus, and respectfully refer the Court to the IPO Prospectus for a complete and accurate statement of its contents.

330. Paragraph 330 contains allegations regarding Venator's insurance coverage, and all claims premised on such allegations were dismissed by the Court on July 7, 2021 [Dkt. 89]; furthermore, paragraph 330 states legal conclusions to which the Underwriter Defendants need not respond. To the extent a response is required, the Underwriter Defendants deny the allegations in paragraph 330.

331. Paragraph 331 states legal conclusions to which the Underwriter Defendants need not respond; to the extent a response is required, the Underwriter Defendants deny the allegations, except respectfully refer the Court to the cited regulations for a complete and accurate statement of their contents.

332. Paragraph 332 states legal conclusions to which the Underwriter Defendants need not respond; to the extent a response is required, the Underwriter Defendants deny the allegations.

333. Paragraph 333 states legal conclusions to which the Underwriter Defendants need not respond; to the extent a response is required, the Underwriter Defendants deny the allegations, except lack knowledge or information sufficient to form a belief as to the truth of the allegations regarding statements allegedly made by a former Venator employee, admit that the quoted

71

language in the second sentence appears in the IPO Prospectus, and respectfully refer the Court to the IPO Prospectus for a complete and accurate statement of its contents.

334. Paragraph 334 states legal conclusions to which the Underwriter Defendants need not respond; to the extent a response is required, the Underwriter Defendants deny the allegations.

335. The Underwriter Defendants deny the allegations in paragraph 335, except admit that the quoted language and the table and footnotes incorporated into the paragraph appear in the SPO Prospectus, and respectfully refer the Court to the SPO Prospectus for a complete and accurate statement of its contents.

336. Paragraph 336 states legal conclusions to which the Underwriter Defendants need not respond; to the extent a response is required, the Underwriter Defendants deny the allegations, except lack knowledge or information sufficient to form a belief as to the truth of the allegations regarding statements allegedly made by "multiple former Venator employees."

337. The Underwriter Defendants deny the allegations in paragraph 337, except admit that the quoted language appears in the SPO Prospectus, and respectfully refer the Court to the SPO Prospectus for a complete and accurate statement of its contents.

338. Paragraph 338 states legal conclusions to which the Underwriter Defendants need not respond; to the extent a response is required, the Underwriter Defendants deny the allegations, except lack knowledge or information sufficient to form a belief as to the truth of the allegations regarding statements allegedly made by a former Venator employee.

339. Paragraph 339 contains allegations regarding the market demand for TiO2, and all claims premised on such allegations were dismissed by the Court on July 7, 2021 [Dkt. 89]; therefore the Underwriter Defendants need not respond to those allegations. To the extent a response is required, the Underwriter Defendants deny the allegations in paragraph 339, except

72

admit that certain of the quoted language appears in the SPO Prospectus, and respectfully refer the Court to the SPO Prospectus for a complete and accurate statement of its contents.

340. Paragraph 340 contains allegations regarding the market demand for TiO2, and all claims premised on such allegations were dismissed by the Court on July 7, 2021 [Dkt. 89]; furthermore, paragraph 340 states legal conclusions to which the Underwriter Defendants need not respond. To the extent a response is required, the Underwriter Defendants deny the allegations in paragraph 340.

341. Paragraph 341 contains allegations regarding Venator's insurance coverage, and all claims premised on such allegations were dismissed by the Court on July 7, 2021 [Dkt. 89]; therefore the Underwriter Defendants need not respond to those allegations. To the extent a response is required, the Underwriter Defendants deny the allegations in paragraph 341, except admit that the quoted language appears in the SPO Prospectus, and respectfully refer the Court to the SPO Prospectus for a complete and accurate statement of its contents.

342. Paragraph 342 contains allegations regarding Venator's insurance coverage, and all claims premised on such allegations were dismissed by the Court on July 7, 2021 [Dkt. 89]; therefore the Underwriter Defendants need not respond to those allegations. To the extent a response is required, the Underwriter Defendants deny the allegations in paragraph 342, except admit that certain of the quoted language appears in the SPO Prospectus, and respectfully refer the Court to the SPO Prospectus for a complete and accurate statement of its contents.

343. Paragraph 343 contains allegations regarding Venator's insurance coverage, and all claims premised on such allegations were dismissed by the Court on July 7, 2021 [Dkt. 89]; furthermore, paragraph 343 states legal conclusions to which the Underwriter Defendants need not

respond. To the extent a response is required, the Underwriter Defendants deny the allegations in paragraph 343.

344. Paragraph 344 states legal conclusions to which the Underwriter Defendants need not respond; to the extent a response is required, the Underwriter Defendants deny the allegations, except respectfully refer the Court to the regulations cited therein for a complete and accurate statement of their contents.

345. Paragraph 345 states legal conclusions to which the Underwriter Defendants need not respond; to the extent a response is required, the Underwriter Defendants deny the allegations, and respectfully refer the Court to the regulations cited therein for a complete and accurate statement of their contents.

346. Paragraph 346 states legal conclusions to which the Underwriter Defendants need not respond; to the extent a response is required, the Underwriter Defendants deny the allegations, except lack knowledge or information sufficient to form a belief as to the truth of the allegations regarding statements allegedly made by a former Venator employee, and respectfully refer the Court to the "SPO Materials" cited therein for a complete and accurate statement of their contents.

347. Paragraph 347 states legal conclusions to which the Underwriter Defendants need not respond; to the extent a response is required, the Underwriter Defendants deny the allegations.

348. Paragraph 348 states legal conclusions to which the Underwriter Defendants need not respond; to the extent a response is required, the Underwriter Defendants deny the allegations, except admit that due diligence is conducted as part of the underwriting process and state that the evidence will demonstrate that the Underwriter Defendants have satisfied their due diligence defense with respect to the claims against them.

349.    Paragraph 349 states legal conclusions to which the Underwriter Defendants need not respond; to the extent a response is required, the Underwriter Defendants deny the allegations.

350.    Paragraph 350 states legal conclusions to which the Underwriter Defendants need not respond; to the extent a response is required, the Underwriter Defendants deny the allegations, and respectfully refer the Court to the IPO and SPO filings referred to therein for a complete and accurate statement of their contents.

351.    Paragraph 351 states legal conclusions to which the Underwriter Defendants need not respond; to the extent a response is required, the Underwriter Defendants deny the allegations.

352.    Paragraph 352 states legal conclusions to which the Underwriter Defendants need not respond; to the extent a response is required, the Underwriter Defendants deny the allegations, except admit that due diligence is conducted as part of the underwriting process and state that the evidence will demonstrate that the Underwriter Defendants have satisfied their due diligence defense with respect to the claims against them.

353.    The allegations contained in paragraph 353 are not directed at the Underwriter Defendants, and therefore the Underwriter Defendants are not required to answer such allegations; to the extent a response is required, the Underwriter Defendants deny the allegations.

354.    Paragraph 354 states legal conclusions to which the Underwriter Defendants need not respond; to the extent a response is required, the Underwriter Defendants deny the allegations.

355.    The Underwriter Defendants repeat, incorporate, and restate their answers to each of the preceding paragraphs as if fully set forth herein.

356.    Paragraph 356 states legal conclusions to which the Underwriter Defendants need not respond; to the extent a response is required, the Underwriter Defendants deny the allegations,

75

except admit that paragraph 356 purports to describe Plaintiffs' claim under Section 11 of the Securities Act.

357. Paragraph 357 states legal conclusions to which the Underwriter Defendants need not respond; to the extent a response is required, the Underwriter Defendants deny the allegations, except admit that paragraph 357 purports to describe Plaintiffs' claim under Section 11 of the Securities Act.

358. Paragraph 358 states legal conclusions to which the Underwriter Defendants need not respond; to the extent a response is required, the Underwriter Defendants deny the allegations.

359. Paragraph 359 states legal conclusions to which the Underwriter Defendants need not respond; to the extent a response is required, the Underwriter Defendants deny the allegations, except admit that Venator was the registrant for the Venator IPO and Venator SPO.

360. Paragraph 360 states legal conclusions to which the Underwriter Defendants need not respond; to the extent a response is required, the Underwriter Defendants deny the allegations.

361. Paragraph 361 states legal conclusions to which the Underwriter Defendants need not respond; to the extent a response is required, the Underwriter Defendants deny the allegations, except admit that the Underwriter Defendants served as underwriters for the Venator IPO and Venator SPO, and respectfully refer the Court to the statutory provisions referenced therein.

362. Paragraph 362 states legal conclusions to which the Underwriter Defendants need not respond; to the extent a response is required, the Underwriter Defendants deny the allegations.

363. Paragraph 363 states legal conclusions to which the Underwriter Defendants need not respond; to the extent a response is required, the Underwriter Defendants deny the allegations.

364. Paragraph 364 states legal conclusions to which the Underwriter Defendants need not respond; to the extent a response is required, the Underwriter Defendants deny the allegations.

365. Paragraph 365 states legal conclusions to which the Underwriter Defendants need not respond; to the extent a response is required, the Underwriter Defendants deny the allegations.

366. Paragraph 366 states legal conclusions to which the Underwriter Defendants need not respond; to the extent a response is required, the Underwriter Defendants deny the allegations, except lack knowledge or information sufficient to form a belief as to what Plaintiffs and absent class members knew.

367. Paragraph 367 states legal conclusions to which the Underwriter Defendants need not respond; to the extent a response is required, the Underwriter Defendants deny the allegations.

368. The Underwriter Defendants repeat, incorporate, and restate their answers to each of the preceding paragraphs as if fully set forth herein.

369. Paragraph 369 states legal conclusions to which the Underwriter Defendants need not respond; to the extent a response is required, the Underwriter Defendants deny the allegations, except admit that paragraph 369 purports to describe Plaintiffs' claim under Section 12(a)(2) of the Securities Act.

370. Paragraph 370 states legal conclusions to which the Underwriter Defendants need not respond; to the extent a response is required, the Underwriter Defendants deny the allegations, except admit that paragraph 370 purports to describe Plaintiffs' claim under Section 12(a)(2) of the Securities Act.

371. Paragraph 371 states legal conclusions to which the Underwriter Defendants need not respond; to the extent a response is required, the Underwriter Defendants deny the allegations, except admit that Goldman was one of the underwriters for the Venator IPO and Venator SPO, and respectfully refer the Court to any agreements among the underwriters and the underwriting

agreements in connection with the IPO and SPO for a complete and accurate description of the relationship among the underwriters as concerns the IPO and SPO.

372. The Underwriter Defendants deny the allegations in paragraph 372, except admit that Plaintiff Miami purchased 25,050 shares of Venator stock at $22.00 per share from Goldman on August 3, 2017.

373. The Underwriter Defendants deny the allegations in paragraph 373, except admit that Plaintiff Pontiac purchased 3,135 shares of Venator stock at $22.50 per share from Goldman on November 30, 2017.

374. The Underwriter Defendants deny the allegations in paragraph 374, except admit that Plaintiff Fresno purchased 6,080 shares of Venator stock at $22.50 per share from Goldman on November 30, 2017.

375. Paragraph 375 states legal conclusions to which the Underwriter Defendants need not respond; to the extent a response is required, the Underwriter Defendants deny the allegations, except admit that Goldman participated in the preparation of certain IPO and SPO materials and served as one of the underwriters in both the Venator IPO and the Venator SPO, and respectfully refer the Court to any agreements among the underwriters and the underwriting agreements in connection with the IPO and SPO for a complete and accurate description of the relationship among the underwriters as concerns the IPO and SPO.

376. Paragraph 376 states legal conclusions to which the Underwriter Defendants need not respond; to the extent a response is required, the Underwriter Defendants deny the allegations, except admit that due diligence is conducted as part of the underwriting process and state that the evidence will demonstrate that Goldman has satisfied its due diligence defense with respect to the claims against it.

78

377. Paragraph 377 states legal conclusions to which the Underwriter Defendants need not respond; to the extent a response is required, the Underwriter Defendants deny the allegations.

378. The Underwriter Defendants deny the allegations in paragraph 378, except admit that paragraph 378 purports to describe Plaintiffs' offer to Goldman.

379. Paragraph 379 states legal conclusions to which the Underwriter Defendants need not respond; to the extent a response is required, the Underwriter Defendants deny the allegations.

380. Paragraph 380 states legal conclusions to which the Underwriter Defendants need not respond; to the extent a response is required, the Underwriter Defendants deny the allegations.

381. The Underwriter Defendants repeat, incorporate, and restate their answers to each of the preceding paragraphs as if fully set forth herein.

382. The allegations contained in paragraph 382 are not directed at the Underwriter Defendants, and therefore the Underwriter Defendants are not required to answer such allegations; to the extent a response is required, the Underwriter Defendants deny the allegations.

383. The allegations contained in paragraph 383 are not directed at the Underwriter Defendants, and therefore the Underwriter Defendants are not required to answer such allegations; to the extent a response is required, the Underwriter Defendants deny the allegations, except admit that they purport to describe Plaintiffs' claim under Section 15 of the Securities Act.

384. The allegations contained in paragraph 384 are not directed at the Underwriter Defendants, and therefore the Underwriter Defendants are not required to answer such allegations; to the extent a response is required, the Underwriter Defendants deny the allegations.

385. The allegations contained in paragraph 385 are not directed at the Underwriter Defendants, and therefore the Underwriter Defendants are not required to answer such allegations; to the extent a response is required, the Underwriter Defendants deny the allegations.

79

386. The allegations contained in paragraph 386 are not directed at the Underwriter Defendants, and therefore the Underwriter Defendants are not required to answer such allegations; to the extent a response is required, the Underwriter Defendants deny the allegations.

387. The allegations contained in paragraph 387 are not directed at the Underwriter Defendants, and therefore the Underwriter Defendants are not required to answer such allegations; to the extent a response is required, the Underwriter Defendants deny the allegations.

388. Paragraph 388 states legal conclusions to which the Underwriter Defendants need not respond; to the extent a response is required, the Underwriter Defendants deny the allegations, except admit that Plaintiffs purport to bring this action as a putative class action.

389. Paragraph 389 states legal conclusions to which the Underwriter Defendants need not respond; to the extent a response is required, the Underwriter Defendants deny the allegations, except admit that Venator has approximately 107 million shares of stock outstanding as of September 9, 2021, and lack knowledge or information sufficient to form a belief as to the truth of the allegations regarding the number of Venator investors.

390. Paragraph 390 states legal conclusions to which the Underwriter Defendants need not respond; to the extent a response is required, the Underwriter Defendants deny the allegations.

391. Paragraph 391 states legal conclusions to which the Underwriter Defendants need not respond; to the extent a response is required, the Underwriter Defendants deny the allegations.

392. Paragraph 392 states legal conclusions to which the Underwriter Defendants need not respond; to the extent a response is required, the Underwriter Defendants deny the allegations.

393. Paragraph 393 states legal conclusions to which the Underwriter Defendants need not respond; to the extent a response is required, the Underwriter Defendants deny the allegations.

394. Answering Plaintiffs' prayer for relief, the Underwriter Defendants deny that Plaintiffs are entitled to relief against Defendants.

395. Answering Plaintiffs' demand for a jury trial, the Underwriter Defendants admit that Plaintiffs purport to demand a jury trial, and otherwise deny the allegations in this demand.

## DEFENSES

The Underwriter Defendants assert the following defenses with respect to every cause of action asserted by Plaintiffs, and they reserve the right to assert other and additional defenses, cross-claims, and third-party claims not asserted herein of which they become aware through discovery or other investigation as may be appropriate at a later time. In asserting these defenses, the Underwriter Defendants do not assume any burden of proof, persuasion, or production with respect to any issue where the applicable law places the burden upon Plaintiffs.

## FIRST DEFENSE

The Amended Complaint fails to state a cause of action upon which relief can be granted against the Underwriter Defendants.

## SECOND DEFENSE

Plaintiffs have failed to plead their claims against the Underwriter Defendants with the required particularity.

## THIRD DEFENSE

Plaintiffs and putative class members are not entitled to any recovery because no act or omission attributed to the Underwriter Defendants in the Amended Complaint was the actual or proximate cause of any alleged injury suffered by Plaintiffs or putative class members.

## FOURTH DEFENSE

The Underwriter Defendants are not liable to Plaintiffs and putative class members to the extent the IPO and SPO offering materials did not contain any false or misleading statement of material fact or omit any material fact, and the Underwriter Defendants are not responsible in law or fact for any alleged false or misleading statement or omission of material fact by others, or for any claimed misleading statement or omission of material fact not based on the offering materials.

## FIFTH DEFENSE

The alleged omissions were either disclosed or the allegedly omitted facts were not required to be disclosed.

## SIXTH DEFENSE

The Underwriter Defendants are not liable for any alleged misstatements that were forward-looking statements accompanied by meaningful cautionary language.

## SEVENTH DEFENSE

The Underwriter Defendants are not liable to Plaintiffs and putative class members to the extent they had no duty to disclose any information allegedly not disclosed, and had no duty to verify, opine upon, audit, review, or correct the statements made in the offering materials that the Amended Complaint alleges were misleading.

## EIGHTH DEFENSE

The Underwriter Defendants are not liable to Plaintiffs and putative class members because any alleged misstatements or omissions for which the Underwriter Defendants were allegedly responsible were not material to the investment decisions of a reasonable investor.

## NINTH DEFENSE

The Underwriter Defendants are not liable to Plaintiffs and putative class members because Plaintiffs and putative class members did not reasonably rely on any alleged misstatements or omissions of material fact by the Underwriter Defendants.

## TENTH DEFENSE

Plaintiffs and putative class members are not entitled to any recovery because Plaintiffs and putative class members did not exercise reasonable care to discover the facts relating to the alleged misstatements or omissions alleged in the Amended Complaint.

## ELEVENTH DEFENSE

Plaintiffs' and putative class members' claims are barred in whole or in part because Plaintiffs and putative class members did not and could not have reasonably and/or justifiably relied on the alleged misstatements or omissions alleged in the Amended Complaint.

## TWELFTH DEFENSE

Plaintiffs' and putative class members' claims are barred in whole or in part insofar as Plaintiffs and putative class members would be unjustly enriched if they were permitted to obtain recovery in this action.

## THIRTEENTH DEFENSE

Plaintiffs' and putative class members' claims are barred in whole or in part because, to the extent that Plaintiffs and putative class members were injured or damaged as alleged in the Amended Complaint, which is denied, Plaintiffs' and putative class members' comparative and/or contributory negligence in connection with the facts and circumstances surrounding their transactions in Venator stock precludes some or all of the recovery they seek.

### FOURTEENTH DEFENSE

Plaintiffs' and putative class members' claims are barred in whole or in part to the extent Plaintiffs and putative class members failed to make reasonable efforts to mitigate their alleged injury or damage.

### FIFTEENTH DEFENSE

The Underwriter Defendants are not liable to Plaintiffs and putative class members because the purported misstatements or omissions alleged in the Amended Complaint concern non-actionable matters of opinion, or are puffery, rather than matters of material fact.

### SIXTEENTH DEFENSE

Plaintiffs' and putative class members' claims are barred in whole or in part because, to the extent that Plaintiffs or putative class members incurred any injury or damage as alleged in the Amended Complaint, which is denied, any such injury or damage was caused and brought about by the acts, conduct, or omissions of individuals and/or entities other than the Underwriter Defendants and, therefore, any recovery herein should be precluded or diminished in proportion to the amount of fault attributable to such other individuals and/or entities.

### SEVENTEENTH DEFENSE

Plaintiffs' and putative class members' claims are barred in whole or in part because Plaintiffs and putative class members did not purchase any shares in reliance on the statements and omissions alleged in the Amended Complaint.

### EIGHTEENTH DEFENSE

The Underwriter Defendants are not liable to Plaintiffs and putative class members because, at all relevant times, the Underwriter Defendants conducted a reasonable and diligent investigation and had reasonable grounds to believe, and did believe, at the time the IPO and SPO offering documents became effective, that the statements in the IPO and SPO offering documents were true and that there

84

were no misstatements of material fact or omissions of material fact that were necessary to make the statements therein not misleading.

### NINETEENTH DEFENSE

The Underwriter Defendants are not liable to the extent Plaintiffs or putative class members did not purchase shares of Venator common stock in the IPO or SPO, did not purchase shares of Venator common stock traceable to the IPO or SPO, or purchased shares not subject to a registration statement or prospectus covered by the Securities Act of 1933.

### TWENTIETH DEFENSE

Plaintiffs' and putative class members' claims are barred in whole or in part because Plaintiffs and putative class members lack standing to pursue some or all of their claims against the Underwriter Defendants.

### TWENTY-FIRST DEFENSE

Plaintiffs' and putative class members' claims are barred in whole or in part because the Underwriter Defendants acted in good faith, including by reasonably relying upon the advice of others.

### TWENTY-SECOND DEFENSE

Plaintiffs' and putative class members' claims are barred in whole or in part because the matters now alleged to be the subject of misstatements or omissions were in fact disclosed in Venator's public filings or press releases, or were otherwise publicly disclosed or in the public domain, and, as such, were available to Plaintiffs, putative class members, or the securities markets generally, and thus were at all times reflected in the price of Venator stock.

## TWENTY-THIRD DEFENSE

Plaintiffs' and putative class members' claims are barred in whole or in part because Plaintiffs and putative class members had actual or constructive knowledge of the risks involved and thus assumed the risk that the value of Venator stock would decline if such risks materialized.

## TWENTY-FOURTH DEFENSE

Pursuant to Section 11(g) of the Securities Act, 18 U.S.C. § 77k(g), Plaintiffs' and putative class members' right to recovery, if any, may not exceed the price at which Plaintiffs' and putative class members' securities were offered to the public.

## TWENTY-FIFTH DEFENSE

Plaintiffs and putative class members have no damages compensable under Section 11 or Section 12 of the Securities Act.

## TWENTY-SIXTH DEFENSE

Plaintiffs' suit is "without merit" within the meaning of the last sentence of Section 11(e) of the Securities Act.

## TWENTY-SEVENTH DEFENSE

Plaintiffs' and putative class members' alleged damages, if any, are speculative, and thus are not recoverable.

## TWENTY-EIGHTH DEFENSE

Plaintiffs and putative class members did not suffer any losses, and thus cannot recover any damages.

## TWENTY-NINTH DEFENSE

Plaintiffs' and putative class members' alleged damages, if any, are limited by 15 U.S.C. § 78u-4.

## THIRTIETH DEFENSE

Plaintiffs' and putative class members' claims are barred in whole or in part because all losses and damages alleged in the Amended Complaint are the result of superseding and/or intervening causes and are not the result of any act or omission of the Underwriter Defendants or from the alleged misleading statements.

## THIRTY-FIRST DEFENSE

Plaintiffs' and putative class members' claims are barred in whole or in part because of the "bespeaks caution" doctrine.

## THIRTY-SECOND DEFENSE

The Underwriter Defendants exercised reasonable care. After reasonable and diligent investigation, the Underwriter Defendants had reasonable grounds to believe, and did believe, that the alleged misstatements still at issue in this case were true and omitted no material fact necessary to make those statements not misleading.

## THIRTY-THIRD DEFENSE

Plaintiffs' and putative class members' claims against the Underwriter Defendants are barred in whole or in part because, at all relevant times, the Underwriter Defendants relied in good faith on the representations, reports, expert opinions, and advice of others.

## THIRTY-FOURTH DEFENSE

The putative class cannot be certified under Rule 23 of the Federal Rules of Civil Procedure.

## THIRTY-FIFTH DEFENSE

Plaintiffs and putative class members are not entitled to recover attorneys' fees, experts' fees, or other costs or disbursements.

## THIRTY-SIXTH DEFENSE

The purported claims against the Underwriter Defendants and the allegations upon which they are based are improperly vague, ambiguous, and confusing. The Underwriter Defendants reserve the right to request a more definite statement.

## THIRTY-SEVENTH DEFENSE

Plaintiffs' and putative class members' Securities Act claims are barred in whole or in part because they were not brought within one year after the discovery of the allegedly untrue statements or the omissions, or after such discovery should have been made by the exercise of reasonable diligence. 15 U.S.C. § 77m. Plaintiffs' and putative class members' claims are also barred in whole or in part by all other applicable statutes of limitations or statutes of repose.

## THIRTY-EIGHTH DEFENSE

The Underwriter Defendants expressly reserve the right to amend and/or supplement their answer, defenses, and all other pleadings.

## THIRTY-NINTH DEFENSE

The Underwriter Defendants have insufficient knowledge or information upon which to form a belief as to whether there may be additional defenses available to them, and therefore reserve the right to assert such additional defenses in the event that discovery indicates they would be appropriate. The Underwriter Defendants also incorporate by reference any defenses asserted by other Defendants which are also applicable to the claims against the Underwriter Defendants.

## FORTIETH DEFENSE

The Underwriter Defendants are not liable to the extent that the alleged misstatements and omissions attributed to the Underwriter Defendants were not made in connection with the purchase or sale of Venator securities by Plaintiffs or putative class members.

## RESERVATION OF RIGHTS

The Underwriter Defendants expressly and specifically reserve the right to raise any additional defenses and claims not asserted herein of which they may become aware through discovery or other investigation, and will amend or modify their answer accordingly. The Underwriter Defendants further reserve the right to withdraw defenses that they determine are not applicable during the course of discovery and other proceedings in this action.

## PRAYER FOR RELIEF

Based upon the foregoing, the Underwriter Defendants pray that (i) judgment be entered dismissing the Amended Complaint on the merits, in its entirety and with prejudice, and (ii) this Court grant such other relief as it deems just and appropriate.

Dated: September 9, 2021

/s/ Audra J. Soloway
Jeffrey M. Tillotson
State Bar No. 20039200  #27831
TILLOTSON LAW
1807 Ross Avenue, Suite 325
Dallas, Texas 75201
(214) 382-3041 Telephone
(214) 292-6564 Facsimile

Audra J. Soloway*
Geoffrey R. Chepiga*
Caitlin Grusauskas*
David P. Friedman*
PAUL, WEISS, RIFKIND, WHARTON &

89

GARRISON LLP
1285 Avenue of the Americas
New York, New York 10019-6064
(212) 373-3573 Telephone
(212) 492-0573 Facsimile
asoloway@paulweiss.com
gchepiga@paulweiss.com
cgrusauskas@paulweiss.com
dfriedman@paulweiss.com
*Admitted *Pro Hac Vice*

*Attorneys for Defendants Citigroup Global Markets Inc., Goldman Sachs & Co. LLC, Merrill Lynch, Pierce, Fenner & Smith Incorporated, and J.P. Morgan Securities LLC*

90

## CERTIFICATE OF SERVICE

I certify that on September 9, 2021, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF Filing System.

*/s/ Audra J. Soloway*
Audra J. Soloway

91