**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| IN RE: VENATOR MATERIALS PLC SECURITIES LITIGATION | Civil Action No. 4:19-cv-03464 |

**PLAINTIFFS' UNOPPOSED MOTION FOR AN ORDER PRELIMINARILY
APPROVING PROPOSED CLASS ACTION SETTLEMENT AND
AUTHORIZING DISSEMINATION OF NOTICE TO THE SETTLEMENT
CLASS, AND MEMORANDUM OF LAW IN SUPPORT THEREOF**

**TABLE OF CONTENTS**

**Page**

NATURE AND STAGE OF THE PROCEEDINGS ........................................................ 1

STATEMENT OF ISSUES .......................................................................................... 2

SUMMARY OF ARGUMENT ..................................................................................... 2

FACTUAL BACKGROUND ........................................................................................ 5

ARGUMENT ................................................................................................................ 8

I.     THE PROPOSED SETTLEMENT MERITS PRELIMINARY APPROVAL ........ 8

       A.     Standards Governing Approval of Class Action Settlements ...................... 8

       B.     The Court "Will Likely Be Able to" Approve the Proposed Settlement
              Under Rule 23(e)(2) ................................................................................... 10

              1.     The Settlement Was Reached Through Extensive Arm's-
                     Length Negotiations Between Experienced Counsel and with
                     the Assistance of an Experienced Mediator .................................... 10

              2.     The Proposed Settlement is Within the Range of Possible
                     Approval .......................................................................................... 12

              3.     The Settlement Treats All Settlement Class Members Fairly .......... 15

              4.     The Anticipated Request for Attorneys' Fees is Reasonable ........... 17

              5.     Plaintiffs Have Identified All Agreements Made in
                     Connection with the Settlement ...................................................... 18

II.    THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED .............. 19

       A.     The Settlement Class Satisfies Rule 23(a)'s Requirements ......................... 20

       B.     The Settlement Class Satisfies Rule 23(b)(3)'s Requirements ..................... 23

III.   THE PROPOSED FORMS AND METHOD OF NOTICE TO THE
       SETTLEMENT CLASS SHOULD BE APPROVED ........................................... 24

IV.    PROPOSED SCHEDULE OF SETTLEMENT-RELATED EVENTS ................. 25

CONCLUSION ........................................................................................................... 25

i

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) ................................................................................ 19, 23

*Cotton v. Hinton*,
559 F.2d 1326 (5th Cir. 1977) ...................................................................... 8

*Hefler v. Wells Fargo & Co.*,
2018 WL 4207245 (N.D. Cal. Sept. 4, 2018) ............................................. 18

*In re Anadarko Petroleum Corp. Class Action Litig.*,
2014 WL 12599393 (S.D. Tex. Sept. 11, 2014) .......................................... 17

*In re Cobalt Int'l Energy, Inc. Sec. Litig.*,
2017 WL 2608243 (S.D. Tex. June 15, 2017) .................................. 21, 22, 23

*In re Deepwater Horizon*,
739 F.3d 790 (5th Cir. 2014) .................................................................. 8, 22

*In re Dell Inc., Sec. Litig.*,
2010 WL 2371834 (W.D. Tex. June 11, 2010), *aff'd, sub nom. Union
Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632 (5th Cir. 2012) ........... 15, 16, 17

*In re Dynegy, Inc. Sec. Litig.*,
226 F.R.D. 263 (S.D. Tex. 2005) ................................................... 20, 21, 22

*In re Enron Corp. Sec. & ERISA Litig.*,
2003 WL 22494413 (S.D. Tex. July 24, 2003) ........................................... 25

*In re Enron Corp. Sec. Derivative & "ERISA" Litig.*,
529 F. Supp. 2d 644 (S.D. Tex. 2006) .................................................. 21, 22

*In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*,
851 F. Supp. 2d 1040 (S.D. Tex. 2012) ...................................................... 11

*In re OCA, Inc. Sec. & Derivative Litig.*,
2008 WL 4681369 (E.D. La. Oct. 17, 2008) ....................................... 9, 12, 25

*In re OCA, Inc. Sec. & Derivative Litig.*,
2009 WL 512081 (E.D. La Mar. 2, 2009) ................................................... 17

*In re Reliant Energy ERISA Litig.*,
  2005 WL 2000707 (S.D. Tex. Aug. 18, 2005) ........................................................... 21

*In re Telik, Inc. Sec. Litig.*,
  576 F. Supp. 2d 570 (S.D.N.Y. 2008) ...................................................................... 17

*Jones v. Singing River Health Servs. Found.*,
  865 F.3d 285 (5th Cir. 2017) .................................................................................. 11

*Klein v. O'Neal, Inc.*,
  705 F. Supp. 2d 632 (N.D. Tex. 2010) .................................................................... 15

*Lehocky v. Tidel Techs., Inc.*,
  220 F.R.D. 491 (S.D. Tex. 2004) ....................................................................... 10, 21

*Marcus v. J.C. Penney Co., Inc.*,
  2017 WL 6590976 (E.D. Tex. Dec. 18, 2017), *adopted by*,
  2018 WL 307024 (E.D. Tex. Jan. 4, 2018) .......................................................... 17, 18

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
  339 U.S. 306 (1950) ................................................................................................ 24

*N.Y. State Teachers' Ret. Sys. v. Gen. Motors Co.*,
  315 F.R.D. 226 (E.D. Mich. 2016), *aff'd,* 2017 WL 6398014 (6th Cir. Nov. 27,
  2017) ...................................................................................................................... 19

*Netsky v. Capstead Mortg. Corp.*,
  2000 WL 964935 (N.D. Tex. July 12, 2000) ........................................................... 22

*Newby v. Enron Corp.*,
  394 F.3d 296 (5th Cir. 2004) .................................................................................... 9

*Prause v. TechnipFMC, PLC*,
  2020 WL 3549686 (S.D. Tex. Mar. 9, 2020) ...................................................... 21, 22

*Quintanilla v. A&R Demolition Inc.*,
  2008 WL 9410399 (S.D. Tex. May 7, 2008) ........................................................... 11

*Rougier v. Applied Optoelectronics, Inc.*,
  2019 WL 6111303 (S.D. Tex. Nov. 13, 2019), *report and recommendation
  adopted*, 2019 WL 7020349 (S.D. Tex. Dec. 20, 2019) ....................................... 21, 22

*Schwartz v. TXU Corp.*,
  2005 WL 3148350 (N.D. Tex. Nov. 8, 2005) ........................................................... 18

**OTHER AUTHORITIES**

Fed. R. Civ. P. Rule 23 ............................................................................................*passim*

Lead Plaintiffs Fresno County Employees' Retirement Association, City of Miami General Employees' & Sanitation Employees' Retirement Trust, and City of Pontiac General Employees' Retirement System ("Plaintiffs") have reached a proposed $19 million settlement (the "Settlement") of this Action, subject to Court approval. On behalf of themselves and the Settlement Class (defined below), Plaintiffs respectfully submit this unopposed motion for preliminary approval of the Settlement.[1] Plaintiffs request that the Court grant preliminary approval of the Settlement because it satisfies the applicable standards set forth in Rule 23(e)(1) of the Federal Rules of Civil Procedure.

## NATURE AND STAGE OF THE PROCEEDINGS

This is a securities class action asserting claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Sections 11, 12, and 15 of the Securities Act of 1933 (the "Securities Act") against Venator Materials PLC ("Venator") and certain of its executives, directors, and selling shareholders, and the underwriters of Venator's August 3, 2017 Initial Public Offering ("IPO") and December 4, 2017 Secondary Public Offering ("SPO"). The Action is brought on behalf of a class of investors who purchased or acquired publicly traded Venator common stock from August 2, 2017 through October 29, 2018 (the "Class Period"), both in the open market or in or traceable to Venator's IPO or SPO.

The Settlement before the Court is the result of Plaintiffs' vigorous prosecution of

---

[1] All capitalized terms not defined herein shall have the meanings set out in the Stipulation and Agreement of Settlement dated March 11, 2022 ("Stipulation"), which is attached as Exhibit 1 to the accompanying Declaration of Michael D. Blatchley ("Blatchley Decl.").

1

this Action over the past two-and-a-half years, and represents an outstanding result for the Class in light of the substantial costs and risks to the Class's recovery from continued litigation. In fact, the $19 million recovery here represents a highly material portion of investors' likely recoverable damages, and far exceeds any amount Defendants would contend could be recovered at trial. The Settlement was negotiated at arms-length by properly incentivized parties that were represented by experienced and able counsel, with the assistance of Jed Melnick, an experienced mediator of securities class actions and other complex litigation. Plaintiffs now move for preliminary approval of the Settlement so that they may provide notice of the proposed Settlement to members of the Settlement Class and schedule a hearing on final approval of the Settlement.

## STATEMENT OF ISSUES

1.      Whether the Court should grant preliminary approval to the proposed $19 million class action settlement in order to authorize notice of the proposed Settlement to the Settlement Class. The Court should grant such approval upon a finding that it "will likely be able" to (i) finally approve the settlement under Rule 23(e)(2) and (ii) certify the class for purposes of the settlement. *See* Fed. R. Civ. P. 23(e)(1)(B).

## SUMMARY OF ARGUMENT

Following more than two-and-a-half years of hard-fought litigation, Plaintiffs have reached an agreement to resolve the Action in its entirety in exchange for payment of $19,000,000 for the benefit of the Settlement Class. In agreeing to resolve the Action, Plaintiffs and Lead Counsel were well informed of the strengths and weakness of the case, as a result of their extensive investigation of the claims, their briefing of the motions to

dismiss, briefing of Plaintiffs' motion for class certification, and the formal mediation process and other settlement negotiations. Plaintiffs respectfully submit that the Settlement appropriately balances Plaintiffs' objective of securing the highest possible monetary recovery for the Settlement Class against the significant risk that they could receive a smaller recovery—or no recovery at all—after further litigation if Plaintiffs failed to establish one of the essential elements of their claims or if Defendants prevailed on one of their defenses.    As discussed below, Plaintiffs faced significant risks in establishing Defendants' liability and proving damages on their remaining claims in the Action.

The Settlement is the result of extensive arm's-length negotiations conducted with the assistance of Jed Melnick, Esq., of JAMS (the "Mediator"). The Parties' settlement discussions included an exchange of detailed mediation statements addressing liability and damages issues and a formal mediation session in December 2021 at which further presentations and arguments were made. At the conclusion of the mediation, the Mediator issued a mediator's proposal that the Action be settled for $19 million in cash, which the Parties ultimately accepted.

Approval of a class action settlement is a two-step process. *See* Fed. R. Civ. P. 23(e)(1), (2). At this initial stage, Plaintiffs request only that the Court grant preliminary approval of the Settlement, which will begin the process of considering the proposed Settlement by allowing notice to be sent to potential members of the Settlement Class, and scheduling the proposed final approval hearing (the "Settlement Hearing"). Next, at the Settlement Hearing, the Court will be asked to determine whether the Settlement is fair, reasonable, and adequate based on more detailed motion papers that will be submitted in

support of the proposed Settlement prior to that hearing.

The Settlement before the Court is the result of Plaintiffs' vigorous prosecution of this Action and is a particularly favorable result when weighed against the extended delay, substantial costs, and risks that continued litigation would entail. The Settlement was negotiated at arms'-length by Parties that were represented by experienced counsel, with the assistance of an experienced mediator. Moreover, the Settlement represents a highly material portion of investors' likely recoverable damages, and is a particularly excellent recovery in light of Defendants' argument that there are no cognizable damages attributable to the misrepresentations that remain in the case. Further, the Settlement does not unjustly favor any Settlement Class Member, and the anticipated fee and expense application request is reasonable. Accordingly, the Court "will likely be able to" finally approve the Settlement, and thus preliminary approval is warranted. *See* Fed. R. Civ. P. 23(e)(1).

Plaintiffs also respectfully request that the Court preliminarily approve the certification of the Settlement Class, for settlement purposes only, as the class satisfies all the criteria of Rules 23(a) and Rule 23(b)(3), and approve the proposed form and manner of notice of the Settlement to be provided to the Settlement Class because it mirrors the form of notice routinely approved by courts across the country in securities class action settlements, and is designed to ensure that Settlement Class Members are notified of the Settlement and informed of their rights to participate in the Settlement, object, or seek exclusion from the Settlement Class.

Accordingly, Plaintiffs respectfully request that the Court enter the accompanying [Proposed] Order Preliminarily Approving Settlement and Providing for Notice

4

("Preliminary Approval Order"), which will, among other things: (1) preliminarily approve the terms of the Settlement; (2) approve the form and method for providing notice of the Settlement to the Settlement Class; and (3) schedule the Settlement Hearing at which the Court will consider the request for final approval of the Settlement, and related events.

## FACTUAL BACKGROUND

Plaintiffs allege that, in connection with the IPO and SPO and throughout the Class Period, Defendants made materially false and misleading statements concerning about the true extent of the damage to Venator's titanium dioxide ("TiO2") manufacturing facility in Pori, Finland, following a fire in January 2017, as well as the progress the Company had purportedly made to rebuild the facility, and the impact on Venator's business and operations. Plaintiffs allege that the prices of publicly traded Venator common stock were artificially inflated as a result of Defendants' allegedly false and misleading statements, and that the price of these securities declined when the truth was revealed in a series of disclosures on July 31, 2018, September 12, 2018, and October 30, 2018.

On July 31, 2019, the first federal securities class action against Defendants was filed in the Southern District of New York, styled *City of Miami General Employees' & Sanitation Employees' Retirement Trust v. Venator Materials PLC*, No. 1:19-cv-07182 ("*City of Miami*"). On September 13, 2019, this Action, then captioned *Cambria County Employees Retirement System v. Venator Materials PLC*, No. 4:19-cv-03464, was filed in the Southern District of Texas (the "Court"). ECF No. 1. On October 21, 2019, the Honorable Lee H. Rosenthal appointed Plaintiffs to serve as Lead Plaintiffs for the Action under the PSLRA, and approved their selection of Bernstein Litowitz Berger & Grossmann

5

LLP ("BLB&G") as Lead Counsel for the class.  ECF. No. 7.  On October 29, 2019, the *City of Miami* action was transferred to the Southern District of Texas, and on November 11, 2019, the related securities class actions were consolidated under the caption *In re Venator Materials PLC Securities Litigation*, Case No. 4:19-cv-3464 (the "Action").  ECF No. 10.

On January 17, 2020, Plaintiffs filed their consolidated amended complaint (ECF No. 41) ("Amended Complaint").  Prior to the filing of the Amended Complaint, Lead Counsel conducted an exhaustive investigation into the facts underlying the Action.  As part of this investigation, Lead Counsel through and in conjunction with in-house and third-party investigators, located and conducted interviews with witnesses believed to potentially have information about the claims at issue in the Action, including former Venator employees located in United States, Finland, Germany, and elsewhere.  Lead Counsel also reviewed voluminous publicly available information regarding Defendants, including (i) transcripts, press releases, and news articles; (ii) analyst reports; (iii) SEC filings by the Company and the Huntsman Defendants; and (iv) pleadings, evidence, and testimony in related litigation involving Defendants.  Lead Counsel also retained and consulted extensively with a damages expert and an industry expert and performed extensive research to carefully evaluate exactly which theories of liability Plaintiffs could allege in the Amended Complaint and how to allege them.[2]

---

[2] On January 21, 2020, the Action was reassigned from Judge Rosenthal to the Honorable Charles R. Eskridge, III.  ECF No. 43.

On February 18, 2020, Defendants filed a motion to dismiss the Amended Complaint for failure to state a claim (ECF No. 58), and Defendants Maiter and Stolle filed a motion to dismiss for lack of personal jurisdiction (ECF No. 57). After full briefing and oral argument on the motions, the Court denied Stolle's motion to dismiss for lack of personal jurisdiction and granted Maiter's motion to dismiss for lack of personal jurisdiction on March 31, 2021 (ECF No. 86), and granted in part and denied in part Defendants' motion to dismiss for failure to state a claim on July 7, 2021 (ECF No. 89). Among other things, the Court's order sustained alleged misstatements concerning the status of the Pori rebuild and Defendants' claim that 20% of the facility's prior capacity had been restored, and dismissed alleged misstatements concerning the demand for TiO2 and the sufficiency of Venator's insurance policies to cover the costs of the rebuild effort.

On August 16, 2021, Plaintiffs filed their operative Complaint. ECF No. 93. On September 9, 2021, Defendants filed their answers to the Complaint. ECF Nos. 96, 97, 98. Thereafter, the Parties issued document requests and Plaintiffs obtained thousands of pages of documents produced by the Company, the Huntsman Defendants, and the Underwriter Defendants, which Lead Counsel reviewed and analyzed including in consultation with Plaintiffs' industry and damages experts. On November 19, 2021, Plaintiffs filed their motion for class certification (ECF No. 110), which was accompanied an expert report on market efficiency and classwide damages (ECF No. 110-2).

On December 6, 2021, Lead Counsel and Defendants' Counsel participated in a mediation session before Jed Melnick. In advance of that session, the Parties exchanged detailed mediation statements, which addressed the issues of liability, damages, and class

certification.  At the mediation session, the Parties made presentations and engaged in arguments, but did not reach an agreement.  However, at the conclusion of the mediation, Mr. Melnick issued a mediator's proposal that the Action be settled for $19,000,000 in cash, which the Parties ultimately accepted.  On January 28, 2022, the Parties executed a term sheet documenting their agreement-in-principle to settle the Action.  Thereafter, the Parties negotiated the full settlement terms and executed the Stipulation, setting forth that final agreement, on March 11, 2022.

**ARGUMENT**

**I.   THE PROPOSED SETTLEMENT MERITS PRELIMINARY APPROVAL**

    **A.   Standards Governing Approval of Class Action Settlements**

In the Fifth Circuit, there is a strong policy in favor of voluntarily settlement of litigation, and particularly so in class actions.  *See, e.g., Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977) (noting "overriding public interest in favor of settlement," "[p]articularly in class action suits"); *In re Deepwater Horizon*, 739 F.3d 790, 807 (5th Cir. 2014) (same).

Federal Rule of Civil Procedure 23(e) requires judicial approval of class action settlements.  *See* Fed. R. Civ. P. 23(e).  The procedure for approval of a proposed class action settlement is a well-established, two-step process.  *First*, the Court performs a preliminary review of the terms of the proposed settlement to determine whether to send notice of the proposed settlement to the class, *see* Fed. R. Civ. P. 23(e)(1); and *second*, after notice has been provided and a hearing has been held, the Court determines whether to grant final approval of the settlement, *see* Fed. R. Civ. P. 23(e)(2).

8

A court should grant preliminary approval to authorize notice of a settlement to the class upon a finding that it "will likely be able" to (i) finally approve the settlement under Rule 23(e)(2) and (ii) certify the class for purposes of the settlement.  Fed. R. Civ. P. 23(e)(1)(B).  This standard effectively codifies a comparable standard under prior case law, which provided that Courts should grant preliminary approval where "the proposed settlement discloses no reason to doubt its fairness, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, does not grant excessive compensation to attorneys, and appears to fall within the range of possible approval."  *In re OCA, Inc. Sec. & Derivative Litig.*, 2008 WL 4681369, at \*11 (E.D. La. Oct. 17, 2008).

At final approval, the Court will have to determine whether the proposed Settlement is "fair, reasonable, and adequate."  Rule 23(e)(2); *see also Newby v. Enron Corp.*, 394 F.3d 296, 301 (5th Cir. 2004).  In considering whether a settlement is fair, reasonable, and adequate at final approval, Rule 23(e)(2) provides that the Court should consider whether:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). Each of these factors supports approval of the Settlement and, thus, preliminary approval is appropriate here.

**B.    The Court "Will Likely Be Able to" Approve the Proposed Settlement Under Rule 23(e)(2)**

**1.    The Settlement Was Reached Through Extensive Arm's-Length Negotiations Between Experienced Counsel and with the Assistance of an Experienced Mediator**

This Settlement embodies all the hallmarks of a procedurally fair resolution under Rule 23(e)(2).  *First*, Plaintiffs—which are sophisticated institutional investors who suffered substantial losses as a result of their purchases of Venator common stock during the Class Period—have claims that are typical of and coexistent with those of the Settlement Class and have no conflict with other Settlement Class Members.  On the contrary, Plaintiffs, like the rest of the Settlement Class, have an interest in obtaining the largest possible recovery from Defendants.  *See Lehocky v. Tidel Techs., Inc.*, 220 F.R.D. 491, 502-03 (S.D. Tex. 2004) ("all class members are united in asserting a common right, such as achieving the maximum possible recovery for the class").  Plaintiffs, who retained competent counsel with extensive experience litigating securities class actions, have adequately represented the Settlement Class in the prosecution of this Action.

*Second*, as discussed above, Plaintiffs have been vigorously litigating this Action for more than two years.  At the time the Settlement was reached, Plaintiffs and Lead Counsel had a well-developed understanding of the strengths and risks of the Action, which was informed by the significant work Lead Counsel performed in investigating Plaintiffs' claims, drafting the detailed consolidated complaints, responding to Defendants' motions to dismiss, and conducting fact discovery, including obtaining and reviewing thousands of pages of documents.  Lead Counsel also prepared and filed a motion for class certification,

10

consulted extensively with several experts, and engaged in extensive settlement negotiations, including a formal mediation, which included an exchange of detailed mediation briefs. Thus, Plaintiffs and Lead Counsel had sufficient information to assess the merits of the proposed Settlement. *See, e.g., In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1063 (S.D. Tex. 2012) (a "presumption of fairness, adequacy, and reasonableness may attach to a class action settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery").

*Third*, the Parties' settlement negotiations were at arm's-length and facilitated by an experienced mediator. The Parties' negotiations included a formal, in-person mediation session before the Mediator on December 6, 2021. As the Parties were unable to reach agreement on the terms of a settlement, at the conclusion of the mediation the Mediator issued a mediator's proposal that the Action be settled for $19,000,000 in cash, which the Parties ultimately accepted. The fact that the Settlement was reached as a result of arm's-length negotiations overseen by an experienced mediator—and was based on a proposal from that mediator—strongly supports the fairness of the Settlement and demonstrates the lack of any collusion. *See, e.g., Jones v. Singing River Health Servs. Found.*, 865 F.3d 285, 295 (5th Cir. 2017) ("The involvement of 'an experienced and well-known' mediator 'is also a strong indicator of procedural fairness.'"); *Quintanilla v. A&R Demolition Inc.*, 2008 WL 9410399, at *4 (S.D. Tex. May 7, 2008) (fact that "settlement was reached through arms-length negotiations after a long, hard-fought mediation with a neutral" supported finding that the settlement was "free of fraud or collusion").

In short, the Settlement was informed by Plaintiffs and Lead Counsel's extensive knowledge of the facts of the case and the strengths and weaknesses of the claims and defenses asserted, and was the product of several months of vigorous, arms'-length negotiations supervised and facilitated by an experienced mediator, all factors which support the preliminary approval of the Settlement.

### 2. The Proposed Settlement is Within the Range of Possible Approval

At the preliminary approval stage, the Court need only determine whether it will "likely be able" to approve the Settlement, Fed. R. Civ. P. 23(e)(1), or, in other words, whether the Settlement is "within the range of possible approval." *OCA*, 2008 WL 4681369, at *11. Because the $19 million Settlement represents an excellent recovery for the Settlement Class in light of the substantial risks of non-recovery posed by continued litigation, the Settlement falls well within the range of possible approval.

Plaintiffs and Lead Counsel believe that the claims asserted against Defendants have merit. They recognize, however, the significant time and expense that would be necessary to pursue their claims against Defendants through the completion of discovery, certification of the class, summary judgment, trial, and appeals, as well as the substantial risks they would face in establishing liability and damages.

If the Action had continued, Plaintiffs and the Settlement Class would have faced significant risks in establishing Defendants' liability and proving damages in this Action that could have precluded securing any recovery at all let alone a recovery greater than the Settlement Amount. First, Plaintiffs faced significant risks in proving that Defendants'

12

statements concerning the true extent of damage to Venator's Pori facility, the progress in rehabilitating the facility, and the impact on Venator's business and operations were materially false statements. Defendants argued vigorously that their statements were true at the time they were made or were forward-looking statement or protected statements of opinion, or otherwise inactionable under the law. Moreover, Defendants had argued and would continue to argue that any misstatements concerning Pori's production capacity, the extent of the damage resulting from the fire at the facility, and the timeline and progress of the facility's reconstruction were immaterial to investors as a matter of law. In addition, with respect to the Exchange Act claims, Defendants contended that any alleged misstatements were not made with "scienter," or fraudulent intent. Further, the Securities Act Defendants other than Venator would assert that they exercised due diligence in reviewing the Offering Materials and thus should be immune from liability for that reason.

Finally, Defendants contended that the alleged misleading statements or omissions did not cause Plaintiffs' losses. Establishing damages would have been particularly difficult here because at the time of the three alleged corrective disclosures (July 31, 2018, September 12, 2018, and October 30, 2018), Venator also released a considerable amount of other information about Venator's business that was unrelated to the alleged fraud, and thus proving what portion (if any) of the subsequent price declines resulted from the revelation of alleged misstatements (rather than other, confounding information) would have been difficult and subject to considerable dispute at trial. In particular, Defendants would have contended that all or nearly all of the price declines following the three alleged corrective disclosures were not recoverable as damages because the corrective information

13

was related to alleged misrepresentations and omissions that the Court had dismissed in its decision on Defendants' motion to dismiss.

In light of these substantial risks, the cash recovery of $19,000,000 is a very favorable result for the Settlement Class. Based on extensive analysis conducted by Lead Plaintiffs' damages expert, the estimated reasonably likely maximum damages that could be proved at trial would be approximately $215.7 million. But this maximum damages amount assumes that Plaintiffs would be able to prove full damages based on *all* alleged corrective disclosures and that they would not need to disaggregate, or parse out, confounding non-fraud related information for *any* of the corrective disclosure dates. However, as noted above, Defendants argued that *none* of the alleged corrective disclosures caused damages arising from the alleged fraud. Defendants had particularly strong arguments that the price declines following the July 31, 2018 and October 30, 2018 disclosures were related to alleged misrepresentations that had been eliminated from the case as a result of the Court's order on Defendants' motion to dismiss. If Defendants succeeded in having one or more of the alleged corrective disclosures dismissed or succeeded in proving that Plaintiffs had to disaggregate purportedly confounding information, damages would be significantly smaller. For example, even if only the October 30, 2018 decline was eliminated, the reasonably likely maximum damages would be approximately $137 million, and only approximately $46 million if the declines following both the October 30, 2018 and July 31, 2018 corrective disclosures were eliminated. Thus, the $19 million Settlement represents approximately 8.8% to 41.3% of the reasonably likely maximum damages, which still assumes success by Plaintiffs on all

14

liability issues, including the stringent scienter standard for the Exchange Act claims. Indeed, Defendants contended that Plaintiffs suffered no cognizable damages at all because there were no statistically significant price declines on the alleged corrective disclosure dates attributable to any misrepresentation or omission that remained in the case—demonstrating that the $19 million Settlement represents a very favorable resolution for the Settlement Class.

The Settlement provides the Settlement Class with a substantial recovery without the need for prolonged and uncertain litigation. The Settlement also avoids the considerable expense of continued litigation, which could have gone through summary judgment, trial, and a lengthy appeals process. *See Klein v. O'Neal, Inc.*, 705 F. Supp. 2d 632, 651 (N.D. Tex. 2010). The substantial benefit the Settlement brings to the Settlement Class places it well within the range of reasonableness.

### 3. The Settlement Treats All Settlement Class Members Fairly

The Court must also ultimately assess the Settlement's effectiveness in equitably distributing relief to members of the Settlement Class. *See* Fed. R. Civ. P. 23(e)(2)(C)(ii). Here, too, the Court can readily find the Settlement will likely earn approval. The Plan of Allocation that Plaintiffs propose provides for an effective means of distributing the Net Settlement Fund to the Settlement Class and treats Settlement Class Members "equitably relative to each other" based on their transactions in Venator common stock, as well as the specific claims they have under the federal securities laws. *See* Fed. R. Civ. P. 23(e)(2)(D).

An "allocation formula 'need only have a reasonable, rational basis, particularly if recommended by "experienced and competent" class counsel.'" *In re Dell Inc., Sec. Litig.*,

15

2010 WL 2371834, at *10 (W.D. Tex. June 11, 2010), *aff'd, sub nom. Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632 (5th Cir. 2012) (citation omitted).

Here, the Plan to apportion the Net Settlement Fund among Settlement Class Members was developed in consultation with Plaintiffs' damages expert. For claimants who have Exchange Act claims, the calculations of their Recognized Loss Amounts under the Plan will be based on the difference in the estimated amount of artificial price inflation in Venator common stock allegedly caused by Defendants' alleged misrepresentations and omissions on the date they purchased their shares and on the date they sold them. In calculating this estimated artificial inflation, Plaintiffs' damages expert considered price changes in Venator common stock in reaction to the public disclosures allegedly revealing the truth concerning Defendants' alleged misrepresentations and omissions, adjusting for price changes that were attributable to market or industry forces. *See* Plan ¶ 4.[3]

For Settlement Class Members who have Section 11 claims (*i.e.*, those who purchased Venator shares in or traceable to the IPO or SPO), the Plan provides that they will receive the greater of their Exchange Act Loss Amount (based on the alleged artificial inflation in the Venator shares as described above) or their statutory Section 11 claim amount. *See* Plan ¶¶ 8-12. This method ensures that Settlement Class Members' recoveries are based upon the relative losses they sustained and the claims they could assert, and all

---

[3] In addition, with respect to the October 30, 2018 disclosure, the amount of artificial inflation related to the alleged misstatements that is deemed to have been dissipated by that specific disclosure has been discounted by 50% to account for the presence of confounding non-fraud related disclosures and the relatively greater litigation risk in establishing that the alleged actionable misstatements were the cause of the decline on this day. Plan ¶ 4.

16

eligible Settlement Class Members will receive a *pro rata* distribution from the Net Settlement Fund calculated in the same manner. *See, e.g., In re OCA, Inc. Sec. & Derivative Litig.*, 2009 WL 512081, at *11 (E.D. La Mar. 2, 2009) (granting approval to plan of allocation compensating claimants according to the timing of their purchases and amount of losses); *Dell*, 2010 WL 2371834, at *10 (same); *see generally In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 580 (S.D.N.Y. 2008) ("A reasonable plan may consider the relative strength and values of different categories of claims.").

### 4. The Anticipated Request for Attorneys' Fees is Reasonable

The proposed Settlement does not grant excessive compensation to Plaintiffs' Counsel. The approval of attorneys' fee awards is entirely separate from the approval of the Settlement, and the Settlement does not provide for any specific award to Plaintiffs' Counsel. Plaintiff's Counsel will be compensated solely out of the Settlement Fund in an amount to be approved by the Court and neither Plaintiffs nor Plaintiffs' Counsel may terminate the Settlement based on this Court's or any appellate court's ruling with respect to attorneys' fees. *See* Stipulation ¶ 16.

The Notice provides that Lead Counsel will apply for an award of attorneys' fees for all Plaintiffs' Counsel in amount not to exceed 25% of the Settlement Fund. A fee of up to 25% is reasonable here and is supported by case law in this Circuit. *See, e.g., In re Anadarko Petroleum Corp. Class Action Litig.*, 2014 WL 12599393, at *1 (S.D. Tex. Sept. 11, 2014) (approving attorneys' fees of 25% of settlement fund).[4]

---

[4] *See also Marcus v. J.C. Penney Co., Inc.*, 2017 WL 6590976, at *6 (E.D. Tex. Dec. 18, 2017), *adopted by*, 2018 WL 307024 (E.D. Tex. Jan. 4, 2018) ("[i]t is not unusual for

Lead Counsel's fee and expense application will be filed with the Court and Settlement Class Members will have an opportunity to weigh in on the fee request before the Settlement Hearing. By granting preliminary approval, the Court does not in any way pass upon the reasonableness of the fee or expense application, which will be decided *de novo* at the Settlement Hearing.

### 5. Plaintiffs Have Identified All Agreements Made in Connection with the Settlement

Other than the Stipulation itself, the only other agreement concerning the Settlement entered into by the Parties is a Supplemental Agreement, dated March 11, 2022. The Supplemental Agreement sets forth the conditions under which Venator can terminate the Settlement if requests for exclusion from the Settlement Class exceed an agreed-upon threshold ("Termination Threshold"). *See* Stipulation ¶ 36. This type of agreement is standard in securities class actions and has no negative impact on the fairness of the Settlement. *See, e.g.*, *Hefler v. Wells Fargo & Co.*, 2018 WL 4207245, at *11 (N.D. Cal. Sept. 4, 2018) ("a termination option triggered by the number of class members who opt out of the Settlement does not by itself render the Settlement unfair"). As is standard practice in securities class actions, the terms of the Supplemental Agreement are not being made public to avoid incentivizing an opt-out or a group of opt-outs to exclude themselves

---

attorneys' fees awarded under the percentage method to range between 25% to 30% of the fund or more"); *Schwartz v. TXU Corp.*, 2005 WL 3148350, at *27 (N.D. Tex. Nov. 8, 2005) ("courts throughout this Circuit regularly award fees of 25% and more often 30% or more of the total recovery under the percentage-of-the recovery method").

for the purpose of leveraging the Termination Threshold to exact an individual settlement.[5]

## II.      THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED

In connection with final approval, the Court will be asked to certify the Settlement Class—for settlement purposes only—pursuant to Rules 23(a) and 23(b)(3).   At the preliminary approval stage, the Court should determine whether it "will likely be able to" grant certification to the Settlement Class at final approval.  Fed. R. Civ. P. 23(e)(1)(B)(ii).

Courts have long acknowledged the propriety of a settlement class.  *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 619-22 (1997).  A settlement class, like all other certified classes, must satisfy the requirements of Rules 23(a) and 23(b), although the manageability concerns of Rule 23(b)(3) are not at issue.  *See Amchem*, 521 U.S. at 593.

Here, the proposed Settlement Class is defined in the Stipulation as:  all persons and entities who: (i) purchased or otherwise acquired the publicly traded common stock of Venator between August 2, 2017, and October 29, 2018, inclusive (the "Class Period"); and/or (ii) purchased or otherwise acquired publicly traded Venator common stock either in or traceable to Venator's IPO or SPO during the Class Period, and were damaged thereby.[6]  *See* Stipulation ¶ 1(rr).  The proposed Settlement Class definition is the same as the class set forth in Plaintiffs' Complaint (ECF No. 93, at ¶ 388) and the class proposed

---

[5] *See N.Y. State Teachers' Ret. Sys. v. Gen. Motors Co.*, 315 F.R.D. 226, 240 (E.D. Mich. 2016) ("The opt-out threshold 'is typically not disclosed and is kept confidential to encourage settlement and discourage third parties from soliciting class members to opt out.'"), *aff'd,* 2017 WL 6398014 (6th Cir. Nov. 27, 2017).

[6] Defendants and certain closely related persons and entities are excluded from the Settlement Class by definition.  *See* Stipulation ¶ 1(rr).  Also excluded from the Settlement Class are any persons and entities who or which exclude themselves by submitting a request for exclusion that is accepted by the Court.

in Plaintiffs' pending motion for class certification (ECF No. 110, at 3).  As discussed in the briefing previously submitted in Plaintiffs' Motion for Class Certification (ECF No. 110) and below, the proposed Settlement Class readily satisfies Rules 23(a) and 23(b)(3).

### A.     The Settlement Class Satisfies Rule 23(a)'s Requirements

Certification is appropriate under Rule 23(a) if:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  The Settlement Class satisfies each of these requirements.

*First*, Rule 23(a)(1) requires a class to be "so numerous that joinder of all members is impracticable."  Venator common stock was actively traded in the New York Stock Exchange throughout the Class Period, and Venator had more than 106.4 million shares of common stock outstanding, with an average weekly trading volume of 4.6 million shares. *See* Declaration of Michael L. Hartzmark, Ph.D. (ECF No. 110-2) ("Hartzmark Rpt.") at ¶¶ 27-29, 38-40.  With respect to the Securities Act claims, Venator issued 26,105,000 shares in the IPO and 23,713,755 shares in the SPO.  *See* Hartzmark Rpt. ¶¶ 22-26.  Thus, Settlement Class Members are likely to number in at least the thousands and, therefore, are sufficiently numerous that joinder of all members would be impracticable.

The Fifth Circuit has found reasonable the assumption that "any class composed of the sellers of a nationally traded security during a period in which hundreds of thousands or even millions of shares of the security were traded must necessarily be 'so numerous that joinder of all members is impracticable.'"  *In re Dynegy, Inc. Sec. Litig.*, 226 F.R.D.

263, 269 (S.D. Tex. 2005); *see also Prause v. TechnipFMC, PLC*, 2020 WL 3549686, at *3 (S.D. Tex. Mar. 9, 2020) (same).

*Second*, for "commonality" under Rule 23(a)(2), Plaintiffs "need only identify a single common contention, the resolution of which 'will resolve an issue that is central to the validity of each one of the [class member's] claims.'" *Prause*, 2020 WL 3549686, at *3; *see also In re Reliant Energy ERISA Litig.*, 2005 WL 2000707, at *2 (S.D. Tex. Aug. 18, 2005). The claims asserted in the Action present questions of law and fact common to all Settlement Class Members, including whether: (i) Defendants misrepresented material facts; (ii) Defendants knew or recklessly disregarded that their statements and/or omissions were false and misleading; (iii) Defendants' misconduct impacted the price of Venator securities; (iv) Defendants' conduct caused the class members harm; the extent of that harm and the appropriate measure of damages. Complaint ¶ 390. These common questions satisfy Rule 23(a)(2). *See, e.g.*, *In re Enron Corp. Sec. Derivative & "ERISA" Litig.*, 529 F. Supp. 2d 644, 673 (S.D. Tex. 2006).

*Third*, Rule 23(a)(3)'s typicality requirement is satisfied if Plaintiffs' claims "arise from a similar course of conduct and share the same legal theory" as the class. *In re Cobalt Int'l Energy, Inc. Sec. Litig.*, 2017 WL 2608243, at *2 (S.D. Tex. June 15, 2017). The test for typicality is not "demanding." *Lehocky*, 220 F.R.D. at 500. Typicality "exists when the representative plaintiff's claims arise out of the same event or course of conduct as the other class members' claims, and all claims are based on the same legal theories." *Rougier v. Applied Optoelectronics, Inc.*, 2019 WL 6111303, at *6 (S.D. Tex. Nov. 13, 2019), *report and recommendation adopted*, 2019 WL 7020349 (S.D. Tex. Dec. 20, 2019). Here,

21

Plaintiffs' claims are typical of those of other Settlement Class Members—they purchased Venator common stock at prices allegedly inflated by Defendants' alleged misconduct and were harmed when the truth was revealed. *See, e.g.*, *Cobalt*, 2017 WL 2608243, at \*2-3; *Dynegy*, 226 F.R.D. at 287-88. Further, the proof that Plaintiffs would present to establish their claims would also prove the Settlement Class's claims. Thus, typicality is established.

*Last*, Rule 23(a)(4) requires that "the class representatives . . . fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The adequacy inquiry considers counsel's "zeal and competence," the representatives' "willingness and ability" to participate in and control the litigation and protect the class's interests, and "the risk of conflicts" between the plaintiffs and the class. *Prause*, 2020 WL 3549686, at \*4. Only "fundamental" conflicts "going to the specific issues in controversy" can defeat adequacy. *Deepwater Horizon*, 739 F.3d at 813 & n.99; *Dynegy*, 226 F.R.D. at 269-70. Based upon their substantial purchases of Venator common stock and the losses they suffered as a result of Defendants' alleged misconduct, Plaintiffs' interests are directly aligned with the interests of other Settlement Class Members, who were injured in the same manner, and they share the common objective of maximizing their recovery. *See Enron*, 529 F. Supp. 2d at 713-16 (no conflict among purchasers asserting Exchange Act and Securities Act claims given "common interests" in establishing misstatements and maximizing recovery). In addition, Plaintiffs are sophisticated, institutional investors which Congress deems particularly qualified to serve as class representatives. *See Netsky v. Capstead Mortg. Corp.*, 2000 WL 964935, at \*5 (N.D. Tex. July 12, 2000). Plaintiffs have diligently overseen their counsel's prosecution of this case, and the Lead Counsel they selected has

22

substantial experience and expertise in prosecuting securities class actions.  *See generally* ECF No. 4-7 (BLB&G firm resume).

### B.        The Settlement Class Satisfies Rule 23(b)(3)'s Requirements

To certify a class under Rule 23(b)(3), a court must find that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and effectively adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  The multiple common issues here predominate over any individualized issues.  Indeed, the Supreme Court has noted that predominance is "readily met" in securities fraud cases.  *Amchem*, 521 U.S. at 625.  Here, Plaintiffs' Securities Act claims rest on a common set of misstatements and omissions in the offering documents and thus, turn on the common, class-wide questions of whether they contained material misrepresentations or omissions.  *See Cobalt*, 2017 WL 2608243, at *4 (predominance met in case asserting Securities Act claims).  Similarly, the core liability issues of Plaintiffs' Exchange Act claims—falsity, materiality, scienter, and loss causation—are common issues whose proof can be made on a classwide basis.

This class action is also the superior method of litigating these claims, as the class consists of many smaller claimants who are geographically dispersed and who would otherwise be unable to economically assert their claims due to the costs of bringing such claims. Other than state-court proceedings asserting Securities Act claims which have since been dismissed (and which were brought by two plaintiffs that have been excluded from the Settlement Class), Plaintiffs are not aware of any other action asserting these claims. In sum, the Settlement Class meets all of the requirements of Rules 23(a) and 23(b)(3).

### III.   THE PROPOSED FORMS AND METHOD OF NOTICE TO THE SETTLEMENT CLASS SHOULD BE APPROVED

Rule 23(c)(2) requires notice to be "the best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B). Further, notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).

Here, as outlined in the Preliminary Approval Order, the Claims Administrator, JND Legal Administration ("JND"),[7] will mail the Notice and Claim Form, by first-class mail, to all Settlement Class Members who can be identified through reasonable effort, including to record holders during the Class Period identified in shareholder records to be provided by Venator and to beneficial owners identified by banks, brokers, and other nominees. In addition, a Summary Notice of the Settlement will be published in *Investor's Business Daily* and transmitted over *PR Newswire*, and the Claims Administrator will develop and maintain a dedicated case website (www.VenatorSecuritiesLitigation.com).

The proposed Notice provides all the information required by Rule 23(c)(2) and the PSLRA, 15 U.S.C. § 78u-4(a)(7). And the proposed manner of providing notice, which includes notice by first-class mail or email to Settlement Class Members who can be reasonably identified, supplemented by publication and internet notice, represents "the best

---

[7] In connection with preliminary approval, Plaintiffs also request that the Court approve Lead Counsel's retention of JND as the Claims Administrator for the Settlement. JND is a nationally recognized notice and claims administration firm that has successfully administered numerous complex securities class action settlements. A copy of JND's résumé is attached as Exhibit 2 to the Blatchley Declaration.

24

notice practicable under the circumstances" and satisfies the requirements of Rule 23, due process and all other applicable laws and rules. *See*, *e.g.*, *In re Enron Corp. Sec. & ERISA Litig.*, 2003 WL 22494413, at *3 (S.D. Tex. July 24, 2003); *OCA*, 2008 WL 4681369, at *14-16 (finding comparable notice plan appropriate). Accordingly, Plaintiffs respectfully submit that the notice program proposed here is adequate and should be approved.

## IV.    PROPOSED SCHEDULE OF SETTLEMENT-RELATED EVENTS

In connection with preliminary approval of the Settlement, the Court must also set dates for certain future events such as the mailing of the Notice and publication of the Summary Notice, filing of supporting briefs, deadlines for requesting exclusion from the Settlement Class, objecting to the Settlement, submitting claim forms and the fairness hearing. Plaintiffs propose the schedule set forth in Appendix A, which is based on the date the Preliminary Approval Order is entered and the date for which the Settlement Hearing is scheduled. If the Court agrees with the proposed schedule, Plaintiffs request that the Court schedule the Settlement Hearing for a date 110 calendar days after entry of the Preliminary Approval Order, or at the Court's earliest convenience thereafter.

## CONCLUSION

For all the foregoing reasons, Plaintiffs respectfully request that the Court enter the proposed Preliminary Approval Order submitted herewith which will: (i) preliminarily approve the Settlement; (ii) approve the proposed manner and forms of notice to Settlement Class Members; (iii) approve JND as Claims Administrator; (iv) set a date and time for the Settlement Hearing to consider final approval of the Settlement and related events.

25

Dated: March 21, 2022

Respectfully submitted,

*/s/ Michael D. Blatchley*
Michael D. Blatchley, Attorney-in-Charge

**BERNSTEIN LITOWITZ BERGER
     & GROSSMANN LLP**
Hannah Ross (*Pro Hac Vice*)
Michael D. Blatchley (*Pro Hac Vice*)
Kate W. Aufses (*Pro Hac Vice*)
1251 Avenue of the Americas, 44th Floor
New York, NY 10020
Tel: (212) 554-1400
Fax: (212) 554-1444
Hannah@blbglaw.com
MichaelB@blbglaw.com
Kate.Aufses@blbglaw.com

*Counsel for Lead Plaintiff and Lead
Counsel for the Class*

Thomas R. Ajamie
Texas Bar No. 00952400
Southern District Bar No.
6165 John S. "Jack" Edwards,
Jr. Texas Bar No. 24040851
Southern District Bar No.
38095
**AJAMIE LLP**
Pennzoil Place – South Tower
711 Louisiana, Suite 2150
Houston, Texas 77002
Tel: (713) 860-1600
Fax: (713) 860-1699
tajamie@ajamie.com
jedwards@ajamie.com

*Liaison Counsel for Lead Plaintiff*

26

Robert D. Klausner (*Pro Hac Vice Forthcoming*)
**KLAUSNER KAUFMAN JENSEN
  & LEVINSON**
7080 Northwest 4th Street
Plantation, FL 33317
Tel: (954) 916-1202
bob@robertdklausner.com

*Additional Counsel for City of Miami General Employees' & Sanitation Employees' Retirement Trust*

Cynthia J. Billings-Dunn (*Pro Hac Vice Forthcoming*)
**ASHERKELLY**
25800 Northwestern Highway
Suite 1100
Southfield, MI 48075
Tel: (248) 746-2747
cbdunn@asherkellylaw.com

*Additional Counsel for the City of Pontiac General Employees' Retirement System*

27

**Appendix A**
**Schedule of Settlement Events**

| EVENT | PROPOSED DEADLINE | PROPOSED DATE[8] |
|---|---|---|
| Deadline for initial mailing of the Notice and Claim Form to potential Settlement Class Members (Preliminary Approval Order ¶ 7(b)) (the "Notice Date") | 20 business days after the date of entry of the Preliminary Approval Order | April 25, 2022 |
| Deadline for publishing the Summary Notice (Preliminary Approval Order ¶ 7(d)) | 10 business days after the Notice Date | May 9, 2022 |
| Deadline for filing papers supporting final approval of Settlement, Plan of Allocation, and motion for attorneys' fees and Litigation Expenses (Preliminary Approval Order ¶ 27) | 35 calendar days prior to the Settlement Hearing | June 13, 2022 |
| Deadline for receipt of exclusions or objections (Preliminary Approval Order ¶¶ 14, 17) | 21 calendar days prior to the Settlement Hearing | June 27, 2022 |
| Deadline for filing reply papers (Preliminary Approval Order ¶ 27) | 7 calendar days prior to the Settlement Hearing | July 11, 2013 |
| Settlement Hearing (Preliminary Approval Order ¶ 5) | No earlier than 110 calendar days after entry of the Preliminary Approval Order, or at the Court's earliest convenience thereafter | July 18, 2022 |
| Deadline for submitting Claim Forms (Preliminary Approval Order ¶ 11) | 120 calendar days after the Notice Date | August 23, 2022 |

---

[8] The proposed dates are based on the assumption that the Court enters the Preliminary Approval Order on March 28, 2022 and sets the Settlement Hearing date as July 18, 2022.

## CERTIFICATE OF CONFERENCE

I certify that Lead Counsel and Defendants' Counsel have conferred regarding the substance of the relief sought in this motion and that Defendants consent to the relief sought in this motion, as set forth in ¶ 3 of the Stipulation and Agreement of Settlement, dated March 11, 2022.

*/s/ Michael D. Blatchley*
Michael D. Blatchley

## CERTIFICATE OF SERVICE

I certify that on March 21, 2022, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the email addresses denoted on the Electronic Mail Notice List.

*/s/ Michael D. Blatchley*
Michael D. Blatchley