**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| IN RE: VENATOR MATERIALS PLC SECURITIES LITIGATION | Civil Action No. 4:19-cv-03464 |

**LEAD COUNSEL'S MOTION FOR**
**ATTORNEYS' FEES AND LITIGATION EXPENSES**

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ......................................................................... iii

NATURE AND STAGE OF THE PROCEEDINGS .......................................... 1

STATEMENT OF ISSUES ............................................................................ 1

SUMMARY OF THE ARGUMENT ............................................................... 2

ARGUMENT ............................................................................................... 5

I.   LEAD COUNSEL IS ENTITLED TO AN AWARD OF ATTORNEYS'
     FEES FROM THE COMMON FUND ................................................... 5

II.  THE REQUESTED ATTORNEYS' FEES ARE REASONABLE UNDER
     EITHER THE PERCENTAGE-OF-THE-FUND METHOD OR THE
     LODESTAR METHOD ...................................................................... 6

     A.   The Requested Attorneys' Fees Are Reasonable Under the
          Percentage-of-the-Fund Method ................................................ 6

     B.   The Requested Attorneys' Fees Are Reasonable Under the Lodestar
          Method ..................................................................................... 9

III. OTHER FACTORS CONSIDERED BY COURTS IN THE FIFTH
     CIRCUIT CONFIRM THAT THE REQUESTED FEE IS FAIR AND
     REASONABLE ............................................................................... 11

     A.   The *Johnson* Factors Confirm that the Requested Fee Is Fair and
          Reasonable .............................................................................. 12

          1.   The Time and Labor Required ........................................... 12

          2.   The Novelty and Difficulty of the Issues .......................... 14

          3.   The Skill Required to Perform the Legal Services Properly,
               and the Experience, Reputation and Ability of the Attorneys ........ 16

          4.   The Preclusion of Other Employment ................................ 17

          5.   The Customary Fee and Awards in Similar Cases .............. 18

          6.   The Contingent Nature of the Fee ..................................... 18

       7.     The Amount Involved and the Results Achieved ............................ 19

       8.     The Undesirability of the Case ........................................................ 19

   B.    Other Factors Considered by the Courts Further Support the
        Requested Fee as Fair and Reasonable ........................................................ 20

       1.     Public Policy Considerations Support the Requested Fee .............. 20

       2.     The Requested Fee Has Been Approved by Plaintiffs .................... 21

       3.     The Reaction of the Settlement Class to Date Supports the
           Requested Fee ................................................................................. 22

IV.    THE REQUESTED EXPENSES ARE REASONABLE AND WERE
      NECESSARY TO ACHIEVE THE BENEFIT OBTAINED ................................ 22

V.     PLAINTIFFS SHOULD BE AWARDED THEIR REASONABLE COSTS
      AND EXPENSES UNDER THE PSLRA ............................................................ 23

CONCLUSION ......................................................................................................... 25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Anadarko Petroleum Corp. Class Action Litig.*,
2014 WL 12599393 (S.D. Tex. Sept. 11, 2014) ........................................................... 8

*Barton v. Drummond Co.*,
636 F.2d 978 (5th Cir. 1981) ..................................................................................... 5

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
472 U.S. 299 (1985) ............................................................................................. 5, 20

*Billitteri v. Sec. Am., Inc.*,
2011 WL 3585983 (N.D. Tex. Aug. 4, 2011) ................................................... *passim*

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980) ..................................................................................................... 5

*Braud v. Transport Serv. Co. of Ill.*,
2010 WL 3283398 (E.D. La. Aug. 17, 2010) ........................................................... 19

*Buettgen v. Harless*,
2013 WL 12303143 (N.D. Tex. Nov. 13, 2013) ....................................................... 19

*Buettgen v. Harless*,
2013 WL 12303194 (N.D. Tex. Nov. 13, 2013) ......................................................... 8

*Burford v. Cargill, Inc.*,
2012 WL 5471985 (W.D. La. Nov. 8, 2012) ................................................... 8, 10, 17

*Camden I Condo. Ass'n v. Dunkle*,
946 F.2d 768 (11th Cir. 1991) .................................................................................. 20

*City of Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974) ...................................................................................... 18

*In re Cobalt Int'l Energy, Inc. Sec. Litig.*,
2019 WL 6043440 (S.D. Tex. Feb. 13, 2019) ....................................................... 8, 24

*DeHoyos v. Allstate Corp.*,
240 F.R.D. 269 (W.D. Tex. 2007) ....................................................................... 10, 17

*Di Giacomo v. Plains All Am. Pipeline*,
2001 WL 34633373 (S.D. Tex. Dec. 19, 2001) ...................................................... 8, 11

*In re Enron Corp. Sec., Derivative & ERISA Litig.*,
586 F. Supp. 2d 732 (S.D. Tex. 2008) .......................................................... 11

*Hall v. Rent-A-Ctr., Inc.*,
2019 WL 3546741 (E.D. Tex. May 3, 2019) ................................................. 8

*In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*,
851 F. Supp. 2d 1040 (S.D. Tex. 2012) .......................................................... 11

*Hicks v. Morgan Stanley*,
2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) ................................................. 6

*Jenkins v. Trustmark Nat'l Bank*,
300 F.R.D. 291 (S.D. Miss. 2014) ....................................................... 5, 7, 20

*Johnson v. Georgia Highway Express, Inc.*,
488 F.2d 714 (5th Cir. 1974) ......................................................... *passim*

*Klein v. O'Neal, Inc.*,
705 F. Supp. 2d 632 (N.D. Tex. 2010) ....................................... 9, 10, 12, 18

*Leroy v. City of Houston*,
831 F.2d 576 (5th Cir. 1987) .......................................................... 11

*In re Lucent Techs., Inc. Sec. Litig.*,
327 F. Supp. 2d 426 (D.N.J. 2004) .............................................................. 21

*Marcus v. J.C. Penney Co., Inc.*,
2017 WL 6590976 (E.D. Tex. Dec. 18, 2017) .............................................. 8

*Miller v. Glob. Geophysical Servs. Inc.*,
2016 WL 11645372 (S.D. Tex. Jan. 14, 2016) ............................................. 25

*Missouri v. Jenkins*,
491 U.S. 274 (1989) .......................................................................... 11

*In re OCA, Inc. Sec. & Derivative Litig.*,
2009 WL 512081 (E.D. La. Mar. 2, 2009) ..................................... 7, 14, 18

*Parmelee v. Santander Consumer USA Holdings Inc.*,
2019 WL 2352837 (N.D. Tex. June 3, 2019) ............................................. 8, 24

iv

*Prause v. TechnipFMC,*
  2021 WL 6053219 (S.D. Tex. Mar. 23, 2021) ............................................................... 8

*Ret. Sys. v. Dell Inc.,*
  2020 WL 218518 (W.D. Tex. Jan. 10, 2020) ................................................................ 8

*Roussell v. Brinker Int'l, Inc.,*
  2010 WL 1881898 (S.D. Tex. Jan. 13, 2010), *aff'd,* 441 F. App'x 222
  (5th Cir. 2011) ............................................................................................................ 19

*Schwartz v. TXU Corp.,*
  2005 WL 3148350 (N.D. Tex. Nov. 8, 2005) ................................................... 7, 12, 17

*Shaw v. Toshiba Am. Info. Sys., Inc.,*
  91 F. Supp. 2d 942 (E.D. Tex. 2000) ..................................................................... 7, 17

*Singh v. 21Vianet Grp., Inc.,*
  2018 WL 6427721 (E.D. Tex. Dec. 7, 2018) ................................................................ 8

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.,*
  551 U.S. 308 (2007) ................................................................................................ 5, 20

*The Erica P. John Fund, Inc. v. Halliburton Co.,*
  2018 WL 1942227 (N.D. Tex. Apr. 25, 2018) .............................................. 17, 22, 24

*Union Asset Mgmt. Holding A.G. v. Dell, Inc.,*
  669 F.3d 632 (5th Cir. 2012) .................................................................... 6, 9, 10, 12

*In re Veeco Instruments Inc. Sec. Litig.,*
  2007 WL 4115808 (S.D.N.Y. Nov. 7, 2007) .............................................................. 21

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,*
  396 F.3d 96 (2d Cir. 2005) .......................................................................................... 6

*In re Willbros Grp., Inc. Sec. Litig.,*
  407 F. Supp. 3d 689 (S.D. Tex. 2018) ......................................................................... 8

*In re Xarelto (Rivaroxaban) Prod. Liab. Litig.,*
  2020 WL 1433923 (E.D. La. Mar. 24, 2020) ............................................................ 16

**Statutes**

Private Securities Litigation Reform Act of 1995 ...................................................... *passim*

**Other Authorities**

H.R. Conf. Rep. No. 104-369 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730
    (1995) ................................................................................................................... 21

Lead Counsel Bernstein Litowitz Berger & Grossmann LLP ("BLB&G") having achieved a Settlement of $19 million for the benefit of the Settlement Class in this securities class action, respectfully moves for an award of attorneys' fees for all Plaintiffs' Counsel in the amount of 25% of the Settlement Fund, net of Litigation Expenses, and for reimbursement of litigation expenses.  Lead Counsel further seeks reimbursement of costs and expenses incurred by Plaintiffs directly related to their representation of the Settlement Class, as authorized by the Private Securities Litigation Reform Act of 1995 (the "PSLRA").[1]

## NATURE AND STAGE OF THE PROCEEDINGS

Contemporaneously with this motion, Plaintiffs seek final approval of the proposed $19 million settlement that will resolve all claims in this securities class action. In this motion, Lead Counsel moves for an award of attorneys' fees and payment of Litigation Expenses incurred by Plaintiffs' Counsel, and for PLSRA awards to Plaintiffs.

## STATEMENT OF ISSUES

1.      Whether the Court should award attorneys' fees in the amount of 25% of the Settlement Fund, net of Litigation Expenses, as approved by Plaintiffs or in some other amount.  The Court should grant an award of attorneys' fees upon a finding that

---

[1] Unless defined herein, capitalized terms have the meanings ascribed to them in the Stipulation and Agreement of Settlement dated March 11, 2022 (ECF No. 117-2) (the "Stipulation") or in the Declaration of Michael D. Blatchley in Support of: (A) Plaintiffs' Motion for Final Approval of Settlement and Plan of Allocation; and (B) Lead Counsel's Motion for Attorneys' Fees and Litigation Expenses (the "Blatchley Declaration" or "Blatchley Decl."), filed herewith.  Citations to "¶ __ refer to paragraphs in the Blatchley Declaration and citations to "Ex. __" refer to exhibits to the Blatchley Declaration.

they are "reasonable" after considering the factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974).

2.      Whether the Court should award payment from the Settlement Fund for $240,253.64 in litigation expenses incurred by Plaintiffs' Counsel.

3.      Whether the Court should approve awards to Plaintiffs in the total amount of $14,569.35 in reimbursement for costs that Plaintiffs incurred directly related to their prosecution of the Action on behalf of the Settlement Class, as permitted by the PSLRA, 15 U.S.C. §§ 78u-4(a)(4), 77z-1(a)(4).

## SUMMARY OF THE ARGUMENT

Plaintiffs' Counsel vigorously litigated this case for three years on an entirely contingent basis against several highly experienced and well-respected law firms. The $19 million proposed Settlement, if approved by the Court, represents a very favorable outcome for the Settlement Class.  The Settlement is particularly beneficial in light of the significant litigation risks present in this case.[2]

As detailed in the accompanying Blatchley Declaration,[3] to achieve the recovery here, Plaintiffs' Counsel devoted substantial resources to pursuing this litigation by,

---

[2] Plaintiffs' Counsel consist of Lead Counsel BLB&G; Liaison Counsel Ajamie LLP; Klausner, Kaufman, Jensen & Levinson ("Klausner Kaufman"), additional counsel for Miami; and AsherKelly, additional counsel for Pontiac.

[3] The Blatchley Declaration is an integral part of this submission and the Court is respectfully referred to it for a detailed description of, among other things:  the history of the Action (¶¶ 15-77); the nature of the claims asserted (¶¶ 14, 29-33); the negotiations leading to the Settlement (¶¶ 68-74); the risks of continued litigation (¶¶ 78-109); and a description of the services Plaintiffs' Counsel provided for the benefit of the Settlement Class (¶¶ 3, 15-77, 132-135).

among other things, (i) conducting a thorough and wide-ranging factual investigation concerning the alleged misrepresentations made by Defendants, which included a careful review of publicly available information and interviews with more than 40 former Venator employees; (ii) preparing and filing a detailed consolidated Complaint; (iii) successfully opposing in large part Defendants' motions to dismiss the Complaint; (iv) participating in oral argument on Defendants' motion to dismiss; (v) filing Plaintiffs' motion for class certification; (vi) engaging in discovery, including preparing document requests and interrogatories and obtaining and reviewing over 10,000 pages of documents from Defendants; (vii) conferring with experts on damages and loss causation issues, and an expert on the TiO2 industry; and (viii) engaging in settlement negotiations, including a mediation with Jed Melnick of JAMS that included preparing detailed mediation briefs and attending a full-day mediation. *See* ¶¶ 3, 15-72.

Plaintiffs' Counsel undertook these substantial efforts and achieved the proposed Settlement in the face of significant litigation risks. For example, as explained in detail in the Blatchley Declaration at ¶¶ 76-108 and summarized below, there were substantial risks, among others, that Plaintiffs would be unable to prove the falsity and materiality of Defendants' alleged misstatements; that Plaintiffs would be unable to prove Defendants' *scienter* to establish their Exchange Act claims; and would be unable to establish that the alleged misstatements caused Plaintiffs' losses. This was not a case in which counsel benefited from an SEC prosecution or investigation of the alleged misstatements or the company's restatement of its financials. On the contrary, Defendants vigorously denied any of their statements were false or that there was any wrongdoing. In light of these

3

obstacles, the $19 million cash recovery is an excellent result that constitutes a significant portion of likely recoverable damages.  ¶¶ 99-100, 103.

As compensation for their efforts on behalf of the Settlement Class, Lead Counsel requests a fee award in the amount of 25% of the Settlement Fund, net of Litigation Expenses, and payment of litigation expenses in the amount of $240,253.64.   As discussed below, the requested fee is well within the range of fees awarded in comparable class action settlements, whether considered as a percentage of the Settlement or on a lodestar/multiplier basis.

In addition, Plaintiffs, each of which are sophisticated institutional investors, have endorsed the requested fees and expenses as fair and reasonable.  *See* Declaration of Donald Kendig on behalf of Fresno (Ex. 2), at ¶¶ 6-7; Declaration of Edgard Hernandez on behalf of Miami (Ex. 3), at ¶¶ 6-7; and Declaration of Sheldon Albritton on behalf of Pontiac (Ex. 4), at ¶¶ 6-7.

The reaction of the Settlement Class to date also supports the request.  Pursuant to the Court's Preliminary Approval Order (ECF No. 119), more than 24,800 copies of the Notice have been mailed to potential Settlement Class Members and nominees, and the Summary Notice was published in *Investor's Business Daily* and transmitted over the *PR Newswire*.  See Declaration of Luiggy Segura Regarding: (A) Mailing of the Notice and Proof of Claim Form; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusion Received to Date (Ex. 5) ("Segura Decl."), at ¶¶ 9-10.   The Notice advised potential Settlement Class Members that Lead Counsel would seek fees up to 25% of the Settlement Fund and payment of Litigation Expenses in an amount not

to exceed $350,000.  *See* Notice (Segura Decl. Exhibit A,) at ¶¶ 5, 56.   While the deadline for Settlement Class Members to object to the requested attorneys' fees and expenses has not yet passed, to date, no objections to the attorneys' fees or expenses set forth in the Notice have been received.  ¶¶ 142, 154.

For all the reasons set forth below, Lead Counsel respectfully requests that the Court approve its motion for attorneys' fees and expenses.

## ARGUMENT

## I.   LEAD COUNSEL IS ENTITLED TO AN AWARD OF ATTORNEYS' FEES FROM THE COMMON FUND

The Supreme Court and the Fifth Circuit have long recognized that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *see also Barton v. Drummond Co.*, 636 F.2d 978, 982 (5th Cir. 1981).  Courts recognize that awards of fair attorneys' fees from a common fund serve the "twin goals of removing a potential financial obstacle to a plaintiff's pursuit of a claim on behalf of a class and of equitably distributing the fees and costs of successful litigation among all who gained from the named plaintiff's efforts." *Jenkins v. Trustmark Nat'l Bank*, 300 F.R.D. 291, 306 (S.D. Miss. 2014) (citation omitted).

The Supreme Court has also emphasized that private securities actions, like this Action, are "an essential supplement to criminal prosecutions and civil enforcement actions" brought by the SEC.  *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 313 (2007); *accord Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310

(1985) (private securities actions provide "'a most effective weapon in the enforcement' of the securities laws and are 'a necessary supplement to [SEC] action.'") (citation omitted).  Compensating plaintiffs' counsel for the risks they take in bringing these actions is essential, because "[s]uch actions could not be sustained if plaintiffs' counsel were not to receive remuneration from the settlement fund for their efforts on behalf of the class."  *Hicks v. Morgan Stanley*, 2005 WL 2757792, at *9 (S.D.N.Y. Oct. 24, 2005).

## II.   THE REQUESTED ATTORNEYS' FEES ARE REASONABLE UNDER EITHER THE PERCENTAGE-OF-THE-FUND METHOD OR THE LODESTAR METHOD

Fees awarded to counsel from a common fund can be determined under either the percentage-of-the-fund method or the lodestar method.  *See Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 644 (5th Cir. 2012) (district courts have "the flexibility to choose between the percentage and lodestar methods in common fund cases").  Under either method, the requested fee in this Action is fair and reasonable.

### A.   The Requested Attorneys' Fees Are Reasonable Under the Percentage-of-the-Fund Method

Lead Counsel respectfully submit that the Court should award a fee based on a percentage of the common fund obtained.  As noted above, the Fifth Circuit has expressly approved of the percentage method, noting that it "brings certain advantages . . . because it allows for easy computation" and "aligns the interests of class counsel with those of the class members."  *Union Asset Mgmt.*, 669 F.3d at 643 ("district courts in this Circuit regularly use the percentage method"); *see also Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005) (the percentage method "directly aligns the interests

of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation").

In light of these advantages, a "strong consensus in favor of awarding attorneys' fees in common fund cases as a percentage of the recovery" has developed. *Schwartz v. TXU Corp.*, 2005 WL 3148350, at *26 (N.D. Tex. Nov. 8, 2005). The percentage method is particularly appropriate in securities cases like this one, as the PSLRA states that "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a ***reasonable percentage*** of the amount of any damages and prejudgment interest actually paid to the class." 15 U.S.C. § 78u-4(a)(6) (emphasis added).

The requested fee of 25% of the net settlement is well within the range of fees awarded in the Fifth Circuit in comparable cases. *See Schwartz*, 2005 WL 3148350, at *27 ("courts throughout this Circuit regularly award fees of 25% and more often 30% or more of the total recovery under the percentage-of-the recovery method"); *Shaw v. Toshiba Am. Info. Sys., Inc.*, 91 F. Supp. 2d 942, 972 (E.D. Tex. 2000) ("attorneys' fees in the range from twenty-five percent (25%) to [33%] have been routinely awarded in class actions"); *Jenkins*, 300 F.R.D. at 307 ("it is not unusual for district courts in the Fifth Circuit to award percentages of approximately one third"); *In re OCA, Inc. Sec. & Derivative Litig.*, 2009 WL 512081, at *19 (E.D. La. Mar. 2, 2009) ("In securities suits, common fee awards generally fall within the 20 to 33 per cent range.").

A review of attorneys' fees awarded in class actions with comparably sized settlements in this Circuit strongly supports the reasonableness of the 25% fee request.

*See Prause v. TechnipFMC*, 2021 WL 6053219, at \*1-2 (S.D. Tex. Mar. 23, 2021) (awarding 33% of $19.5 million settlement); *City of Pontiac Gen. Emps.' Ret. Sys. v. Dell Inc.*, 2020 WL 218518, at \*1 (W.D. Tex. Jan. 10, 2020) (awarding 30% of $21 million settlement); *Parmelee v. Santander Consumer USA Holdings Inc.*, 2019 WL 2352837, at \*1 (N.D. Tex. June 3, 2019) (awarding 33.3% of $9.5 million settlement); *Hall v. Rent-A-Ctr., Inc.,* 2019 WL 3546741, at \*1 (E.D. Tex. May 3, 2019) (awarding 25% of $11 million settlement); *Singh v. 21Vianet Grp., Inc.*, 2018 WL 6427721, at \*1 (E.D. Tex. Dec. 7, 2018) (awarding 33.3% of $9 million settlement); *In re Willbros Grp., Inc. Sec. Litig.*, 407 F. Supp. 3d 689, 690 (S.D. Tex. 2018) (awarding 30% of $10 million settlement); *In re Anadarko Petroleum Corp. Class Action Litig.*, 2014 WL 12599393, at \*1 (S.D. Tex. Sept. 11, 2014) (awarding 25% of $12.5 million settlement); *Buettgen v. Harless*, 2013 WL 12303194, at \*1 (N.D. Tex. Nov. 13, 2013) (awarding 30% of $33.75 million settlement); *Burford v. Cargill, Inc.*, 2012 WL 5471985, at \*6 (W.D. La. Nov. 8, 2012) (awarding 33.3% of $27.5 million settlement); *Berger v. Compaq Computer Corp*., Civil Action No. 98-1148, slip op. at 2 (S.D. Tex. Nov. 22, 2002), ECF No. 148 (Ex. 8) (awarding 30% of $28.7 million settlement); *Di Giacomo v. Plains All Am. Pipeline*, 2001 WL 34633373, at \*8, \*13 (S.D. Tex. Dec. 19, 2001) (awarding 30% of $24.1 million settlement).

Indeed, fee awards of 25% or more are often made in considerably larger settlements as well. *See, e.g.*, *In re Cobalt Int'l Energy, Inc. Sec. Litig.*, 2019 WL 6043440, at \*1 (S.D. Tex. Feb. 13, 2019) (awarding 25% of $173.8 million settlement); *Marcus v. J.C. Penney Co., Inc.*, 2017 WL 6590976, at \*6 (E.D. Tex. Dec. 18, 2017)

(awarding 30% of $97.5 million settlement), *report and recommendation adopted*, 2018 WL 307024 (E.D. Tex. Jan. 4, 2018); *Billitteri v. Sec. Am., Inc.,* 2011 WL 3585983, at *4, *9 (N.D. Tex. Aug. 4, 2011) (25% of a $80 million settlement); *Klein v. O'Neal, Inc.,* 705 F. Supp. 2d 632, 678-81 (N.D. Tex. 2010) (30% of a settlement between $90 and $110 million).  In sum, the percentage requested is reasonable.

### B. The Requested Attorneys' Fees Are Reasonable Under the Lodestar Method

Under Fifth Circuit law, if the Court determines the attorneys' fees based on the percentage method, the Court must "cross-check" the proposed fee for reasonableness by considering counsel's lodestar and the other considerations set out in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974).  *See Union Asset Mgmt.*, 669 F.3d at 642-44.  The Court may also determine the reasonable attorneys' fees in the first instance by using the lodestar method, as long as the *Johnson* factors are also considered.  *See Union Asset Mgmt.*, 669 F.3d at 644.  In this case, the lodestar method—whether used directly or as a "cross-check" on the percentage method—strongly demonstrates the reasonableness of the requested fee.

Under the lodestar method, "the court computes fees by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate and, in its discretion, applying an upward or downward multiplier." *Id.* at 642-43.  In securities class actions, fees representing multiples above the lodestar are typically awarded to reflect contingency fee risks and other relevant factors.

Here, Plaintiffs' Counsel spent a total of 4,209.4 hours of attorney and other professional support time prosecuting this Action. ¶ 132. Based on Plaintiffs' Counsel's current hourly rates, their total lodestar is $2,585,150.25. *See id*. This lodestar is a function of the vigorous prosecution of the case over the past three years as described in detail in the accompanying Blatchley Declaration.

The requested fee, which amounts to $4,686,294 (before interest),[4] therefore represents a multiplier of approximately 1.8 on Plaintiffs' Counsel's total. Given that lodestar multipliers between 2 and 4.5 are commonly awarded in complex class actions with substantial contingency risks, the 1.8 multiplier here supports the reasonableness of the requested fee. *See, e.g.*, *DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 333 (W.D. Tex. 2007) ("The average range of multipliers applied to other class actions has been from 1.0 to 4.5. The range of multipliers on large and complicated class actions have ranged from at least 2.26 to 4.5.") (citation omitted); *Klein*, 705 F. Supp. 2d at 680 (awarding fee representing a 2.5 multiplier and noting that "[m]ultipliers in this range are not uncommon in class action settlements" and that the 2.5 multiplier was warranted "due to the risks entailed in this lawsuit and the zealous efforts of the attorneys that resulted in a significant recovery for the class"). Awards in other cases show the reasonableness of the multiplier here. *See, e.g.*, *Burford*, 2012 WL 5471985, at *6 (awarding 33.3% of $27.5 million settlement with a 1.78 multiplier); *Billitteri*, 2011 WL 3585983, at *4, *9

---

[4] The requested fee is calculated as $19 million minus $254,822.99 (the total Litigation Expenses sought), which is $18,745,177.01, then multiplied by 0.25, which comes to $4,686,294.

(awarding 25% of $80 million settlement with a 1.97 multiplier) *Di Giacomo*, 2001 WL 34633373, at *8-11 (awarding 30% of $24.1 million settlement with a 5.3 multiplier).

Plaintiffs' Counsel's lodestar is based on their current hourly rates.[5]  These rates, or comparable rates, have been accepted by numerous courts in other securities and shareholder litigation, and are reasonable in light of prevailing market rates for lawyers with comparable levels of experience and expertise in securities litigation and other complex class action litigation.  *See In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1087-88 (S.D. Tex. 2012) (an attorneys' hourly rates should be judged in relation to "'prevailing market rates for lawyers with comparable experience and expertise' in complex class action litigation").

In sum, whether as a percentage of the fund or under the lodestar method, the requested fee is within the range of fees awarded by courts in securities class actions. Additionally, as set forth below, a review of the factors established by the Fifth Circuit in *Johnson* further demonstrates that the requested fee would be fair and reasonable.

## III.    OTHER FACTORS CONSIDERED BY COURTS IN THE FIFTH CIRCUIT CONFIRM THAT THE REQUESTED FEE IS FAIR AND REASONABLE

The Fifth Circuit has set forth the following criteria that courts should consider when reviewing a request for attorneys' fees in a common fund case:

---

[5]  The Supreme Court and courts in this Circuit have approved the use of current hourly rates to calculate the base lodestar figure as a means of compensating for the delay in receiving payment.  *See Missouri v. Jenkins*, 491 U.S. 274, 284 (1989); *Leroy v. City of Houston*, 831 F.2d 576, 584 (5th Cir. 1987) ("current rates may be used to compensate for inflation and delays in payment"); *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 586 F. Supp. 2d 732, 763 (S.D. Tex. 2008) (similar).

> (1) The time and labor required…[;] (2) The novelty and difficulty of the questions…[;] (3) The skill requisite to perform the legal service properly…[;] (4) The preclusion of other employment by the attorney due to acceptance of the case…[;] (5) The customary fee…[;] (6) Whether the fee is fixed or contingent…[;] (7) Time limitations imposed by the client or the circumstances…[;] (8) The amount involved and the results obtained…[;] (9) The experience, reputation, and ability of the attorneys…[;] (10) The "undesirability" of the case…[;] (11) The nature and length of the professional relationship with the client…[; and] (12) Awards in similar cases.[6]

*Johnson*, 488 F.2d at 717-19; *see also Union Asset Mgmt.*, 669 F.3d at 642 n.25 (reiterating *Johnson* factors); *Billitteri*, 2011 WL 3585983, at *3 (same).  In addition, Courts may consider additional factors, such as (1) public policy considerations, (2) Plaintiffs' approval of the fee, and (3) the reaction of the class.  Consideration of all of these factors provides further confirmation that the fee requested here is reasonable.

**A.    The *Johnson* Factors Confirm that the Requested Fee Is Fair and Reasonable**

As set forth below, each applicable *Johnson* factor confirms that the requested fee awarded is reasonable.  *See Union Asset Mgmt.*, 669 F.3d at 643-44.

**1.    The Time and Labor Required**

The time and effort expended by Plaintiffs' Counsel in prosecuting this Action and achieving the Settlement establishes that the requested fee is justified.  The Blatchley

---

[6] Two of the *Johnson* factors – the "time limitations imposed by the client or the circumstances" and the "nature and length of [counsel's] professional relationship with the client" are not relevant in this case.  *See Klein*, 705 F. Supp. 2d at 676 ("not every factor need be necessarily considered"); *Schwartz*, 2005 WL 3148350, at *28 ("The relevance of each of the *Johnson* factors will vary in any particular case, and, rather than requiring a rigid application of each factor, the Fifth Circuit has left it to the lower court's discretion to apply those factors in view of the circumstances of a particular case.").

Declaration details Plaintiffs' Counsel substantial efforts to effectively and vigorously prosecute Plaintiffs' claims over three years of this litigation.  As set forth in greater detail in the Blatchley Declaration, Plaintiffs' Counsel:

- conducted an extensive factual investigation, which included a thorough review of publicly available information from sources such as SEC filings, conference call transcripts, and news articles, and interviews with over 40 former employees of Venator (¶¶ 23-27);

- drafted a detailed consolidated complaint based on Lead Counsel's investigation (¶¶ 28-32);

- overcame Defendants' motions to dismiss through extensive briefing and oral argument (¶¶ 34-49);

- drafted a second amended complaint (¶ 50);

- successfully opposed Defendants' request to bifurcate discovery into two phases and negotiated a case schedule (¶¶ 52-54);

- prepared and responded to extensive discovery requests, including requests for the production of documents and interrogatories (¶¶ 55-57);

- reviewed and analyzed over 10,000 pages of documents obtained from Defendants (¶¶ 58-59);

- worked with experts in financial economics (including damages, loss causation, and market efficiency) and in the TiO2 industry (¶¶ 62-65);

- drafted and filed Plaintiffs' motion for class certification and worked with experts on market efficiency and class-wide damages (¶ 61);

- engaged in settlement negotiations, including participating in a formal mediation session before Jed Melnick, Esq. of JAMS, which included drafted and exchanging detailed mediation statements (¶¶ 66-70); and

- drafted and negotiated the final Stipulation and Agreement of Settlement and related documents such as the notice to the Settlement Class (¶ 72).

As noted above, Plaintiffs' Counsel expended more than 4,200 hours in investigating, prosecuting, and resolving this Action with a total lodestar value of more than $2,585,000.  ¶ 132.  The substantial time and effort devoted to this case by

13

Plaintiffs' Counsel was critical in obtaining the favorable result achieved by the Settlement, and this factor supports the fee request.

### 2.     The Novelty and Difficulty of the Issues

The novelty and difficulty of questions presented by the litigation is also considered in determining the reasonableness of the requested fee.  *See Johnson*, 488 F.2d at 718.  Courts have long recognized that securities class actions are generally complex and difficult and that "Fifth Circuit decisions on causation, pleading and proof at the class certification stage make PSLRA claims particularly difficult."  *OCA*, 2009 WL 512081, at *21.  This case was no exception.  Indeed, unlike some securities actions, there was no restatement of Venator's financial misstatements or any other admitted misstatements here.  On the contrary, Defendants strenuously denied that they had made any material misstatements or omissions or engaged in any other misconduct.

The significant risks to liability and damages in the Action are detailed in the Blatchley Declaration at ¶¶ 76-108 and briefly summarized here.  From the outset, Plaintiffs and their counsel faced significant risks in establishing Defendants' liability and proving damages.  *First*, Plaintiffs faced significant risks in proving that the Defendants' alleged misstatements concerning the true extent of the fire damage to Venator's Pori facility, the cost to rehabilitate the facility, and the impact on Venator's business and operations were materially false was made.  Defendants argued vigorously that their statements were true at the time they were made or were forward-looking statements or protected statements of opinion, or otherwise inactionable under the law. ¶¶ 41, 85-91. Indeed, at the motion to dismiss, Defendants succeeded in dismissing two

of the four categories of alleged misstatements from the Action and were expected to continue to vigorously contest the falsity of the remaining statements at later stages of the Action.  ¶¶ 46, 86-90.

Plaintiff also faced risks in proving that the alleged misstatements were material to investors.  Defendants argued that, in light of other disclosures they made to investors, any alleged misstatements about the post-fire capacity of the Pori facility were immaterial to investors as a matter of law.  ¶ 88.

In addition, with respect to their Exchange Act claims, Plaintiffs faced further substantial risks of proving that Defendants made the alleged misstatements with "scienter," or fraudulent intent.  Defendants contended that—assuming any of the statements were false—they were not made with any fraudulent intent and that Defendants had no motive to commit fraud.  ¶¶ 92-94.  With respect to the Securities Act claims, Plaintiffs faced risks that the Underwriter Defendants would be able to successfully assert a due-diligence defense based on their use of reasonable care in reviewing the Offering Materials and, thus, should be immune from liability for those claims.  ¶ 106.

Plaintiffs also faced substantial risks in establishing that the alleged misstatements caused Plaintiffs' losses.[7]  At the time of the disclosures that Plaintiffs alleged revealed

---

[7] This risk was present on both the Exchange Act claims, where Plaintiffs bore the burden of proving "loss causation," and on the Securities Act claims, where Defendants had a defense of "negative causation" which permitted Defendants to exclude any damages that they could show were caused by factors other than the alleged misstatements at issue.

the misstatements at issue, Venator also released a considerable amount of other information about Venator's business that was unrelated to the alleged misstatements. Establishing what portion, if any, of the subsequent price declines resulted from the revelation of the alleged misstatements (rather than other, confounding information) would have been difficult and subject to considerable dispute at trial.  ¶¶ 95-98, 105.

All of these substantial risks support the award of the fee requested.  *See, e.g.*, *In re Xarelto (Rivaroxaban) Prod. Liab. Litig.*, 2020 WL 1433923, at *7 (E.D. La. Mar. 24, 2020) ("Courts have consistently recognized that the risk of receiving little or no recovery is a factor in considering an award of attorneys' fees."); *Billitteri*, 2011 WL 3585983, at *7 ("the difficulty presented by the facts and legal questions in this case and the very real risk of obtaining no recovery at all" supported the fee award).

### 3. The Skill Required to Perform the Legal Services Properly, and the Experience, Reputation and Ability of the Attorneys

Under these two *Johnson* factors, the Court should consider the skills required to litigate the Action and "the experience, reputation and ability of the attorneys" involved. Considerable litigation skills were required in order for Lead Counsel to achieve the Settlement in this Action.  As noted above, this is a case involving difficult factual and legal issues, and it was subjected to a rigorous defense by well-qualified defense counsel. Given the many contested issues, it took highly skilled counsel to bring about the substantial recovery that has been obtained for the Settlement Class.

As demonstrated by its firm resume (Ex. 6A-3), BLB&G is among the nation's leading securities class action firms.  Lead Counsel submits that the skill of their

attorneys, the quality of their efforts in the litigation, their substantial experience in securities class actions, and their commitment to the litigation were key elements in enabling Lead Counsel to negotiate the favorable settlement.

Courts have also recognized that the quality of the opposition faced by plaintiffs' counsel should also be taken into consideration in assessing the quality of counsel's performance. Here, Defendants were represented by Sullivan & Cromwell LLP, Haynes & Boone, LLP, Shearman & Sterling, LLP, and Paul, Weiss, Rifkind, Wharton & Garrison LLP, all highly qualified defense firms, which vigorously and ably defended the Action. ¶ 136. Notwithstanding this formidable opposition, Lead Counsel was able to achieve a favorable settlement. *See, e.g.*, *DeHoyos*, 240 F.R.D. at 326 ("The quality of class counsel's work on this case was excellent and is ultimately reflected in the result which was obtained with a formidable opponent."); *Schwartz*, 2005 WL 3148350, at *30 ("The ability of plaintiffs' counsel to obtain such a favorable settlement for the Class in the face of such formidable legal opposition confirms the superior quality of their representation").

### 4. The Preclusion of Other Employment

The considerable amount of time that Plaintiffs' Counsel spent prosecuting the Action was time that they could not spend pursuing other matters. Plaintiffs' Counsel dedicated this time and effort to the Action despite the significant risks that there might be no recovery and while deferring any payment of their fees and expenses until a settlement was reached. This factor also supports the requested fee. *See, e.g.*, *The Erica*

*P. John Fund, Inc. v. Halliburton Co.*, 2018 WL 1942227, at *11 (N.D. Tex. Apr. 25, 2018); *Burford*, 2012 WL 5471985, at *3; *Shaw*, 91 F. Supp. 2d at 970.

### 5.    The Customary Fee and Awards in Similar Cases

As noted above, the fee requested by Lead Counsel is well within the range awarded in similar cases.  *See* Section II above.

### 6.    The Contingent Nature of the Fee

The fully contingent nature of the fee requested by Lead Counsel and the substantial risks posed by the litigation are also important factors supporting the requested fee.  "No one expects a lawyer whose compensation is contingent upon his success to charge, when successful, as little as he would charge a client who in advance had agreed to pay for his services, regardless of success."  *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 470 (2d Cir. 1974).

As noted above and in the Blatchley Declaration at ¶¶ 76-108, Lead Counsel faced very significant challenges to establishing liability and damages in this Action.  In the face of these very real uncertainties regarding the outcome of the case, Lead Counsel prosecuted this Action on a wholly contingent basis, knowing that the litigation could last for years and would require devotion of a substantial amount of attorney time and a significant advance of litigation expenses with no guarantee of compensation.  Lead Counsel's assumption of this contingency fee risk, and its extensive litigation of the Action in the face of these risks, strongly supports the reasonableness of the requested fee.  *See Billitteri*, 2011 WL 3585983, at *7 (the contingent nature was "particularly relevant considering the difficulty presented by the facts and legal questions in this case

18

and the very real risk of obtaining no recovery at all"); *Klein*, 705 F. Supp. 2d at 678 (the "contingent nature of the fee favors an increase"); *OCA*, 2009 WL 512081, at *22 ("the risk plaintiffs' counsel undertook in litigating this case on a contingency basis must be considered in its award of attorneys' fees, and thus an upward adjustment is warranted").

### 7.    The Amount Involved and the Results Achieved

Another *Johnson* factor is the "overall degree of success achieved." *Roussell v. Brinker Int'l, Inc.*, 2010 WL 1881898, at *3 (S.D. Tex. Jan. 13, 2010), *aff'd,* 441 F. App'x 222 (5th Cir. 2011). Here, Lead Counsel has achieved a substantial recovery of $19 million for the benefit of the Class, which represents a significant portion of likely recoverable damages. ¶¶ 99-100. The Settlement is all cash, and members of the Settlement Class will now receive compensation that was otherwise uncertain. The result achieved, in light of the substantial risks, is significant and supports the requested fee.

### 8.    The Undesirability of the Case

The "undesirability" of a case can also be a factor in justifying the award of a requested fee. There were substantial risks in financing and prosecuting this case, and Lead Counsel knew that they would have to spend substantial time and money and face significant risks without any assurance of being compensated for their efforts. Thus, the "undesirability" of the case also weighs in favor of the requested fee. *See, e.g.*, *Buettgen v. Harless,* 2013 WL 12303143, at *13 (N.D. Tex. Nov. 13, 2013) ("Securities cases have generally been recognized as 'undesirable' due to the financial burden on counsel and the time demands of litigating class actions of this size and complexity."); *Billitteri*, 2011 WL 3585983, at *8 (where a case "raised particularly difficult issues," including the risk

of "no recovery whatsoever," this factor supported an increase in the fee); *Braud v. Transport Serv. Co. of Ill.*, 2010 WL 3283398, at \*13 (E.D. La. Aug. 17, 2010) (given the "risk of non-recovery" and the burdens of "undertaking expensive litigation against . . . well-financed corporate defendants on a contingent fee," the Court found that "undesirability in this case warrants an increase in the fee award").

**B.    Other Factors Considered by the Courts
Further Support the Requested Fee as Fair and Reasonable**

In addition to the *Johnson* factors, Courts may consider certain other factors in determining the appropriate fee in a class action case.  *See Camden I Condo. Ass'n v. Dunkle*, 946 F.2d 768, 775 (11th Cir. 1991).

**1.    Public Policy Considerations Support the Requested Fee**

A strong public policy concern exists for rewarding firms for bringing successful securities litigation.  The Supreme Court has emphasized that private securities actions such as this provide "'a most effective weapon in the enforcement' of the securities laws and are 'a necessary supplement to [SEC] action.'" *Bateman*, 472 U.S. at 310 (citation omitted); *see also Tellabs*, 551 U.S. at 313.  Accordingly, public policy favors granting Lead Counsel's requested fee and expense application here.  *See Jenkins*, 300 F.R.D. at 309 ("Public policy concerns—in particular, ensuring the continued availability of experienced and capable counsel to represent classes of injured plaintiffs holding small individual claims—support the requested fee.").

20

## 2.    The Requested Fee Has Been Approved by Plaintiffs

All three Plaintiffs are sophisticated institutional investors who were appointed pursuant to the PSLRA.  Plaintiffs played an active role in supervising the prosecution and resolution of this Action and had a sound basis for assessing the reasonableness of the fee request.  *See* Kendig Decl. ¶¶ 2-4; Hernandez Decl. ¶¶ 2-4; Albritton Decl. ¶¶ 2-4. Each of the Plaintiffs fully supports and approves the fee request.  *See* Kendig Decl. ¶¶ 6-7; Hernandez Decl. ¶¶ 6-7; Albritton Decl. ¶¶ 6-7.

The PSLRA was intended to encourage institutional investors like Plaintiffs to assume control of securities class actions in order to "increase the likelihood that parties with significant holdings in issuers, whose interests are more strongly aligned with the class of shareholders, will participate in the litigation and exercise control over the selection and actions of plaintiff's counsel." H.R. Conf. Rep. No. 104-369 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 731 (1995).   Congress believed that these institutions would be in the best position to monitor the prosecution and to assess the reasonableness of counsel's fee requests.  Accordingly, Plaintiffs' endorsement of the fee request in this PSLRA action also supports its approval.  *See, e.g., In re Veeco Instruments Inc. Sec. Litig.*, 2007 WL 4115808, at *8 (S.D.N.Y. Nov. 7, 2007) ("public policy considerations support the award in this case because the Lead Plaintiff . . . – a large public pension fund – conscientiously supervised the work of lead counsel and has approved the fee request"); *In re Lucent Techs., Inc. Sec. Litig.*, 327 F. Supp. 2d 426, 442 (D.N.J. 2004) ("[s]ignificantly, the Lead Plaintiffs, both of whom are institutional

investors with great financial stakes in the outcome of the litigation, have reviewed and approved Lead Counsel's fees and expenses request").

### 3. The Reaction of the Settlement Class to Date Supports the Requested Fee

The reaction of the Settlement Class to date also supports the requested fee.  As of August 3, 2022, the Claims Administrator has disseminated the Notice to more than 24,800 potential Settlement Class Members and nominees informing them of, among other things, Lead Counsel's intention to apply for an award of attorneys' fees of 25% of the Settlement Fund and payment of up to $350,000 in expenses.  *See* Notice ¶¶ 5, 56. While the time to object does not expire until August 19, 2033, to date, no objections have been received.  ¶ 142.  Lead Counsel will address any objections that may be filed in their reply papers to be filed with the Court on September 2, 2022.

## IV.    THE REQUESTED EXPENSES ARE REASONABLE AND WERE NECESSARY TO ACHIEVE THE BENEFIT OBTAINED

Lead Counsel's fee application includes a request for payment of Plaintiffs' Counsel's litigation expenses that were reasonably incurred and necessary to the prosecution of this Action.  These expenses are properly recovered by counsel.  *See Halliburton*, 2018 WL 1942227, at *14 ("Expenses and administrative costs expended by class counsel are recoverable from a common fund in a class action settlement.") *Billitteri*, 2011 WL 3585983, at *10 (same).

Plaintiffs' Counsel incurred $240,253.64 in litigation expenses in the prosecution of the Action.  ¶ 146.  The largest component of expenses related to experts.  Specifically, $141,141.15, or 59%, was expended on experts and consultants, including the financial

economics experts who assisted Lead Counsel during the preparation of the Complaint, during the mediation and settlement negotiations with the Defendants, developing the proposed Plan of Allocation, as well as two separate experts concerning the TiO2 industry and chemical manufacturing plant construction and engineering.  ¶ 147.  Another significant expense was on-line legal and factual research, which came to $51,680.63 or 21.5% of the total expenses.  ¶ 148.  Plaintiffs' portion of mediation costs for JAMS totaled $13,164.72, or 5.5% of the total expenses.  ¶ 149.

The other expenses for which Plaintiffs' Counsel seeks payment are the types of expenses that are necessarily incurred in litigation and routinely charged to clients billed by the hour including, for example, court fees, copying costs, document management costs, translation, telephone charges, and postage.  ¶¶ 150, 152.  These expense items are not duplicated in the firms' hourly rates.

The Notice informed potential Settlement Class Members that Lead Counsel would apply for payment of litigation expenses in an amount not to exceed $350,000. The total amount of expenses requested, $254,822.99, which includes $240,253.64 in Plaintiffs' Counsel's expenses, and $14,569.35 in costs sought for Plaintiffs (as discussed below), is well below the amount listed in the Notice and, to date, there has been no objection to the request for expenses.  ¶ 154.

## V.    PLAINTIFFS SHOULD BE AWARDED THEIR REASONABLE COSTS AND EXPENSES UNDER THE PSLRA

Lastly, in connection with their request for payment of Litigation Expenses, Lead Counsel also seeks reimbursement of a total of $14,569.35 in costs and expenses incurred

directly by Plaintiffs relating to their representation of the Settlement Class.  The PSLRA specifically provides that an "award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class" may be made to "any representative party serving on behalf of a class."  15 U.S.C. §§ 78u-4(a)(4), 77z-1(a)(4). Here, the Plaintiffs seek awards for time dedicated by their employees in furthering and supervising the Action.   Specifically, Fresno seeks reimbursement of $12,150.44 in expenses; Miami seeks $1,500.00; and Pontiac seeks $918.91 in expenses.  *See* Kendig Decl. ¶¶ 8-10; Hernadez Decl. ¶¶ 8-10; Albritton Decl. ¶¶ 8-10.

Each of the Plaintiffs took an active role in the litigation and has been fully committed to pursuing the class's claims.  Plaintiffs' employees expended substantial time overseeing the Action including communicating with Lead Counsel concerning significant developments in the litigation; reviewing significant pleadings and briefs filed in the Action; assisting in preparing Plaintiffs' responses to Defendants' discovery requests; collecting documents for production in response to Defendants' discovery requests; and consulting with counsel regarding settlement negotiations.  *See* Kendig Decl. ¶ 4; Hernadez Decl. ¶ 4; Albritton Decl. ¶ 4.  These efforts required Plaintiffs' staff to dedicate considerable time and resources to the Action that they would have otherwise devoted to their regular duties.  The requested reimbursement amounts are based on the number of hours that the each of the Plaintiffs' employees committed to these activities and a reasonable hourly rate for their time, based on their annual salary and benefits.

Numerous courts have approved comparable awards to compensate lead plaintiffs for the time and effort they spent on behalf of a class.  *See, e.g.*, *Parmelee*, 2019 WL

2352837, at *2 (awarding PSLRA awards of $14,500 in total to lead plaintiffs); *Cobalt*, 2019 WL 6043440, at *3 (awarding over $56,000 to four institutional plaintiffs); *Halliburton*, 2018 WL 1942227, at *14 (awarding $100,000 as "compensation for the time [lead plaintiff] dedicated in supervising this action"); *Miller v. Glob. Geophysical Servs. Inc.*, 2016 WL 11645372, at *1 (S.D. Tex. Jan. 14, 2016) (awarding $15,000 to plaintiffs).

## CONCLUSION

As set forth above, Lead Counsel respectfully requests that the Court approve their request for an award of attorneys' fees, reimbursement of litigation expenses, and reimbursement of Lead Plaintiffs' costs and expenses pursuant to the PLSRA.[8]

Dated: August 5, 2022                    Respectfully submitted,

                                         */s/ Michael D. Blatchley*
                                         Michael D. Blatchley, Attorney-in-Charge

                                         **BERNSTEIN LITOWITZ BERGER**
                                         **  & GROSSMANN LLP**
                                         Hannah Ross (*Pro Hac Vice*)
                                         Michael D. Blatchley (*Pro Hac Vice*)
                                         Kate W. Aufses (*Pro Hac Vice*)
                                         1251 Avenue of the Americas, 44th Floor
                                         New York, NY 10020
                                         Tel: (212) 554-1400
                                         Fax: (212) 554-1444
                                         Hannah@blbglaw.com
                                         MichaelB@blbglaw.com
                                         Kate.Aufses@blbglaw.com

---

[8] A proposed order will be submitted with Lead Counsel's reply papers, after the deadline for objecting has passed.

*Counsel for Lead Plaintiff and Lead
Counsel for the Class*

Thomas R. Ajamie
Texas Bar No. 00952400
Southern District Bar No.
6165 John S. "Jack" Edwards,
Jr. Texas Bar No. 24040851
Southern District Bar No.
38095
**AJAMIE LLP**
Pennzoil Place – South Tower
711 Louisiana, Suite 2150
Houston, Texas 77002
Tel: (713) 860-1600
Fax: (713) 860-1699
tajamie@ajamie.com
jedwards@ajamie.com

*Liaison Counsel for Lead Plaintiff*

Robert D. Klausner
**KLAUSNER KAUFMAN JENSEN
 & LEVINSON**
7080 Northwest 4th Street
Plantation, FL 33317
Tel: (954) 916-1202
bob@robertdklausner.com

*Additional Counsel for City of Miami General
Employees' & Sanitation Employees' Retirement
Trust*

Cynthia J. Billings-Dunn
**ASHERKELLY**
25800 Northwestern Highway
Suite 1100
Southfield, MI 48075
Tel: (248) 746-2747
cbdunn@asherkellylaw.com

*Additional Counsel for the City of Pontiac
General Employees' Retirement System*

26

## CERTIFICATE OF CONFERENCE

Under the terms of the Parties' Stipulation and Agreement of Settlement, dated March 11, 2022 (ECF No. 1172) ("Stipulation"), Lead Counsel is permitted to apply for an award of attorneys' fees and Litigation Expenses from the Settlement Fund and "Lead Counsel's application for an award of attorneys' fees and/or Litigation Expenses is not the subject of any agreement between Defendants and Plaintiffs other than what is set forth in this Stipulation.  This Stipulation shall not be construed as an endorsement by Defendants of any application submitted by Lead Counsel for an award of attorneys' fees and/or Litigation Expenses."  Stipulation ¶ 15.

*/s/ Michael D. Blatchley*
Michael D. Blatchley

## CERTIFICATE OF SERVICE

I certify that on August 5, 2022, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the email addresses denoted on the Electronic Mail Notice List.

*/s/ Michael D. Blatchley*
Michael D. Blatchley