UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| IN RE: VENATOR MATERIALS PLC SECURITIES LITIGATION | Civil Action No. 4:19-cv-03464 |

**PLAINTIFFS' UNOPPOSED MOTION
FOR APPROVAL OF DISTRIBUTION PLAN**

## **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ..................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................ 1

NATURE AND STAGE OF THE PROCEEDINGS ................................................................. 2

STATEMENT OF ISSUES ........................................................................................................ 3

SUMMARY OF THE ARGUMENT ......................................................................................... 3

ARGUMENT .............................................................................................................................. 4

I.     CLAIMS ADMINISTRATION ................................................................................. 4

       A.    No Disputed Claims ......................................................................................... 5

       B.    Late Claims and Final Cut-Off Date ............................................................... 6

II.    FEES AND EXPENSES OF CLAIMS ADMINISTRATOR .................................. 7

III.   DISTRIBUTION PLAN FOR THE NET SETTLEMENT FUND ......................... 8

       A.    Initial Distribution of the Net Settlement Fund .............................................. 8

       B.    Additional Distribution(s) of the Net Settlement Fund ................................... 9

IV.   RELEASE OF CLAIMS ......................................................................................... 12

V.     CONCLUSION ........................................................................................................ 13

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Duncan v. JPMorgan Chase Bank N.A.*,
 2016 WL 4419472 (W.D. Tex. May 24, 2016) ........................................................... 11

*In re EZCORP, Inc. Sec. Litig.*,
 2019 WL 6681962 (W.D. Tex. Dec. 6, 2019) ............................................................... 4

*In re Forterra Inc. Sec. Litig.*,
 2021 WL 3464255 (N.D. Tex. Aug. 4, 2021) ...................................................... 3, 4, 13

*Parmelee v. Santander Consumer USA Holdings Inc.*,
 2019 WL 2354665 (N.D. Tex. June 3, 2019) ............................................................... 4

*Perkins v. Am. Nat'l Ins. Co.*,
 2012 WL 2839788 (M.D. Ga. July 10, 2012) ............................................................ 11

**OTHER AUTHORITIES**

Order Approving Distribution Plan, *In re Cobalt Int'l Energy, Inc. Sec.
 Litig.*, No. 4:14-cv-3428-NFA (S.D. Tex. Nov. 17, 2020), ECF No. 384 .......... 4, 13-14

Order Authorizing Distribution of Net Settlement Fund, *In re Nu Skin
 Enters., Inc., Sec. Litig.*, No. 14-cv-00033-JNP-BCW (D. Utah Aug. 30,
 2018) ECF Nos. 152, 154............................................................................................ 11

Order for Distribution of Class Action Settlement Funds, *Prause v.
 TechnipFMC PLC*, No. 4:17-cv-02368-AHB (S.D. Tex. Jan. 21, 2022),
 ECF No. 218 ................................................................................................................ 4

## PRELIMINARY STATEMENT

This securities class action was settled by the Parties in exchange for payment of $19 million in cash. The Settlement was finally approved by the Court in September 2022. The Claims Administrator has now completed processing of the Claims submitted by Settlement Class Members in connection with the Settlement. Accordingly, Plaintiffs move for the Court's approval to conduct a distribution of the net settlement proceeds to Claimants whose Claims are approved for payment.

Specifically, pursuant to Rule 23(e) of the Federal Rules of Civil Procedure and this Court's Orders Approving Plan of Allocation of Net Settlement Fund (ECF No. 127) and the Judgment Approving Class Action Settlement (ECF No. 128), Lead Plaintiffs, on behalf of themselves and the Settlement Class, move this Court for entry of the accompanying [Proposed] Order Approving Distribution Plan ("Class Distribution Order").[1] The Class Distribution Order will, among other things: (i) approve the administrative determinations of the Claims Administrator accepting and rejecting Claims submitted in connection with the Settlement; (ii) direct the distribution of the Net Settlement Fund to Claimants whose Claims are accepted by the Claims Administrator as valid and approved by the Court ("Authorized Claimants"), while maintaining a Reserve for any tax liability or claims

---

[1] Lead Plaintiffs are Fresno County Employees' Retirement Association, City of Miami General Employees' & Sanitation Employees' Retirement Trust, and City of Pontiac General Employees' Retirement System ("Plaintiffs"). Unless otherwise indicated in this memorandum, all terms with initial capitalization shall have the meanings ascribed to them in the Declaration of Luiggy Segura in Support of Plaintiffs' [Unopposed] Motion for Approval of Distribution Plan ("Segura Decl."), submitted herewith, or the Stipulation and Agreement of Settlement dated as of March 11, 2022 (ECF No. 117-2) ("Stipulation").

administration-related contingencies that may arise; and (iii) approve the Claims Administrator's fees and expenses incurred and estimated to be incurred in the administration of the Settlement.

Under the Stipulation, Defendants have no role in or responsibility for the administration of the Settlement Fund or processing of Claims, including determinations as to the validity of Claims or the distribution of the Net Settlement Fund. *See* Stipulation ¶¶ 18, 22, 24. Nevertheless, Lead Plaintiffs provided Defendants' counsel a copy of these motion papers and they informed us that Defendants do not oppose this motion. There are no disputed Claims by any Class Member requiring Court review. As such, the motion is ripe for determination, and Lead Plaintiffs respectfully request that the Class Distribution Order be entered.

## NATURE AND STAGE OF THE PROCEEDINGS

On September 15, 2022, the Court entered its Judgment Approving Class Action Settlement (ECF No. 128) approving the $19 million all-cash Settlement of this Action and entered an Order Approving Plan of Allocation of Net Settlement Fund (ECF No. 127). The Settlement's "Effective Date" under paragraph 32 of the Stipulation has now occurred, and accordingly the Net Settlement Fund may now be distributed to Authorized Claimants. In accordance with paragraph 27 of the Stipulation, Plaintiffs respectfully request that the Court enter the Class Distribution Order and approve the Distribution Plan.

In accordance with the Court's Order Preliminarily Approving Settlement (ECF No. 119) ("Preliminary Approval Order"), the Court-appointed Claims Administrator, JND Legal Administration ("JND"), mailed the Notice of (I) Pendency of Class Action and

Proposed Settlement; (II) Settlement Hearing; and (III) Motion of Attorneys' Fees and Litigation Expenses ("Notice") and the Proof of Claim and Release Form ("Claim Form" and, collectively with the Notice, the "Notice Packet") to potential Settlement Class Members, brokers, and other nominees. Segura Decl. ¶ 2. JND has disseminated 25,429 Notice Packets to potential Settlement Class Members, brokers, and nominees. *Id.* ¶ 4. The Notice informed Settlement Class Members that if they wished to be eligible to participate in the distribution of the Net Settlement Fund, they were required to submit a properly executed Claim Form postmarked no later than October 17, 2022. Notice at p. 4 and ¶ 44.

## STATEMENT OF ISSUES

Lead Plaintiffs respectfully request that the Court enter the proposed Class Distribution Order, which will, among other things, approve the Claims Administrator's administrative determinations accepting and rejecting Claims submitted in connection with the Settlement, direct the distribution of the Net Settlement Fund to eligible Claimants, approve the recommended plan for any funds remaining after the distribution, and approve the Claims Administrator's fees and expenses. Lead Plaintiffs, Lead Counsel, and the Claims Administrator have diligently overseen the claims administration process, all requirements and conditions for the distribution of the Settlement proceeds have been met or occurred, and approval of the Class Distribution is appropriate and warranted. *See, e.g., In re Forterra Inc. Sec. Litig.*, 2021 WL 3464255 (N.D. Tex. Aug. 4, 2021).

## SUMMARY OF THE ARGUMENT

As is standard in securities class actions, the distribution of the settlement fund to eligible claimants must be approved by the Court following a motion. *See* Stipulation ¶ 27.

3

Plaintiffs respectfully ask the Court to approve the Claims Administrator's administrative determinations concerning the acceptance and rejection of the Claims submitted and authorize the payment of the Net Settlement Fund to the Authorized Claimants.

This motion is similar to motions seeking approval to distribute settlement funds in securities class actions granted by this Court. *See* Order Approving Distribution Plan, *In re Cobalt Int'l Energy, Inc. Sec. Litig.*, No. 4:14-cv-3428 -NFA (S.D. Tex. Nov. 17, 2020), ECF No. 384, attached hereto as Exhibit 1; Order for Distribution of Class Action Settlement Funds, *Prause v. TechnipFMC PLC*, No. 4:17-cv-02368-AHB (S.D. Tex. Jan. 21, 2022), ECF No. 218, attached hereto as Exhibit 2; *In re Forterra Inc. Sec. Litig.*, 2021 WL 3464255 (N.D. Tex. Aug. 4, 2021); *Parmelee v. Santander Consumer USA Holdings Inc.*, 2019 WL 2354665 (N.D. Tex. June 3, 2019); *In re EZCORP, Inc. Sec. Litig.*, 2019 WL 6681962 (W.D. Tex. Dec. 6, 2019).

## ARGUMENT

### I. CLAIMS ADMINISTRATION

As set forth in the Segura Declaration, through October 5, 2023, JND received and processed 9,691 Claims. Segura Decl. ¶ 7. All Claims received through October 5, 2023, have been fully processed in accordance with the Stipulation and the Court-approved Plan of Allocation included in the Notice (*see id*.), and JND has worked with Claimants to help them perfect their Claims. *See id.* ¶¶ 19-31. Many of the Claims were initially deficient or ineligible for one or more reasons, including being incomplete, not signed, not properly documented, or otherwise deficient, which required substantial follow-up work by JND. *Id.* ¶¶ 19, 22.

4

If JND determined a Claim to be defective or ineligible, JND sent a letter (if the Claimant or filer filed a paper Claim) or an email (if the Claimant or filer filed an electronic Claim) to the Claimant or filer, as applicable, describing the defect(s) or condition(s) of ineligibility in the Claim and the steps necessary to cure any curable defect(s) in the Claim ("Deficiency Notices"). *Id*. ¶¶ 20, 22. The Deficiency Notices advised the Claimant or filer that the appropriate information or documentary evidence to complete the Claim had to be sent within twenty (20) days from the date of the Deficiency Notice or JND would recommend the Claim for rejection to the extent the deficiency or condition of ineligibility was not cured. *Id*. ¶¶ 20, 23. Examples of the Deficiency Notices are attached as Exhibits A, B, and C to the Segura Declaration.

Of the 9,691 Claims that are the subject of this motion, JND has determined that 6,155 Claims are acceptable in whole or in part, and that 3,536 Claims should be rejected because they are ineligible for payment from the Net Settlement Fund. Segura Decl. ¶¶ 38-42. Plaintiffs respectfully request that the Court approve JND's administrative determinations accepting and rejecting Claims as set forth in the Segura Declaration.

### A.   No Disputed Claims

JND carefully reviewed Claimants' and filers' responses to the Deficiency Notices and worked with them to resolve deficiencies where possible. *Id*. ¶¶ 21, 26. Consistent with paragraph 25(e) of the Stipulation, the Deficiency Notices specifically advised the Claimant or filer of the right, within twenty (20) days after the mailing or emailing of the Deficiency Notice, to contest the rejection of the Claim and request Court review of JND's administrative determination of the Claim. *Id*. ¶¶ 20, 23, and Exhibits A and B.

5

With respect to the fully processed Claims, JND did not receive any requests for Court review of its administrative determinations. *Id*. ¶ 31.

### B.  Late Claims and Final Cut-Off Date

The 9,691 Claims received through October 5, 2023, include 118 Claims that were postmarked or received after October 17, 2022, the Court-approved Claim submission deadline. *Id*. ¶¶ 32, 40. Those late Claims have been fully processed, and 41 of them are, but for their late submission, otherwise eligible to participate in the Settlement. *Id*. Although these 41 Claims were late, they were received while the processing of timely Claims was ongoing. *Id*. Due to the amount of time needed to process the timely Claims received, the processing of these late Claims did not delay the completion of the Claims administration process or the distribution of the Net Settlement Fund. *Id*. ¶ 32. The Court has discretion to accept Claims received after the Claim submission deadline. *See* Preliminary Approval Order ¶ 11; Notice ¶ 50. Plaintiffs respectfully submit that, when the equities are balanced, it would be unfair to prevent an otherwise eligible Claim from participating in the distribution of the Net Settlement Fund solely because it was received after the Court-approved Claim submission deadline if it were submitted while timely Claims were still being processed.

To facilitate the efficient distribution of the Net Settlement Fund, however, there must be a final cut-off date after which no other Claims may be accepted. Accordingly, Plaintiffs respectfully request that the Court order that any ***new*** late Claims (and any requested adjustments to previously filed Claims that would result in an increased Recognized Claim Amount) received after October 5, 2023, shall be barred (*see also*

6

Segura Decl. ¶ 44(f))—subject to the proviso that if Lead Counsel later determines that an additional distribution is not cost-effective (*see* Segura Decl. ¶ 44(e)), then any post-October 5, 2023 Claimants may, at the discretion of Lead Counsel and to the extent possible after paying remaining administrative fees and expenses owed, be paid on their new or adjusted Claims on a *pro rata* basis so as to bring them into parity with other Authorized Claimants who have cashed their distribution checks. *Id.* ¶ 44(f).

## II.     FEES AND EXPENSES OF CLAIMS ADMINISTRATOR

The Court-approved Claims Administrator for the Settlement, JND, was responsible for, among other things, disseminating notice of the Settlement to the Settlement Class, creating and maintaining a website and toll-free telephone helpline, processing Claims, and allocating and distributing the Net Settlement Fund to Authorized Claimants. Segura Decl. ¶ 2. JND's fees and expenses for its work performed through September 30, 2023, are $266,244.69, and its estimated fees and expenses for work to be performed in connection with the Initial Distribution are $19,901.52, which together total $286,146.21. *Id.* ¶ 43. Should the estimate of fees and expenses to conduct the Initial Distribution of the Net Settlement Fund exceed the actual cost, the excess will be returned to the Net Settlement Fund and will be available for subsequent distribution to Authorized Claimants. *Id*. The brokerage firms and nominees charged JND another $12,497.81 for their work providing names and addresses to potential Settlement Class Members and forwarding notices to their clients. *Id*. To date, JND has not received any payment for its fees and expenses. *Id*. Accordingly, there is an outstanding balance of $298,644.02 payable to JND, which amount includes the estimated fees and expenses to be incurred by JND in connection with

the Initial Distribution. *Id*. Lead Counsel reviewed JND's invoices and respectfully requests on behalf of Plaintiffs that the Court approve all of JND's fees and expenses.

### III. DISTRIBUTION PLAN FOR THE NET SETTLEMENT FUND

#### A. Initial Distribution of the Net Settlement Fund

Under the proposed Distribution Plan, JND will distribute 95% of the Net Settlement Fund after deducting (i) all payments previously allowed, (ii) payments approved by the Court on this motion, and (iii) any estimated taxes, the costs of preparing appropriate tax returns, and any escrow fees (i.e., the Initial Distribution). *See* Segura Decl. ¶ 44(a).

In the Initial Distribution, JND will calculate award amounts for all Authorized Claimants as if the entire Net Settlement Fund were to be distributed now. *Id*. ¶ 44(a)(1). JND will first determine each Authorized Claimant's *pro rata* share of the total Net Settlement Fund based on the Claimant's Recognized Claim in comparison to the total Recognized Claims of all Authorized Claimants. *Id*. JND will eliminate from the Initial Distribution any Authorized Claimant whose *pro rata* share calculates to less than $10.00. These Claimants will not receive any payment from the Net Settlement Fund and will be so notified by JND. *Id*. ¶ 44(a)(2). JND will then recalculate the *pro rata* share of the Net Settlement Fund for Authorized Claimants who would have received $10.00 or more based on the amount of the Authorized Claimant's Recognized Claim in comparison to the total Recognized Claims of all Authorized Claimants who would have received $10.00 or more. *Id*. ¶ 44(a)(3).

This *pro rata* share is the Authorized Claimant's Distribution Amount. *Id*. Authorized Claimants whose Distribution Amount calculates to less than $200.00 will be paid their full Distribution Amount in the Initial Distribution ("Claims Paid in Full"). *Id*. ¶ 44(a)(4). These Authorized Claimants will receive no additional funds in subsequent distributions. *Id*. After deducting the payments to the Claims Paid in Full, 95% of the remaining balance of the Net Settlement Fund will be distributed *pro rata* to Authorized Claimants whose Distribution Amount calculates to $200.00 or more. *Id*. ¶ 44(a)(5). The remaining 5% of the Net Settlement Fund will be held in reserve (the "Reserve") to address any tax liability and claims administration-related contingencies that may arise. *Id*. To the extent the Reserve is not depleted, the remainder will be distributed in the Second Distribution. *Id*.

To encourage Authorized Claimants to cash their checks promptly, Plaintiffs propose that all distribution checks bear the notation, "CASH PROMPTLY. VOID AND SUBJECT TO REDISTRIBUTION IF NOT CASHED BY [DATE 90 DAYS AFTER ISSUE DATE]." *Id*. ¶ 44(b). Authorized Claimants who do not cash their checks within the time allotted or on the conditions stated in paragraph 44(b) of the Segura Declaration will irrevocably forfeit all recovery from the Settlement, and the funds allocated to these stale-dated checks will be available to be redistributed to other Authorized Claimants in a subsequent distribution, as described below. *Id*. ¶ 44(c).

**B.     Additional Distribution(s) of the Net Settlement Fund**

After JND has made reasonable and diligent efforts to have Authorized Claimants cash their Initial Distribution checks, but not earlier than seven (7) months after the Initial

Distribution, JND will, after consulting with Lead Counsel, conduct the Second Distribution of the Net Settlement Fund. *Id.* ¶ 44(d).

In the Second Distribution, any amount remaining in the Net Settlement Fund, after deducting any unpaid fees and expenses incurred, will be distributed to all Authorized Claimants (other than Claims Paid in Full) who cashed their Initial Distribution checks and would receive at least $10.00 from the Second Distribution based on their *pro rata* share of the remaining funds. *Id*. If any funds remain in the Net Settlement Fund after the Second Distribution, and if cost-effective, subsequent distributions will take place at six-month intervals. *Id*.

When Lead Counsel, in consultation with JND, determines that a further distribution is not cost-effective, if sufficient funds remain to warrant the processing of Claims received after October 5, 2023, JND will process those Claims. *Id*. ¶ 44(e). Any of these Claims that are otherwise valid, as well as any earlier received Claims for which an upward adjustment was received after October 5, 2023, may be paid in accordance with paragraph 44(f) of the Segura Declaration. *Id*. If any funds remain in the Net Settlement Fund after payment of these Claims and any unpaid fees or expenses, Lead Counsel proposes that such remaining funds (if there are any) be contributed to the National Consumer Law Center ("NCLC"). Lead Counsel proposes that the NCLC be designated as the "non-sectarian, not-for-profit 501(c)(3) organization[] to be selected by Lead Counsel and approved by the Court" referenced in the Court-approved Plan of Allocation. *See* Notice App. A ¶ 22.

NCLC is a non-profit, non-partisan organization originally launched and initially funded by the federal government, but sustained for more than half a century by the support

10

of a diverse network of private foundations, sponsors, and individual donors exempt from taxation under Section 501(c)(3) of the Internal Revenue Code. *See Financials*, National Consumer Law Center, nclc.org/about-us/financials/ (last visited October 15, 2023). Since 1969, the NCLC has used its expertise in consumer law and energy policy to work for consumer justice and economic security for low-income and other disadvantaged people, including older adults, in the U.S. *See Mission*, National Consumer Law Center, https://www.nclc.org/about-us/mission (last visited October 15, 2023). NCLC uses the tools of advocacy, education, and litigation to fight for economic justice for low-income and other vulnerable people who have been abused, deceived, discriminated against, or left behind in the economy. *See id.* Today, NCLC uses its expertise in consumer law to protect consumers from exploitation and expand access to fair credit by advocating for laws, rules, and regulations that benefit real people: those with low incomes, older people, students, people of color, and others who have been abused, deceived, discriminated against, or left behind in our economy. *See id.*

Federal courts in Texas and across the nation have approved NCLC as a *cy pres* recipient of residual balances of net settlement funds in other settlements. *See e.g., Duncan v. JPMorgan Chase Bank N.A.,* 2016 WL 4419472, at *17 (W.D. Tex. May 24, 2016); Order Authorizing Distribution of Net Settlement Fund, *In re Nu Skin Enters., Inc., Sec. Litig.*, No. 14-cv-00033-JNP-BCW, (D. Utah Aug. 30, 2018) ECF Nos. 152, 154, attached hereto as Exhibit 3; *Perkins v. Am. Nat'l Ins. Co.*, 2012 WL 2839788, at *5 (M.D. Ga. July 10, 2012) ("The Court is also satisfied that The National Consumer Law Center's mission,

11

reputation and established track record will ensure that it will be a good steward of the grant award made to it.").

## IV. RELEASE OF CLAIMS

In order to allow full and final distribution of the Net Settlement Fund, it is necessary to (i) bar any further claims against the Net Settlement Fund beyond the amounts allocated to Authorized Claimants, and (ii) provide that all persons involved in any aspect of Claims processing, or who are involved in the administration or taxation of the Settlement Fund or the Net Settlement Fund, be released and discharged from all claims arising out of that involvement. *See* Stipulation ¶ 29. Accordingly, Plaintiffs respectfully request that the Court release and discharge all persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the Claims submitted in connection with the Settlement, or who are otherwise involved in the administration or taxation of the Settlement Fund or the Net Settlement Fund from all claims arising out of that involvement, and bar all Settlement Class Members and other Claimants, whether or not they receive payment from the Net Settlement Fund, from making any further claims against the Net Settlement Fund, Plaintiffs, Lead Counsel, the Claims Administrator, the Escrow Agent or any other agent retained by Plaintiffs or Lead Counsel in connection with the administration or taxation of the Settlement Fund or the Net Settlement Fund, or any other person released under the Settlement beyond the amounts allocated to Authorized Claimants.

Courts have repeatedly approved similar releases in connection with the distribution of settlement proceeds. *See, e.g.,* Order Approving Distribution Plan at 7, *In re Cobalt Int'l*

*Energy, Inc. Sec. Litig.*, No. 4:14-cv-3428 (NFA) (S.D. Tex. Nov. 17, 2020), ECF No. 384 ("All persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the Claims submitted, or who are otherwise involved in the administration or taxation of the Settlements, are hereby released and discharged from any and all claims arising out of that involvement, and all Settlement Class Members and other Claimants, whether or not they receive payment from the Net Settlement Fund, are hereby barred from making any further claims against the Net Settlement Fund, Lead Plaintiffs, Lead Counsel, the Claims Administrator, the Escrow Agent, or any other agent retained by Lead Plaintiffs or Lead Counsel in connection with the administration or taxation of the Settlement Fund or the Net Settlement Fund, or any other person released under the Settlements beyond the amounts allocated to Authorized Claimants"); *Forterra,* 2021 WL 3464255, at *2 (approving substantially similar language in order authorizing distribution of settlement proceeds).

## V.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant their Unopposed Motion for Approval of Distribution Plan and enter the [Proposed] Order Approving Distribution Plan.

Dated: October 17, 2023        Respectfully submitted,

*/s/ Michael D. Blatchley*
Michael D. Blatchley, Attorney-in-Charge
**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**
Hannah Ross (*Pro Hac Vice*)
Michael D. Blatchley (*Pro Hac Vice*)
1251 Avenue of the Americas, 44th Floor

13

New York, NY 10020
Tel: (212) 554-1400
Fax: (212) 554-1444
Hannah@blbglaw.com
MichaelB@blbglaw.com

*Counsel for Lead Plaintiff and Lead Counsel for the Class*

Thomas R. Ajamie
Texas Bar No. 00952400
Southern District Bar No. 6165
John S. "Jack" Edwards, Jr.
Texas Bar No. 24040851
Southern District Bar No. 38095
**AJAMIE LLP**
Pennzoil Place – South Tower
711 Louisiana, Suite 2150
Houston, Texas 77002
Tel: (713) 860-1600
Fax: (713) 860-1699
tajamie@ajamie.com
jedwards@ajamie.com

*Liaison Counsel for Lead Plaintiff*

Robert D. Klausner
**KLAUSNER KAUFMAN JENSEN
 & LEVINSON**
7080 Northwest 4th Street
Plantation, FL 33317
Tel: (954) 916-1202
bob@robertdklausner.com

*Additional Counsel for City of Miami General Employees' & Sanitation Employees' Retirement Trust*

Cynthia J. Billings-Dunn
**ASHERKELLY**
25800 Northwestern Highway
Suite 1100
Southfield, MI 48075

14

Tel: (248) 746-2747
cbdunn@asherkellylaw.com

*Additional Counsel for the City of Pontiac General Employees' Retirement System*

## CERTIFICATE OF CONFERENCE

I certify that Lead Counsel and Defendants' Counsel have conferred regarding the substance of the relief sought in this motion and that Defendants do not oppose this motion and consent to the relief sought in this motion.

*/s/ Michael D. Blatchley*
Michael D. Blatchley

## CERTIFICATE OF SERVICE

I certify that on October 17, 2023, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the email addresses denoted on the Electronic Mail Notice List.

*/s/ Michael D. Blatchley*
Michael D. Blatchley
